# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE NEURONTIN MARKETING AND ) SALES PRACTICES LITIGATION ) | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: ) | Master File No. 04-10981 |
| LAURA ALLEN, ADMINISTRATIX ) OF THE ESTATE OF THE LATE ) DANIEL ALLEN, TIMOTHY BRIDGES, ) and ALFRED MORABITO, individually ) and on behalf of themselves and all others ) similarly situated, ) | Judge Patti B. Saris  Civil Action No. 05-10797 |

IN RE NEURONTIN MARKETING AND )
SALES PRACTICES LITIGATION )   MDL Docket No. 1629

THIS DOCUMENT RELATES TO:   )   Master File No. 04-10981
                            )
LAURA ALLEN, ADMINISTRATIX  )   Judge Patti B. Saris
OF THE ESTATE OF THE LATE   )
DANIEL ALLEN, TIMOTHY BRIDGES, )  Civil Action No. 05-10797
and ALFRED MORABITO, individually )
and on behalf of themselves and all others )
similarly situated, )
                            )
                Plaintiffs, )
                            )
v.                          )
                            )
PFIZER, INC. and PARKE-DAVIS, )
a division of Warner-Lambert Company )
                            )
                Defendants. )

# MEMORANDUM IN SUPPORT OF
# PLAINTIFFS' MOTION TO REMAND

## I.    INTRODUCTION

Plaintiffs, Laura Allen, Administratix of the Estate of the Late Daniel Allen,

Timothy Bridges and Alfred Morabito (hereinafter "Plaintiffs"), submit this memorandum

in support of their Motion to Remand this case to the Suffolk Superior Court Department of

the Trial Court of the Commonwealth of Massachusetts, where jurisdiction is proper.

Defendants Pfizer Inc and Park-Davis, a division of Warner-Lambert Company (hereinafter

"Defendants") removed this action on April 20, 2005.  Defendants rely exclusively on the

Class Action Fairness Act of 2005 as grounds for their removal.

Plaintiffs, Massachusetts resident consumers who suffered nominal, economic damages as a result of Defendants' unfair and deceptive scheme designed to deceptively market and sell Neurontin for fraudulently devised uses that were not scientifically proven to be safe, efficacious, effective and useful, filed this class action lawsuit in the Suffolk Superior Court Department, Business Litigation Session on December 23, 2004. Plaintiffs filed a First Amended Class Action Complaint (hereinafter "Complaint") on March 21, 2005. Plaintiffs seek relief from Defendants for unfair or deceptive acts or practices pursuant to G.L. c. 93A, §§ 2 and 9 and False Advertising pursuant to G.L. c. 93A, §2 and 940 CMR §3.02 (Complaint, Count I and II). The Complaint expressly states that the action is "purely based on state law (G.L. c. 93A) and relies exclusively on state law." (Complaint, ¶20). Further, as masters of their Complaint, Plaintiffs expressly waive and disavow any federal claims. "Plaintiffs state and intend to state, a cause of action solely under the laws of Massachusetts and specifically deny any attempt to state a federal question and/or cause of action under the laws of the United States of America." (Complaint, ¶ 20). "Moreover, Plaintiffs' state law claim is not federally preempted." (Complaint, ¶ 20). "Neither the putative class representatives nor any member of the Class has damages exceeding $75,000 each even when trebled." (Complaint, ¶ 19). In addition, "attorneys' fees on a pro-rata basis will not exceed $75,000 for each class member." (Complaint, ¶19).

Defendants assert that this Court has federal jurisdiction pursuant to 28 U.S.C. §1332(d)(2)(A). (Notice of Removal, ¶ 8). Defendants aver that this action falls under the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (February 18, 2005) (hereinafter "CAFA") (Notice of Removal, ¶¶ 8 & 9) and that the "commencement" date of

the litigation is either when the Complaint was amended or when Defendants removed the action to federal court.

First, Defendants intentionally ignore the explicit limitation of 119 Stat. 4, § 9 (Copy attached as Ex. 1) which states that "[T]he amendments made by this Act shall apply to any civil action **commenced on or after** the date of enactment of this Act." (emphasis added). Second, Defendants fail to take into consideration the legislative history of the CAFA and Congress' clear intent in drafting the bill – that the CAFA would not apply retroactively to pending actions. Third, Defendants not only fail to recognize Mass. R. Civ. P. 3, they deliberately neglect Mass. R. Civ. P. 15(c) (relation back of amendments) and established Massachusetts case law and commentary concerning the timing and commencement of an action. *See* Mass. R. Civ. P. 3; Mass. R. Civ. P. 15(c); Fed. R. Civ. P. 81; 6 JAMES W. SMITH, HILLER B. ZOBEL, *Rules Practice* § 4.2 (1996) (commencement of action must always precede service); 9 JOSEPH R. NOLAN & BRUCE HENRY, *Civil Practice* § 8.11 (3d ed. 2004) (an action is commenced when the plaintiff mails (registered or certified) to the clerk the complaint and entry fee, or when the clerk receives the complaint and fee). Instead, Defendants (with no authority)[1] attempt to redefine "commenced," to mean either: (1) when a complaint is amended or (2) when an action is removed.

Plaintiffs' two count complaint for violations of G.L. c. 93A *et seq.* was commenced prior to the enactment of CAFA and does not rely upon federal law, and as such, Defendants cannot satisfy their burden of showing subject matter jurisdiction. Therefore, the action should be remanded to the Suffolk Superior Court Department of the Trial Court, Commonwealth of Massachusetts.

---

[1] Defendants fail to cite one Massachusetts case (or foreign case) to support their unilateral interpretation of the term "commenced." Defendants simply state, "we believe

## II.    FACTUAL BACKGROUND

On December 23, 2004, Plaintiffs Laura Allen, Administratix of the Estate of the Late Daniel Allen, Timothy Bridges and Alfred Morabito commenced this action by filing a Class Action Complaint in the Suffolk Superior Court.  On March 21, 2005, Plaintiffs filed, as a matter of course, a First Amended Class Action Complaint ("Complaint") on behalf of themselves and a class of all consumers residing in the Commonwealth of Massachusetts who purchased Neurontin after being prescribed said medication for Bipolar Disorder, Peripheral Neuropathy, Diabetic Neuropathy and other pain syndromes, Epilepsy Monotherapy, Reflex Sympathetic Dystrophy, Attention Deficit Disorder, Restless Leg Syndrome, Trigeminal Neuralgia; Essential Tremor Periodic Limb Movement Disorder, migraines, Amyotrophic Lateral Sclerosis, and drug and alcohol withdrawal seizures during the period from January 1, 1994 to the present. (Complaint, ¶ 21; Copy of the Complaint is attached as Exhibit 1 to the Notice of Removal).  As alleged in the Complaint, since at least 1994, the Defendants have implemented an unfair and deceptive scheme to deliberately misrepresent and deceitfully market and sell Neurontin for scientifically unproven uses even though Defendants knew that no scientific evidence existed to suggest that Neurontin was safe and effective.[2] (Complaint ¶¶ 2, 42-207, 313-327, 332-353).  As a direct and proximate result of the unfair and deceptive conduct of Defendants, from at least 1994 through the present, tens of thousands of Massachusetts residents have taken Neurontin to treat conditions for which the drug is not medically safe, efficacious, effective or necessary." (Complaint, ¶ 331).  Plaintiffs and the Class have been injured and have suffered actual economic damages by paying for Neurontin to treat conditions

---

[this] to be the correct view of the law ... ." (Notice of Removal, ¶ 11).
[2]   In fact, the Defendants' marketing department unilaterally selected uses based

that lacked scientific, medical and clinical data concerning safety, efficacy, effectiveness or usefulness. (Complaint, ¶¶ 12-14, 208-312, 338-39, 350-51).

On April 20, 2005, Defendants filed a Notice of Removal to this Court, asserting jurisdiction under 28 U.S.C. §1332(d)(2)(A).

## III.    ARGUMENT

### A.    Defendants Have The Burden Of Proof To Establish Removal Jurisdiction

The general federal remand statute, 28 U.S.C. § 1447(c), provides, in relevant part, that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Therefore, if this Court determines that it does not have subject matter jurisdiction, it *must* remand the case to the Suffolk Superior Court Department of the Trial Court of the Commonwealth of Massachusetts.

Defendants, having removed this case from state court, have the burden of demonstrating that this Court has subject matter jurisdiction, whether by virtue of federal question jurisdiction, 28 U.S.C. §1331,[3] or diversity jurisdiction, 28 U.S.C. §1332.[4] *Danca v. Private Heath Care Systems, Inc.*, 185 F.3d 1, 4 (1st Cir. 1999); *Ciardi v. F. Hoffmann-La*

---

exclusively on potential profitability.

[3] This action is not subject to federal question jurisdiction under 28 U.S.C. § 1331, which Defendants rightfully concede by not raising as a ground for removal.

[4] Defendants solely rely upon the newly expanded definition of diversity in 28 U.S.C. § 1332(d)(2)(A) as provided for by CAFA (aggregate damages in excess of $5,000,000 and plaintiff is a citizen of a different state from defendant). Defendants do not dispute that the damages sustained by Plaintiffs and each individual class member are less than $75,000 and that Massachusetts law does not permit defendants to evade the anti-aggregation rule. *Ciardi v. F. Hoffmann-La Roche, Ltd, et al.,* 2000 WL 159320 (D. Mass., February 7, 2000); *Hairston v. Home Loan and Investment Bank*, 814 F. Supp. 180, 181 & n.1 (D. Mass. 1993); *Spielman v. Genzyme Corporation*, 193 F.R.D. 19, 22 (D. Mass. 2000); *Radlo v. Rhone-Poulenc, S.A.*, 241 F. Supp.2d 61, 64 (D. Mass. 2002). Moreover, Defendants waive supplemental jurisdiction.

*Roche, Ltd., et al.*, 2000 WL 159320 (D. Mass., February 7, 2000); *American Buildings Co. v. Varicon, Inc.*, 616 F. Supp. 641, 643 (D. Mass. 1985); *Crosby v. America Online, Inc.*, 967 F. Supp. 257 (N.D. Ohio 1997); and *Sherwood v. Microsoft Corp.*, 91 F. Supp.2d 1196 (M.D.Tenn. 2000). The removal statutes, 28 U.S.C. §1441 *et seq.*, are to be strictly construed. *Shamrock Oil Corp. v. Sheets*, 313 U.S. 100, 108, 61 S.Ct. 868, 85 L.Ed.2d 1214 (1941). Any doubt as to the existence of federal jurisdiction must be resolved in favor of state court jurisdiction. *Bally v. National Collegiate Athletic Association*, 707 F. Supp. 57, 58 (D. Mass. 1988); *Freitas v. First New Hampshire Mortgage Corp.*, 1998 WL 657606 at *5 (D.R.I. 1998); *Rosack v. Volvo of America Corp.*, 421 F. Supp. 933, 937 (N.D.Cal. 1976), *stay den.*, 429 U.S. 1331 (1976).

As courts within this District have recognized on numerous occasions, the exercise of federal jurisdiction, particularly on removal, is not something to be undertaken lightly. *See Santiago v. Barre National, Inc.*, 795 F. Supp. 508, 511(D. Mass. 1992) ("Removal statutes ... are to be strictly construed in order to further principles of judicial economy and comity."). Federal courts "have a responsibility to police the border of federal jurisdiction." *Spielman v. Genzyme Corp.*, 251 F.3d 1, 4 (1st Cir. 2001). In this case, Defendants have thoroughly failed to establish the necessary predicates to federal jurisdiction.

**B.    Congress' Intention Is Clear – CAFA Should Not Apply to Cases Currently on File**

The CAFA applies to "any civil action commenced on or after the date of enactment of this Act." 119 Stat. 4, § 9. The language of the Act is plain, any pending action commenced prior to the enactment of CAFA is not governed by CAFA. While the

language is explicit, Congress' intent regarding the meaning of the term "commenced" is also very clear.

When such intent is available to the Court, it controls. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 n.9 (1984) ("If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.").

> Where the language of the statute is clear ... the text of the statute is the end of the matter. However, if the language of the statute is unclear, we attempt to discern Congress' intent using the canons of statutory construction. If the tools of statutory construction reveal Congress' intent, that ends the inquiry.

*U.S. v. Cooper*, 396 F.3d 308, 310-11 (3rd Cir. 2005) (internal citations and quotations omitted). Here, congressional intent is evident in two separate ways: (1) earlier versions of the bill included retroactive language that was removed from the final statute; and (2) legislators on both sides of the bill agreed the bill was not to apply retroactively.

1.    Similar Bills Contained An Express Retroactive Provision
      That Did Not Survive The Final Draft

Over the past three years, bills similar to the CAFA were introduced in Congress. These bills contained language expressly creating retroactive effect. For example, on March 6, 2003, H.R. 1115 was introduced in the House. (Copy attached as Ex. 2 at 18-19). This bill, like the CAFA, sought to allow limited resort to federal tribunals for some class actions. While the Senate rejected the bill, its language is instructive. It provided as follows:

The amendments made by this Act shall apply to --

(1)     any civil action commenced on or after the date of the enactment of this Act; and

(2)     any civil action commenced before such date of enactment in which a class certification order (as defined in section 1332(d)(1)(C) of title 28, United States Code, as amended by section 4 of this Act) is entered on or after such date of enactment.

*Id.* at 18-19.  Similarly, House Bill H.R. 516, which was introduced in the House on February 2, 2005, contained this same retroactive language and was rejected.  (Copy attached as Ex. 3 at 18).  The rejected language would have allowed defendants to remove pending class actions where a class certification order had not yet been entered or was entered after the date of enactment of the bill.  The final version of the CAFA does not contain this language.

Thus, it is evident that Congress considered language allowing retroactive application of the CAFA and rejected it.  In addition to this refusal to adopt retroactive language, Congress explicitly stated its intent that the CAFA not apply to currently filed cases.

> 2.     In Addition To The History Of Prior Bills, The Legislators Made Their Intent Expressly Known

In addition to Congress' refusal to include retroactive language in the final bill, it made clear its intent that the CAFA, in its final form, was not meant to apply to already-filed cases.[5]  Senator Dodd, a key supporter of the bill and architect of the version enacted into law, described the compromises made to get the bill passed.  He stated as follows:

> Mr. DODD.  As a result of our negotiations, we came back with 12 improvements in this bill, agreed to by myself, Senators FRIST, GRASSLEY, KOHI, LADRIEU, and SCHUMER, [including the following]:

---

[5]  The CAFA was the result of the Senate passing its compromise bill, S.5, and the House passing the identical bill without amendment.

THE COMPROMISE IS NOT RETROACTIVE.
Unlike the House bill, the compromise will not retroactively change the rules
governing jurisdiction over class actions.

151 CONG. REC. S1077 – S1079 (daily ed. Feb. 8, 2005), (Copy attached as Ex. 4).

Senator Dodd described this agreement as follows:

First, it does not apply retroactively, despite those who wanted it to. **A case filed
before the date of enactment will be unaffected by any provision of this
legislation**. Second, this legislation does not distinguish in any way or alter a
pending case.

151 CONG. REC. S1080 (daily ed. Feb. 8, 2005)(emphasis added), (Copy attached as Ex.

5).

Senator Kennedy, an opponent of the bill, emphasized that the bill would not

affect cases already pending in state court on the date of enactment. He stated as follows:

A case now pending in a Massachusetts State court illustrates how the bill
deprives local citizens of access to their own State courts when they become
innocent victims of widespread pollution occurring in their hometowns.

In April 2003 an oil barge ran aground on Buzzard's Bay off the coast of New
Bedford, MA, spilling 98,000 gallons of oil into the bay and polluting almost
90 miles of beaches and sensitive tidal marshes in the area. Homeowners filed
a class action suit in State court asking for compensation for the damage to
their property. One of the defendants, Bouchard Transportation Company,
has already been convicted of criminal negligence in causing the spill. The
defendant companies are from out of state. Even though the case occurred
entirely under Massachusetts laws, if the current bill, the proposed bill, had
been in effect when the case was filed, this case could be removed to Federal
court even though all the victims are full-time Massachusetts residents and
seeking relief in Massachusetts courts under Massachusetts laws.

**Because this bill is not retroactive, the case will not be affected by this
bill,** but with the passage of this act, similar future cases, properly brought in
the courts of the state where the harm occurs, can be removed to the Federal
courts. As a result, the victims will often be confronted by class action
certification procedures more onerous than those in their State courts. They
will face delays from congested Federal dockets. They will have to travel
greater distances from their homes to the courthouse. The procedural changes

in this bill seem abstract, but they will have a devastating consequence for real people.

151 CONG. REC. S1087 (daily ed. Feb. 8, 2005) (emphasis added), (Copy attached as Ex. 6).

Senator Specter, Chairman of the Senate Judiciary Committee and a supporter of the bill, stated:

> I think the Senate bill – this may be a little parochial pride – is more in keeping with an equitable handling of class action bills than is the House bill. **For example, the House bill would be retroactive and apply to matters now pending the State courts, which would be extraordinarily disruptive of many State court proceedings.** I think it is fair and accurate to say that the House bill is more restrictive than the Senate bill and our Senate bill, I think, is a better measure to achieve the targeted objective of having class actions decided in the Federal court with balance for plaintiffs and for defendants as well.

151 CONG. REC. S1225 (daily ed. Feb. 10, 2005)(emphasis added), (Copy attached as Ex. 7).

Representative Udall of Colorado, an opponent of the bill, stated:

> **Unlike earlier versions, S.5 [the CAFA] would not have a retroactive effect, so it would not affect pending cases.** It also does not include a provision for immediate interlocutory appeals of denials of class action certification, or for a stay of all discovery while the appeal was pending. And in several other ways, it differs for the better from previous versions.

151 CONG. REC. H 741 (daily ed. Feb. 17, 2005) (emphasis added), (Copy attached as Ex 8).

Representative Goodlatte, a supporter of the bill, stated:

> Now the truth about class action fairness and Vioxx. Critics have been arguing in the press that S.5 should be rejected because it will hurt consumers bringing Vioxx cases against Merck. The truth is, however, that this legislation will have absolutely no effect on Vioxx suits, and here is why.
> …
> Most of the class actions have been brought against Merck. **Since the legislation is not retroactive, it would absolutely no effect on the 75 class actions already filed** against Merck in the wake of the Vioxx withdrawal.

151 CONG. REC. H 753 (daily ed. Feb. 17, 2005)(emphasis added), (Copy attached hereto as Ex. 9).

The above-quoted language, as well as the changes made to the rejected House Bills, H.R. 1115 and H.R. 516, clearly evidence the intent of Congress to reject retroactive application of the CAFA. In fact, not a single legislator, supporter or opponent of the CAFA, in any floor statement or report remotely suggests that Defendants' interpretation of "commenced" is correct.

Accordingly, the word "commenced" within the context of the CAFA (and as interpreted in Massachusetts) means the date of filing of the complaint in state court, not the date of removal to federal court. This interpretation is consistent with the language used by Senator Dodd when he clearly stated: "A case filed before the date of enactment will be unaffected by any provision of this legislation." 151 CONG. REC. S1080 (daily ed., Feb. 8, 2005). (Copy attached as Ex. 5).

**C.    The Identical Argument Advanced by Defendants Has Already Been Denied By Other Courts**

In *Pritchett v. Office Depot, Inc.* 360 F. Supp.2d 1176 (D.Colo. Mar. 9, 2005), the court was faced with the same argument, should the Class Action Fairness Act apply to an action filed in state court prior to the effective date of the Act? The *Pritchett* court, in ruling that CAFA did not apply, sought guidance from Congress' intent. *Id.* at 1179. After reviewing the entire reported Congressional hearings, the Court found "no specific statement of contrary intent by any legislator evincing an intention that the Act permit removal of presently-pending cases." *Id.* at 1180. In fact, "it is clear that both supporters and opponents of the bill in both houses understood that the Act would not apply to pending cases." *Id.* at 1179. Accordingly, the court determined that the term

"commenced" in section 9 of the CAFA refers to the date the action was first filed in a

court of proper jurisdiction and not the date of removal to federal court. *Id.* at 1181. "To

read the word 'commenced' in the context of the Act to refer to the filing of a Notice of

Removal would require a strained reading of the word in both the colloquial and legal

sense." *Id.* at 1180. Finding that the CAFA did not apply to presently pending class

actions, the *Pritchett* Court granted Plaintiff's Motion to Remand. *Id.* at 1181.

The Tenth Circuit has also held that the term "commenced" for purposes of the

CAFA means when the action was first filed in state court and not when it was removed

to federal court. *Pritchett v. Office Depot, Inc.*, 404 F.3d 1232, 1238 (10th Cir., Colo,

April 11, 2005). After reviewing the language and legislative history of CAFA, looking

at public policy and prior precedent, and applying the intent of Congress with a

reasonable narrow construction of the term "commenced," the Court of Appeals

concluded that removal to federal court does not "commence" an action for purposes of

CAFA. *Id.* at *1235-38. Permitting removal would allow Defendant to apply new rules

to "a statute that was designed, in the first place, to curtail jurisdictional gaming and

forum-shopping." *Id.* at *1238.

### D.    "Commenced" Means When The Complaint Was Filed In Suffolk Superior Court On December 23, 2004

Mass. R. Civ. P. 3 states: "A civil action is commenced by (1) mailing to the clerk

of the proper court by certified or registered mail a complaint and an entry fee prescribed

by law, or (2) filing such complaint and an entry fee with such clerk." "Commencement

of the action must always precede service." 6 JAMES W. SMITH, HILLER B. ZOBEL,

Rule Practice, § 4.2. (1996). "It should be noted that in all cases under the Rules of Civil

Procedure, an action is considered commenced, for all practical purposes, including the

applicable statute of limitations, when the plaintiff mails (registered or certified) to the clerk the complaint and entry fee, or when the clerk receives the complaint and fee," 9 JOSEPH R. NOLAN & BRUCE HENRY, *Civil Practice* § 8.11 (3d ed. 2004).

Mass. R. Civ. P. 15(c) states: **"Relation Back of Amendments**. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment (including an amendment changing a party) relates back to the original pleading." The law in the Commonwealth with respect to amendments is more liberal than elsewhere - an amendment to a complaint relates back to the date of the original writ. *Wadsworth v. Boston Gas Company*, 352 Mass. 86, 89 (1967).

The plain meaning of the word "commenced" has been interpreted by a court within this District. In *Santiago v. Barre National, Inc.*, 795 F. Supp. 508, 510 (D. Mass. 1992), the court (Woodlock, J.) in deciding whether removal was barred by the one year statutory prohibition, ruled that the action was commenced by the filing of the complaint in state court. "The question of when an action 'commences' is to be determined by the applicable state law." *Id.* at 510 (citations omitted). "Under Mass. R. Civ. P. 3, [a] civil action statute is commenced by (1) mailing to the clerk of the proper court by certified or registered mail a complaint and an entry fee prescribed by law, or (2) filing such complaint and an entry fee with such clerk." *Id.  See also Finkel v. Natale Rota, Inc.,* 19 Mass.App.Ct. 55, 56 n.2 (1984), *rev denied*, 393 Mass. 1106 (1985) (action is "commenced" by delivering the complaint and the entry fee to the clerk of the proper court or by mailing them to the clerk by certified or registered mail).

The statute relied upon by Defendants in removing this case, 28 U.S.C. § 1446(b), and the cases that have interpreted the meaning of "commencement" in the statute, support Plaintiffs' argument. 28 U.S.C. § 1446(b) states that "a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after **commencement** of the action." (emphasis added). "[A] common sense reading of the text of the statute," *Burke v. Atlantic Fuels Marketing Corp.*, 775 F. Supp. 474, 477 (1991), demonstrates that removal is improper if it occurs more than one year after the action first commences. *Id.*

Another court took a pragmatic approach and interpreted the plain meaning of the word "commenced." *Barron v. American Motorists Ins. Co.*, 170 F. Supp. 412, 414 (D.C. Tex. 1958).

> The definition and application of the word 'commenced' is the term over which the controversy arises. Did the cases before us actually commence in the State court or Federal court? A suit must commence somewhere. It can't be removed until it has been commenced. You can't remove something that doesn't exist.
> 'Commence. * * * to begin, to perform the first act of; as, to commence a lawsuit.' Webster.
> 'Commence. To do the first act in anything; to take the first step.' 7 Cyc. p. 405.
> 'Commence. Present Tense. To begin, or cause to begin to be, to do the first act, or take the first step, in anything, to enter upon, or to originate; to perform the first act of, to start;
> 'As in these phrases, 'commence actual operations,' 'commence an action for taxes,' 'commence a proceeding in error,' 'commence drilling operations' * * * 15 C.J.S. p. 247.
> 'Commencement. Defined in the Century Dictionary as the act or fact of commencing; beginning; origin; first existence; inception. * * *' 15 C.J.S. p. 248.
> 'Commencement Of Action Or Other Proceeding. The commencement of an action to enforce a right before the statute of limitations has run against it suspends the running of the statute * * *.' 54 C.J.S. Limitations of Actions § 261, p. 290.
> A word or a term used in any document whether it be a contract or an act

> of law must be taken in its usual meaning. 'Commence' means to begin
> according to Webster and according to the universal adoption of the word.

*Barron.*, 170 F. Supp. at 414 (concluding "[w]e think that … the act means what it says

and that commenced applies to the beginning of a lawsuit when filed in any court

holding jurisdiction of the parties and subject matter.").

Regardless of whether one looks at the well-established law in Massachusetts, the

clear intent of Congress, or the plain meaning of the word "commence," the answer is

the same. Commencement of this action occurred when it was first filed with Suffolk

Superior Court on December 23, 2004.

### E.    Defendants Cannot Overcome The Heavy Burden Necessary to Sustain Removal

"When a party removes a state court action to the federal district court on the

basis of diversity of citizenship, and the party seeking remand challenges the

jurisdictional predicate for removal, 'the burden falls squarely upon the removing party to

establish its right to a federal forum by competent proof.'" *American Buildings Company*

*v. Varicon, Inc.,* 616 F. Supp. 641, 643 (D. Mass. 1985) (quoting *R.G. Barry Corp. v.*

*Mushroom Makers, Inc.,* 612 F.2d 651, 655 (2d Cir. 1979); *See also, Hodges v. Demchuk*,

866 F. Supp. 730, 732 (S.D.NY. 1994) ("On a motion for remand, the party seeking to

sustain the removal, not the party seeking remand, bears the burden of demonstrating that

removal was proper.")(citations omitted); *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d

Cir. 1998) ("It is hornbook law that party invoking federal jurisdiction bears the burden

of proving facts to establish that jurisdiction.").

Defendants advance CAFA as their sole ground for removal of this consumer

class action predicated solely upon state law. Defendants overlook the Massachusetts

Rules of Civil Procedure and fail to cite a single Massachusetts authority to support their improper removal. In fact, Defendants' unsupported conjecture can best be summed up in their own papers -- "we believe [this] to be the correct view of the law ... ." (Notice of Removal, ¶ 11). Given that the term "commenced" is clearly defined in Massachusetts by rule and case law and that this action was commenced on December 23, 2004, well before the enactment of CAFA, Defendants have not and cannot sustain their burden of demonstrating that removal was proper.

## IV.    CONCLUSION

For the reasons advanced above, Plaintiffs' Motion to Remand this case to the Suffolk Superior Court Department should be ALLOWED.

DATED: May 19, 2005                    Respectfully submitted,

                                       /s/ Daniel D'Angelo
                                       Robert J. Bonsignore, BBO# 547880
                                       Daniel D'Angelo, BBO# 630321
                                       BONSIGNORE & BREWER
                                       23 Forest Street
                                       Medford, MA 02155
                                       Tel: (781) 391-9400
                                       Fax: (781) 391-9496


                                       ATTORNEYS FOR PLAINTIFFS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................ii

I.      INTRODUCTION.......................................................................................1

II.     STATEMENT OF FACTS..........................................................................4

III.    ARGUMENT..............................................................................................5

      A.      Defendants Have The Burden Of Proof To Establish Removal
            Jurisdiction...................................................................................5

      B.      Congress' Intention Is Clear – CAFA Should Not Apply To Cases
            Currently On File...........................................................................6

            1.      Similar Bills Contained An Express Retroactive Provision
                 That Did Not Survive The Final Draft............................................7

            2.      In Addition To The History Of Prior Bills, The Legislators Made
                 Their Intent Expressly Known........................................................8

      C.      The Identical Argument Advanced By Defendants Has Already Been
            Denied By Other Courts.................................................................11

      D.      "Commenced" Means When The Complaint Was Filed in Suffolk
            Superior Court On December 23, 2004............................................12

      E.      Defendants Cannot Overcome The Heavy Burden Necessary To Sustain
            Removal........................................................................................15

IV.     CONCLUSION..........................................................................................16

## TABLE OF AUTHORITIES

### Cases

1. *American Buildings Co. v. Varicon, Inc.*
   616 F. Supp. 641 (D. Mass. 1985)………………………………...…......6, 15

2. *Bally v. National Collegiate Athletic Association*
   707 F. Supp. 57 (D. Mass. 1988)………………………………………………6

3. *Barron v. American Motorists Inc. Co.*
   170 F. Supp. 412 (D.C. Tex. 1958)………………………………………14, 15

4. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*
   467 U.S. 837 n.9 (1984)………………………………………….………..7

5. *Ciardi v. F. Hoffmann-La Roche, Ltd., et al.*
   2000 WL 159320 (D. Mass. February 7, 2000)……………………….………..5

6. *Crosby v. America Online, Inc.*
   967 F. Supp. 257 (N.D. Ohio 1997)………………………………...……..6

7. *Danca v. Private Health Care Systems, Inc.*
   185 F.3d 1 (1st Cir. 1999)……………………………………...………..5

8. *Finkel v. Natale Rota, Inc.*
   19 Mass. App. Ct. 55 (1984)……………………………...…………....13

9. *Freitas v. First New Hampshire Mortgage Corp.*
   1998 WL 657606 at *5 (D. R.I. 1998)…………………………….…...……..6

10. *Hairston v. Home Loan and Investment Bank*
    814 F. Supp. 180 (D. Mass. 1993)…………………………………….…...5

11. *Hodges v. Demchuk*
    866 F. Supp. 730 (S.D. N.Y. 1994)…………………………………….15

12. *Linardos v. Fortuna*
    157 F.3d 945, 947 (2d Cir. 1998)…………………………….…………..15

13. *Pritchett v. Office Depot, Inc.*
    360 F. Supp. 2dd 1176 (D. Colo. 2005)………………………….…...…….11
    404 F.3d 1232 (10th Cir. 2005)……………………………………...…..12

14. *Radlo v. Rhone-Poulenc, S.A.*
    241 F. Supp.2d 61, 64 (D. Mass. 2002)……………………………..………5

15. *R.G. Barry Corp. v. Mushroom Makers, Inc.*
    612 F.2d 651 (2d Cir. 1979)………………………………………………15

16. *Rosack v. Volvo of America Corp.*
    421 F. Supp. 933 (N.D. Cal. 1976)…………………………….…………..6

17. *Santiago v. Barre National, Inc.*
    795 F. Supp. 508 (D. Mass. 1992)………………………..………………..6, 13

18. *Shamrock Oil Corp. v. Sheets*
    313 U.S. 100 (1941)………………………………………………………..6
    61 S.Ct. 868 (1941)………………………………………………………..6
    85 L.Ed.2d 1214 (1941)……………………………………………….......6

19. *Sherwood v. Microsoft Corp.*
    91 F. Supp. 2d 1196 (M.D. Tenn. 2000)………………………..…………6

20. *Spielman v. Genzyme Corporation*
    193 F.R.D. 19 (D. Mass. 2000)……………………………………………5
    251 F.3d 1 (1ˢᵗ Cir. 2001)…………………………………………………6

21. *U.S. v. Cooper*
    396 F.3d 308 (3ʳᵈ Cir. 2005)……………………………...…………………7


Rules, Statutes and other Authorities


M.G.L. c. 93A………………………………………………………...……………3

M.G.L. c. 93A § 2……………………………………………………………….…2

MG.L. c. 93A §§ 2 & 9……………………………………………………………2

940 CMR § 3.02……………………………………………………………………2

28 U.S.C. § 1331……………………………………………………….…………..5

28 U.S.C. § 1332……………………………………………………….…………..5

28 U.S.C. § 1332(d)(1)(C)…………………………………………………...…….7

28 U.S.C. § 1332(d)(2)(A)…………………………………………………………2, 5

28 U.S.C. § 1441…………………………………………………………………………6

28 U.S.C. § 1446(b)……………………………………………………………..…………14

28 U.S.C. § 1447(c)………………………………………………………………………5

Class Action Fairness Act of 2005, Pub. L. No. 109-2,
    119 Stat. 4 § 9…………………………………..……1, 2, 3, 5, 6, 7, 8, 10, 11, 12, 15, 16

Mass. R. Civ. P. 3…………………………………………………………………3, 12, 13

Mass. R. Civ. P. 15(c)……………………………………………………………..3, 13

6 James W. Smith, Hiller B. Zobel, *Rules Practice* § 4.2 (1996)………………………..3, 12

9 Joseph R. Nolan & Bruce Henry, *Civil Practice* § 8.11 (3d ed. 2004)…………….…..3, 13

# EXHIBIT 1



### UNITED STATES PUBLIC LAWS
#### 109th Congress - First Session
#### Convening January 7, 2005

Copr. © 2005 Thomson/West. No Claim to Orig. U.S. Govt.Works

Additions and Deletions are not identified in this database.
Vetoed provisions within tabular material are not displayed

PL 109-2 (S 5)
February 18, 2005
CLASS ACTION FAIRNESS ACT OF 2005

AN ACT To amend the procedures that apply to consideration of interstate class actions to assure fairer outcomes for class members and defendants, and for other purposes.

Be it enacted by the Senate and House of Representatives of the United States
of America in Congress assembled,

SECTION 1. SHORT TITLE; REFERENCE; TABLE OF CONTENTS.

<< 28 USCA § 1 NOTE >>

(a) SHORT TITLE.--This Act may be cited as the "Class Action Fairness Act of 2005".

(b) REFERENCE.--Whenever in this Act reference is made to an amendment to, or repeal of, a section or other provision, the reference shall be considered to be made to a section or other provision of title 28, United States Code.

(c) TABLE OF CONTENTS.--The table of contents for this Act is as follows:

Sec. 1. Short title; reference; table of contents.

Sec. 2. Findings and purposes.

Sec. 3. Consumer class action bill of rights and improved procedures for interstate class actions.

Sec. 4. Federal district court jurisdiction for interstate class actions.

Sec. 5. Removal of interstate class actions to Federal district court.

Sec. 6. Report on class action settlements.

Sec. 7. Enactment of Judicial Conference recommendations.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 109-2, 2005 S 5
PL 109-2, February 18, 2005, 119 Stat 4
(Cite as: 119 Stat 4)

Page 2

Sec. 8. Rulemaking authority of Supreme Court and Judicial Conference.

Sec. 9. Effective date.

<< 28 USCA § 1711 NOTE >>

SEC. 2. FINDINGS AND PURPOSES.

(a) FINDINGS.--Congress finds the following:

(1) Class action lawsuits are an important and valuable part of the legal system when they permit the fair and efficient resolution of legitimate claims of numerous parties by allowing the claims to be aggregated into a single action against a defendant that has allegedly caused harm.

(2) Over the past decade, there have been abuses of the class action device that have--

  (A) harmed class members with legitimate claims and defendants that have acted responsibly;

  (B) adversely affected interstate commerce; and

  (C) undermined public respect for our judicial system.

(3) Class members often receive little or no benefit from class actions, and are sometimes harmed, such as where--

  (A) counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value;

  (B) unjustified awards are made to certain plaintiffs at the expense of other class members; and

  *5 (C) confusing notices are published that prevent class members from being able to fully understand and effectively exercise their rights.

(4) Abuses in class actions undermine the national judicial system, the free flow of interstate commerce, and the concept of diversity jurisdiction as intended by the framers of the United States Constitution, in that State and local courts are--

  (A) keeping cases of national importance out of Federal court;

  (B) sometimes acting in ways that demonstrate bias against out-of-State defendants; and

  (C) making judgments that impose their view of the law on other States and bind the rights of the residents of those States.

(b) PURPOSES.--The purposes of this Act are to--

(1) assure fair and prompt recoveries for class members with legitimate claims;

(2) restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction; and

(3) benefit society by encouraging innovation and lowering consumer prices.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

SEC. 3. CONSUMER CLASS ACTION BILL OF RIGHTS AND IMPROVED PROCEDURES FOR INTERSTATE CLASS ACTIONS.

<< 28 USCA prec. § 1711 >>

(a) IN GENERAL.--Part V is amended by inserting after chapter 113 the following:

"CHAPTER 114--CLASS ACTIONS

"Sec.

"1711. Definitions.

"1712. Coupon settlements.

"1713. Protection against loss by class members.

"1714. Protection against discrimination based on geographic location.

"1715. Notifications to appropriate Federal and State officials.

<< 28 USCA § 1711 >>

"§ 1711. Definitions

"In this chapter:

"(1) CLASS.--The term 'class' means all of the class members in a class action.

"(2) CLASS ACTION.--The term 'class action' means any civil action filed in a district court of the United States under rule 23 of the Federal Rules of Civil Procedure or any civil action that is removed to a district court of the United States that was originally filed under a State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representatives as a class action.

"(3) CLASS COUNSEL.--The term 'class counsel' means the persons who serve as the attorneys for the class members in a proposed or certified class action.

"(4) CLASS MEMBERS.--The term 'class members' means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action.

"(5) PLAINTIFF CLASS ACTION.--The term 'plaintiff class action' means a class action in which class members are plaintiffs.

*6 "(6) PROPOSED SETTLEMENT.--The term 'proposed settlement' means an agreement regarding a class action that is subject to court approval and that, if approved, would be binding on some or all class members.

<< 28 USCA § 1712 >>

"§ 1712. Coupon settlements

"(a) CONTINGENT FEES IN COUPON SETTLEMENTS.--If a proposed settlement in a class action provides

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.

"(b) OTHER ATTORNEY'S FEE AWARDS IN COUPON SETTLEMENTS.--

"(1) IN GENERAL.--If a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action.

"(2) COURT APPROVAL.--Any attorney's fee under this subsection shall be subject to approval by the court and shall include an appropriate attorney's fee, if any, for obtaining equitable relief, including an injunction, if applicable. Nothing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney's fees.

"(c) ATTORNEY'S FEE AWARDS CALCULATED ON A MIXED BASIS IN COUPON SETTLEMENTS.--If a proposed settlement in a class action provides for an award of coupons to class members and also provides for equitable relief, including injunctive relief--

"(1) that portion of the attorney's fee to be paid to class counsel that is based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (a); and

"(2) that portion of the attorney's fee to be paid to class counsel that is not based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (b).

"(d) SETTLEMENT VALUATION EXPERTISE.--In a class action involving the awarding of coupons, the court may, in its discretion upon the motion of a party, receive expert testimony from a witness qualified to provide information on the actual value to the class members of the coupons that are redeemed.

"(e) JUDICIAL SCRUTINY OF COUPON SETTLEMENTS.--In a proposed settlement under which class members would be awarded coupons, the court may approve the proposed settlement only after a hearing to determine whether, and making a written finding that, the settlement is fair, reasonable, and adequate for class members. The court, in its discretion, may also require that a proposed settlement agreement provide for the distribution of a portion of the value of unclaimed coupons to 1 or more charitable or governmental organizations, as agreed to by the parties. The distribution and redemption of any proceeds under this subsection shall not be used to calculate attorneys' fees under this section.

*7

<< 28 USCA § 1713 >>

"§ 1713. Protection against loss by class members

"The court may approve a proposed settlement under which any class member is obligated to pay sums to class counsel that would result in a net loss to the class member only if the court makes a written finding that nonmonetary benefits to the class member substantially outweigh the monetary loss.

<< 28 USCA § 1714 >>

"§ 1714. Protection against discrimination based on geographic location

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 109-2, 2005 S 5
PL 109-2, February 18, 2005, 119 Stat 4
(Cite as: 119 Stat 4)

Page 5

"The court may not approve a proposed settlement that provides for the payment of greater sums to some class members than to others solely on the basis that the class members to whom the greater sums are to be paid are located in closer geographic proximity to the court.

<< 28 USCA § 1715 >>

"§ 1715. Notifications to appropriate Federal and State officials

"(a) DEFINITIONS.--

"(1) APPROPRIATE FEDERAL OFFICIAL.--In this section, the term 'appropriate Federal official' means--

   "(A) the Attorney General of the United States; or

   "(B) in any case in which the defendant is a Federal depository institution, a State depository institution, a depository institution holding company, a foreign bank, or a nondepository institution subsidiary of the foregoing (as such terms are defined in section 3 of the Federal Deposit Insurance Act (12 U.S.C. 1813)), the person who has the primary Federal regulatory or supervisory responsibility with respect to the defendant, if some or all of the matters alleged in the class action are subject to regulation or supervision by that person.

"(2) APPROPRIATE STATE OFFICIAL.--In this section, the term 'appropriate State official' means the person in the State who has the primary regulatory or supervisory responsibility with respect to the defendant, or who licenses or otherwise authorizes the defendant to conduct business in the State, if some or all of the matters alleged in the class action are subject to regulation by that person. If there is no primary regulator, supervisor, or licensing authority, or the matters alleged in the class action are not subject to regulation or supervision by that person, then the appropriate State official shall be the State attorney general.

"(b) IN GENERAL.--Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement consisting of--

"(1) a copy of the complaint and any materials filed with the complaint and any amended complaints (except such materials shall not be required to be served if such materials are made electronically available through the Internet and such service includes notice of how to electronically access such material);

"(2) notice of any scheduled judicial hearing in the class action;

*8 "(3) any proposed or final notification to class members of--

   "(A)(i) the members' rights to request exclusion from the class action; or

   "(ii) if no right to request exclusion exists, a statement that no such right exists; and

   "(B) a proposed settlement of a class action;

"(4) any proposed or final class action settlement;

"(5) any settlement or other agreement contemporaneously made between class counsel and counsel for the defendants;

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 109-2, 2005 S 5
PL 109-2, February 18, 2005, 119 Stat 4
(Cite as: 119 Stat 4)

"(6) any final judgment or notice of dismissal;

"(7)(A) if feasible, the names of class members who reside in each State and the estimated proportionate share of the claims of such members to the entire settlement to that State's appropriate State official; or

"(B) if the provision of information under subparagraph (A) is not feasible, a reasonable estimate of the number of class members residing in each State and the estimated proportionate share of the claims of such members to the entire settlement; and

"(8) any written judicial opinion relating to the materials described under subparagraphs (3) through (6).

"(c) DEPOSITORY INSTITUTIONS NOTIFICATION.--

"(1) FEDERAL AND OTHER DEPOSITORY INSTITUTIONS.--In any case in which the defendant is a Federal depository institution, a depository institution holding company, a foreign bank, or a non-depository institution subsidiary of the foregoing, the notice requirements of this section are satisfied by serving the notice required under subsection (b) upon the person who has the primary Federal regulatory or supervisory responsibility with respect to the defendant, if some or all of the matters alleged in the class action are subject to regulation or supervision by that person.

"(2) STATE DEPOSITORY INSTITUTIONS.--In any case in which the defendant is a State depository institution (as that term is defined in section 3 of the Federal Deposit Insurance Act (12 U.S.C. 1813)), the notice requirements of this section are satisfied by serving the notice required under subsection (b) upon the State bank supervisor (as that term is defined in section 3 of the Federal Deposit Insurance Act (12 U.S.C. 1813)) of the State in which the defendant is incorporated or chartered, if some or all of the matters alleged in the class action are subject to regulation or supervision by that person, and upon the appropriate Federal official.

"(d) FINAL APPROVAL.--An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b).

"(e) NONCOMPLIANCE IF NOTICE NOT PROVIDED.--

"(1) IN GENERAL.--A class member may refuse to comply with and may choose not to be bound by a settlement agreement or consent decree in a class action if the class member demonstrates that the notice required under subsection (b) has not been provided.

"(2) LIMITATION.--A class member may not refuse to comply with or to be bound by a settlement agreement or consent *9 decree under paragraph (1) if the notice required under subsection (b) was directed to the appropriate Federal official and to either the State attorney general or the person that has primary regulatory, supervisory, or licensing authority over the defendant.

"(3) APPLICATION OF RIGHTS.--The rights created by this subsection shall apply only to class members or any person acting on a class member's behalf, and shall not be construed to limit any other rights affecting a class member's participation in the settlement.

"(f) RULE OF CONSTRUCTION.--Nothing in this section shall be construed to expand the authority of, or impose any obligations, duties, or responsibilities upon, Federal or State officials.".

<< 28 USCA prec. § 1651 >>

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(b) TECHNICAL AND CONFORMING AMENDMENT.--The table of chapters for part V is amended by inserting after the item relating to chapter 113 the following:

"114. Class Action.......................................................1711".

SEC. 4. FEDERAL DISTRICT COURT JURISDICTION FOR INTERSTATE CLASS ACTIONS.

(a) APPLICATION OF FEDERAL DIVERSITY JURISDICTION.--Section 1332 is amended--

<< 28 USCA § 1332 >>

(1) by redesignating subsection (d) as subsection (e); and

<< 28 USCA § 1332 >>

(2) by inserting after subsection (c) the following:

"(d)(1) In this subsection--

"(A) the term 'class' means all of the class members in a class action;

"(B) the term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action;

"(C) the term 'class certification order' means an order issued by a court approving the treatment of some or all aspects of a civil action as a class action; and

"(D) the term 'class members' means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action.

"(2) The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which--

"(A) any member of a class of plaintiffs is a citizen of a State different from any defendant;

"(B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or

"(C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

"(3) A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of--

*10 "(A) whether the claims asserted involve matters of national or interstate interest;

"(B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 109-2, 2005 S 5
PL 109-2, February 18, 2005, 119 Stat 4
(Cite as: 119 Stat 4)

"(C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;

"(D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

"(E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

"(F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

"(4) A district court shall decline to exercise jurisdiction under paragraph (2)--

"(A)(i) over a class action in which--

"(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

"(II) at least 1 defendant is a defendant--

"(aa) from whom significant relief is sought by members of the plaintiff class;

"(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

"(cc) who is a citizen of the State in which the action was originally filed; and

"(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

"(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

"(B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

"(5) Paragraphs (2) through (4) shall not apply to any class action in which--

"(A) the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief; or

"(B) the number of members of all proposed plaintiff classes in the aggregate is less than 100.

"(6) In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

*11 "(7) Citizenship of the members of the proposed plaintiff classes shall be determined for purposes of paragraphs (2) through (6) as of the date of filing of the complaint or amended complaint, or, if the case stated by the initial pleading is not subject to Federal jurisdiction, as of the date of service by plaintiffs of an amended pleading, motion, or other paper, indicating the existence of Federal jurisdiction.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 109-2, 2005 S 5
PL 109-2, February 18, 2005, 119 Stat 4
(Cite as: 119 Stat 4)

Page 9

"(8) This subsection shall apply to any class action before or after the entry of a class certification order by the court with respect to that action.

"(9) Paragraph (2) shall not apply to any class action that solely involves a claim--

"(A) concerning a covered security as defined under 16(f)(3) of the Securities Act of 1933 (15 U.S.C. 78p(f)(3)) and section 28(f)(5)(E) of the Securities Exchange Act of 1934 (15 U.S.C. 78bb(f)(5)(E));

"(B) that relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized; or

"(C) that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b(a)(1)) and the regulations issued thereunder).

"(10) For purposes of this subsection and section 1453, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.

"(11)(A) For purposes of this subsection and section 1453, a mass action shall be deemed to be a class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs.

"(B)(i)As used in subparagraph (A), the term 'mass action' means any civil action (except a civil action within the scope of section 1711(2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).

"(ii) As used in subparagraph (A), the term 'mass action' shall not include any civil action in which--

"(I) all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State;

"(II) the claims are joined upon motion of a defendant;

"(III) all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action; or

"(IV) the claims have been consolidated or coordinated solely for pretrial proceedings.

"(C)(i) Any action(s) removed to Federal court pursuant to this subsection shall not thereafter be transferred to any other court *12 pursuant to section 1407, or the rules promulgated thereunder, unless a majority of the plaintiffs in the action request transfer pursuant to section 1407.

"(ii) This subparagraph will not apply--

"(I) to cases certified pursuant to rule 23 of the Federal Rules of Civil Procedure; or

"(II) if plaintiffs propose that the action proceed as a class action pursuant to rule 23 of the Federal Rules of Civil Procedure.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 109-2, 2005 S 5
PL 109-2, February 18, 2005, 119 Stat 4
(Cite as: 119 Stat 4)

Page 10

"(D) The limitations periods on any claims asserted in a mass action that is removed to Federal court pursuant to this subsection shall be deemed tolled during the period that the action is pending in Federal court.".

(b) CONFORMING AMENDMENTS.--

<< 28 USCA § 1335 >>

(1) Section 1335(a)(1) is amended by inserting "subsection (a) or (d) of" before "section 1332".

<< 28 USCA § 1603 >>

(2) Section 1603(b)(3) is amended by striking "(d)" and inserting "(e)".

SEC. 5. REMOVAL OF INTERSTATE CLASS ACTIONS TO FEDERAL DISTRICT COURT.

(a) IN GENERAL.--Chapter 89 is amended by adding after section 1452 the following:

<< 28 USCA § 1453 >>

"§ 1453. Removal of class actions

"(a) DEFINITIONS.--In this section, the terms 'class', 'class action', 'class certification order', and 'class member' shall have the meanings given such terms under section 1332(d)(1).

"(b) IN GENERAL.--A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(b) shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants.

"(c) REVIEW OF REMAND ORDERS.--

"(1) IN GENERAL.--Section 1447 shall apply to any removal of a case under this section, except that notwithstanding section 1447(d), a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not less than 7 days after entry of the order.

"(2) TIME PERIOD FOR JUDGMENT.--If the court of appeals accepts an appeal under paragraph (1), the court shall complete all action on such appeal, including rendering judgment, not later than 60 days after the date on which such appeal was filed, unless an extension is granted under paragraph (3).

"(3) EXTENSION OF TIME PERIOD.--The court of appeals may grant an extension of the 60-day period described in paragraph (2) if--

"(A) all parties to the proceeding agree to such extension, for any period of time; or

"(B) such extension is for good cause shown and in the interests of justice, for a period not to exceed 10 days.

"(4) DENIAL OF APPEAL.--If a final judgment on the appeal under paragraph (1) is not issued before the end of the period *13 described in paragraph (2), including any extension under paragraph (3), the appeal shall be denied.

"(d) EXCEPTION.--This section shall not apply to any class action that solely involves--

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 109-2, 2005 S 5
PL 109-2, February 18, 2005, 119 Stat 4
**(Cite as: 119 Stat 4)**

"(1) a claim concerning a covered security as defined under section 16(f)(3) of the Securities Act of 1933 (15 U.S.C. 78p(f)(3)) and section 28(f)(5)(E) of the Securities Exchange Act of 1934 (15 U.S.C. 78bb(f)(5)(E));

"(2) a claim that relates to the internal affairs or governance of a corporation or other form of business enterprise and arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized; or

"(3) a claim that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b(a)(1)) and the regulations issued thereunder).".

<< 28 USCA prec. § 1441 >>

(b) TECHNICAL AND CONFORMING AMENDMENTS.--The table of sections for chapter 89 is amended by adding after the item relating to section 1452 the following:

"1453. Removal of class actions.".

SEC. 6. REPORT ON CLASS ACTION SETTLEMENTS.

(a) IN GENERAL.--Not later than 12 months after the date of enactment of this Act, the Judicial Conference of the United States, with the assistance of the Director of the Federal Judicial Center and the Director of the Administrative Office of the United States Courts, shall prepare and transmit to the Committees on the Judiciary of the Senate and the House of Representatives a report on class action settlements.

(b) CONTENT.--The report under subsection (a) shall contain--

(1) recommendations on the best practices that courts can use to ensure that proposed class action settlements are fair to the class members that the settlements are supposed to benefit;

(2) recommendations on the best practices that courts can use to ensure that--

(A) the fees and expenses awarded to counsel in connection with a class action settlement appropriately reflect the extent to which counsel succeeded in obtaining full redress for the injuries alleged and the time, expense, and risk that counsel devoted to the litigation; and

(B) the class members on whose behalf the settlement is proposed are the primary beneficiaries of the settlement; and

(3) the actions that the Judicial Conference of the United States has taken and intends to take toward having the Federal judiciary implement any or all of the recommendations contained in the report.

(c) AUTHORITY OF FEDERAL COURTS.--Nothing in this section shall be construed to alter the authority of the Federal courts to supervise attorneys' fees.

SEC. 7. ENACTMENT OF JUDICIAL CONFERENCE RECOMMENDATIONS.

<< 28 USCA § 2074 NOTE >>

Notwithstanding any other provision of law, the amendments to rule 23 of the Federal Rules of Civil Procedure, which are *14 set forth in the order entered by the Supreme Court of the United States on March 27, 2003, shall

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

take effect on the date of enactment of this Act or on December 1, 2003 (as specified in that order), whichever occurs first.

<< 28 USCA § 2071 NOTE >>

## SEC. 8. RULEMAKING AUTHORITY OF SUPREME COURT AND JUDICIAL CONFERENCE.

Nothing in this Act shall restrict in any way the authority of the Judicial Conference and the Supreme Court to propose and prescribe general rules of practice and procedure under chapter 131 of title 28, United States Code.

<< 28 USCA § 1332 NOTE >>

## SEC. 9. EFFECTIVE DATE.

The amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act..

Approved February 18, 2005.

**PL 109-2**, 2005 S 5

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2

108TH CONGRESS
1ST SESSION

# H. R. 1115

---

# AN ACT

To amend the procedures that apply to consideration of
interstate class actions to assure fairer outcomes for
class members and defendants, to outlaw certain prac-
tices that provide inadequate settlements for class mem-
bers, to assure that attorneys do not receive a dispropor-
tionate amount of settlements at the expense of class
members, to provide for clearer and simpler information
in class action settlement notices, to assure prompt con-
sideration of interstate class actions, to amend title 28,
United States Code, to allow the application of the prin-
ciples of Federal diversity jurisdiction to interstate class
actions, and for other purposes.

2

1  *Be it enacted by the Senate and House of Representa-*

2  *tives of the United States of America in Congress assembled,*

3  **SECTION 1. SHORT TITLE; REFERENCE; TABLE OF CON-**

4  **TENTS.**

5  (a) SHORT TITLE.—This Act may be cited as the

6  "Class Action Fairness Act of 2003".

7  (b) REFERENCE.—Whenever in this Act reference is

8  made to an amendment to, or repeal of, a section or other

9  provision, the reference shall be considered to be made to

10  a section or other provision of title 28, United States

11  Code.

12  (c) TABLE OF CONTENTS.—The table of contents for

13  this Act is as follows:

Sec. 1. Short title; reference; table of contents.
Sec. 2. Findings and purposes.
Sec. 3. Consumer class action bill of rights and improved procedures for inter-
        state class actions.
Sec. 4. Federal district court jurisdiction of interstate class actions.
Sec. 5. Removal of interstate class actions to Federal district court.
Sec. 6. Appeals of class action certification orders.
Sec. 7. Enactment of Judicial Conference recommendations.
Sec. 8. Effective date.

14  **SEC. 2. FINDINGS AND PURPOSES.**

15  (a) FINDINGS.—The Congress finds as follows:

16  (1) Class action lawsuits are an important and

17  valuable part of our legal system when they permit

18  the fair and efficient resolution of legitimate claims

19  of numerous parties by allowing the claims to be ag-

20  gregated into a single action against a defendant

21  that has allegedly caused harm.

3

1    (2) Over the past decade, there have been
2    abuses of the class action device that have—

3         (A) harmed class members with legitimate
4         claims and defendants that have acted respon-
5         sibly;

6         (B) adversely affected interstate commerce;
7         and

8         (C) undermined public respect for the judi-
9         cial system in the United States.

10    (3) Class members have been harmed by a
11    number of actions taken by plaintiffs' lawyers, which
12    provide little or no benefit to class members as a
13    whole, including—

14         (A) plaintiffs' lawyers receiving large fees,
15         while class members are left with coupons or
16         other awards of little or no value;

17         (B) unjustified rewards being made to cer-
18         tain plaintiffs at the expense of other class
19         members; and

20         (C) the publication of confusing notices
21         that prevent class members from being able to
22         fully understand and effectively exercise their
23         rights.

24    (4) Through the use of artful pleading, plain-
25    tiffs are able to avoid litigating class actions in Fed-

4

1    eral court, forcing businesses and other organiza-
2    tions to defend interstate class action lawsuits in
3    county and State courts where—

4            (A) the lawyers, rather than the claimants,
5        are likely to receive the maximum benefit;

6            (B) less scrutiny may be given to the mer-
7        its of the case; and

8            (C) defendants are effectively forced into
9        settlements, in order to avoid the possibility of
10       huge judgments that could destabilize their
11       companies.

12   (5) These abuses undermine the Federal judi-
13   cial system, the free flow of interstate commerce,
14   and the intent of the framers of the Constitution in
15   creating diversity jurisdiction, in that county and
16   State courts are—

17           (A) handling interstate class actions that
18       affect parties from many States;

19           (B) sometimes acting in ways that dem-
20       onstrate bias against out-of-State defendants;
21       and

22           (C) making judgments that impose their
23       view of the law on other States and bind the
24       rights of the residents of those States.

5

1     (6) Abusive interstate class actions have

2 harmed society as a whole by forcing innocent par-

3 ties to settle cases rather than risk a huge judgment

4 by a local jury, thereby costing consumers billions of

5 dollars in increased costs to pay for forced settle-

6 ments and excessive judgments.

7 (b) PURPOSES.—The purposes of this Act are—

8     (1) to assure fair and prompt recoveries for

9 class members with legitimate claims;

10     (2) to protect responsible companies and other

11 institutions against interstate class actions in State

12 courts;

13     (3) to restore the intent of the framers of the

14 Constitution by providing for Federal court consider-

15 ation of interstate class actions; and

16     (4) to benefit society by encouraging innovation

17 and lowering consumer prices.

18 **SEC. 3. CONSUMER CLASS ACTION BILL OF RIGHTS AND IM-**

19         **PROVED PROCEDURES FOR INTERSTATE**

20         **CLASS ACTIONS.**

21 (a) IN GENERAL.—Part V is amended by inserting

22 after chapter 113 the following:

23     **"CHAPTER 114—CLASS ACTIONS**

"Sec.
"1711. Judicial scrutiny of coupon and other noncash settlements.
"1712. Protection against loss by class members.
"1713. Protection against discrimination based on geographic location.

6

"1714. Prohibition on the payment of bounties.
"1715. Definitions.

1  **"§ 1711.  Judicial   scrutiny   of   coupon   and   other**
2  **noncash settlements**

3      "The court may approve a proposed settlement under

4  which the class members would receive noncash benefits

5  or would otherwise be required to expend funds in order

6  to obtain part or all of the proposed benefits only after

7  a hearing to determine whether, and making a written

8  finding that, the settlement is fair, reasonable, and ade-

9  quate for class members.

10  **"§ 1712. Protection against loss by class members**

11      "The court may approve a proposed settlement under

12  which any class member is obligated to pay sums to class

13  counsel that would result in a net loss to the class member

14  only if the court makes a written finding that nonmone-

15  tary benefits to the class member outweigh the monetary

16  loss.

17  **"§ 1713. Protection against discrimination based on**
18  **geographic location**

19      "The court may not approve a proposed settlement

20  that provides for the payment of greater sums to some

21  class members than to others solely on the basis that the

22  class members to whom the greater sums are to be paid

23  are located in closer geographic proximity to the court.

7

1 **"§ 1714. Prohibition on the payment of bounties**

2     "(a) IN GENERAL.—The court may not approve a

3 proposed settlement that provides for the payment of a

4 greater share of the award to a class representative serv-

5 ing on behalf of a class, on the basis of the formula for

6 distribution to all other class members, than that awarded

7 to the other class members.

8     "(b) RULE OF CONSTRUCTION.—The limitation in

9 subsection (a) shall not be construed to prohibit any pay-

10 ment approved by the court for reasonable time or costs

11 that a person was required to expend in fulfilling his or

12 her obligations as a class representative.

13 **"§ 1715. Definitions**

14     "In this chapter—

15         "(1) CLASS ACTION.—The term 'class action'

16     means any civil action filed in a district court of the

17     United States pursuant to rule 23 of the Federal

18     Rules of Civil Procedure or any civil action that is

19     removed to a district court of the United States that

20     was originally filed pursuant to a State statute or

21     rule of judicial procedure authorizing an action to be

22     brought by one or more representatives on behalf of

23     a class.

24         "(2) CLASS COUNSEL.—The term 'class coun-

25     sel' means the persons who serve as the attorneys

8

1    for the class members in a proposed or certified

2    class action.

3        "(3) CLASS MEMBERS.—The term 'class mem-

4    bers' means the persons who fall within the defini-

5    tion of the proposed or certified class in a class ac-

6    tion.

7        "(4) PLAINTIFF CLASS ACTION.—The term

8    'plaintiff class action' means a class action in which

9    class members are plaintiffs.

10       "(5) PROPOSED SETTLEMENT.—The term 'pro-

11    posed settlement' means an agreement that resolves

12    claims in a class action, that is subject to court ap-

13    proval, and that, if approved, would be binding on

14    the class members.".

15    (b) TECHNICAL AND CONFORMING AMENDMENT.—

16  The table of chapters for part V is amended by inserting

17  after the item relating to chapter 113 the following:

    **"114. Class Actions** ............................................................................ **1711".**

18  **SEC. 4. FEDERAL DISTRICT COURT JURISDICTION OF**

19               **INTERSTATE CLASS ACTIONS.**

20    (a) APPLICATION OF FEDERAL DIVERSITY JURISDIC-

21  TION.—Section 1332 is amended—

22       (1) by redesignating subsection (d) as sub-

23    section (e); and

24       (2) by inserting after subsection (e) the fol-

25    lowing:

9

1     "(d)(1) In this subsection—

2         "(A) the term 'class' means all of the class

3     members in a class action;

4         "(B) the term 'class action' means any civil ac-

5     tion filed pursuant to rule 23 of the Federal Rules

6     of Civil Procedure or similar State statute or rule of

7     judicial procedure authorizing an action to be

8     brought by one or more representative persons on

9     behalf of a class;

10        "(C) the term 'class certification order' means

11    an order issued by a court approving the treatment

12    of a civil action as a class action; and

13        "(D) the term 'class members' means the per-

14    sons who fall within the definition of the proposed

15    or certified class in a class action.

16    "(2) The district courts shall have original jurisdic-

17 tion of any civil action in which the matter in controversy

18 exceeds the sum or value of $5,000,000, exclusive of inter-

19 est and costs, and is a class action in which—

20        "(A) any member of a class of plaintiffs is a

21    citizen of a State different from any defendant;

22        "(B) any member of a class of plaintiffs is a

23    foreign state or a citizen or subject of a foreign state

24    and any defendant is a citizen of a State; or

10

1    "(C) any member of a class of plaintiffs is a

2    citizen of a State and any defendant is a foreign

3    state or a citizen or subject of a foreign state.

4    "(3) A district court may, in the interests of justice,

5    decline to exercise jurisdiction under paragraph (2) over

6    a class action in which greater than one-third but less than

7    two-thirds of the members of all proposed plaintiff classes

8    in the aggregate and the primary defendants are citizens

9    of the State in which the action was originally filed based

10    on consideration of the following factors:

11    "(A) Whether the claims asserted involve mat-

12    ters of national or interstate interest.

13    "(B) Whether the claims asserted will be gov-

14    erned by laws other than those of the State in which

15    the action was originally filed.

16    "(C) In the case of a class action originally

17    filed in a State court, whether the class action has

18    been pleaded in a manner that seeks to avoid Fed-

19    eral jurisdiction.

20    "(D) Whether the number of citizens of the

21    State in which the action was originally filed in all

22    proposed plaintiff classes in the aggregate is sub-

23    stantially larger than the number of citizens from

24    any other State, and the citizenship of the other

11

1     members of the proposed class is dispersed among a

2     substantial number of States.

3          "(E) Whether 1 or more class actions asserting

4     the same or similar claims on behalf of the same or

5     other persons have been or may be filed.

6     "(4) Paragraph (2) shall not apply to any class action

7 in which—

8          "(A) two-thirds or more of the members of all

9     proposed plaintiff classes in the aggregate and the

10    primary defendants are citizens of the State in

11    which the action was originally filed;

12         "(B) the primary defendants are States, State

13    officials, or other governmental entities against

14    whom the district court may be foreclosed from or-

15    dering relief; or

16         "(C) the number of members of all proposed

17    plaintiff classes in the aggregate is less than 100.

18    "(5) In any class action, the claims of the individual

19 class members shall be aggregated to determine whether

20 the matter in controversy exceeds the sum or value of

21 $5,000,000, exclusive of interest and costs.

22    "(6) This subsection shall apply to any class action

23 before or after the entry of a class certification order by

24 the court with respect to that action.

12

1    "(7)(A) A district court shall dismiss any civil action

2    that is subject to the jurisdiction of the court solely under

3    this subsection if the court determines the action may not

4    proceed as a class action based on a failure to satisfy the

5    requirements of rule 23 of the Federal Rules of Civil Pro-

6    cedure.

7    "(B) Nothing in subparagraph (A) shall prohibit

8    plaintiffs from filing an amended class action in Federal

9    court or filing an action in State court, except that any

10   such action filed in State court may be removed to the

11   appropriate district court if it is an action of which the

12   district courts of the United States have original jurisdic-

13   tion.

14   "(C) In any action that is dismissed under this para-

15   graph and is filed by any of the original named plaintiffs

16   therein in the same State court venue in which the dis-

17   missed action was originally filed, the limitations periods

18   on all reasserted claims shall be deemed tolled for the pe-

19   riod during which the dismissed class action was pending.

20   The limitations periods on any claims that were asserted

21   in a class action dismissed under this paragraph that are

22   subsequently asserted in an individual action shall be

23   deemed tolled for the period during which the dismissed

24   action was pending.

13

1    "(8) Paragraph (2) shall not apply to any class action

2  brought by shareholders that solely involves a claim that

3  relates to—

4        "(A) a claim concerning a covered security as

5        defined under section 16(f)(3) of the Securities Act

6        of 1933 and section 28(f)(5)(E) of the Securities

7        Exchange Act of 1934;

8        "(B) the internal affairs or governance of a cor-

9        poration or other form of business enterprise and

10       arises under or by virtue of the laws of the State in

11       which such corporation or business enterprise is in-

12       corporated or organized; or

13       "(C) the rights, duties (including fiduciary du-

14       ties), and obligations relating to or created by or

15       pursuant to any security (as defined under section

16       2(a)(1) of the Securities Act of 1933 and the regula-

17       tions issued thereunder).

18   "(9) For purposes of this subsection and section

19  1453 of this title, an unincorporated association shall be

20  deemed to be a citizen of the State where it has its prin-

21  cipal place of business and the State under whose laws

22  it is organized.

23   "(10) For purposes of this section and section 1453

24  of this title, a civil action that is not otherwise a class

14

1  action as defined in paragraph (1)(B) of this subsection

2  shall nevertheless be deemed a class action if—

3      "(A) the named plaintiff purports to act for the

4      interests of its members (who are not named parties

5      to the action) or for the interests of the general pub-

6      lic, seeks a remedy of damages, restitution,

7      disgorgement, or any other form of monetary relief,

8      and is not a State attorney general; or

9      "(B) monetary relief claims in the action are

10     proposed to be tried jointly in any respect with the

11     claims of 100 or more other persons on the ground

12     that the claims involve common questions of law or

13     fact.

14  In any such case, the persons who allegedly were injured

15  shall be treated as members of a proposed plaintiff class

16  and the monetary relief that is sought shall be treated as

17  the claims of individual class members. The provisions of

18  paragraph (7) of this subsection and subsections (b)(2)

19  and (d) of section 1453 shall not apply to civil actions

20  described under subparagraph (A). The provisions of para-

21  graph (7) of this subsection, and subsections (b)(2) and

22  (d) of section 1453 shall not apply to civil actions de-

23  scribed under subparagraph (B).".

24      (b) CONFORMING AMENDMENTS.—

15

1      (1) Section 1335(a)(1) is amended by inserting

2   "(a) or (d)" after "1332".

3      (2) Section 1603(b)(3) is amended by striking

4   "(d)" and inserting "(e)".

**SEC. 5. REMOVAL OF INTERSTATE CLASS ACTIONS TO FED-**

6   **ERAL DISTRICT COURT.**

7      (a) IN GENERAL.—Chapter 89 is amended by adding

8   after section 1452 the following:

9   **"§ 1453. Removal of class actions**

10      "(a) DEFINITIONS.—In this section, the terms 'class',

11   'class action', 'class certification order', and 'class mem-

12   ber' have the meanings given these terms in section

13   1332(d)(1).

14      "(b) IN GENERAL.—A class action may be removed

15   to a district court of the United States in accordance with

16   this chapter, without regard to whether any defendant is

17   a citizen of the State in which the action is brought, except

18   that such action may be removed—

19      "(1) by any defendant without the consent of

20   all defendants; or

21      "(2) by any plaintiff class member who is not

22   a named or representative class member without the

23   consent of all members of such class.

24   "(c) WHEN REMOVABLE.—This section shall apply to

25   any class action before or after the entry of a class certifi-

16

1  cation order in the action, except that a plaintiff class

2  member who is not a named or representative class mem-

3  ber of the action may not seek removal of the action before

4  an order certifying a class of which the plaintiff is a class

5  member has been entered.

6      "(d) PROCEDURE FOR REMOVAL.—The provisions of

7  section 1446 relating to a defendant removing a case shall

8  apply to a plaintiff removing a case under this section,

9  except that in the application of subsection (b) of such

10  section the requirement relating to the 30-day filing period

11  shall be met if a plaintiff class member files notice of re-

12  moval within 30 days after receipt by such class member,

13  through service or otherwise, of the initial written notice

14  of the class action.

15      "(e) REVIEW OF ORDERS REMANDING CLASS AC-

16  TIONS TO STATE COURTS.—The provisions of section

17  1447 shall apply to any removal of a case under this sec-

18  tion, except that, notwithstanding the provisions of section

19  1447(d), an order remanding a class action to the State

20  court from which it was removed shall be reviewable by

21  appeal or otherwise.

22      "(f) EXCEPTION.—This section shall not apply to any

23  class action brought by shareholders that solely involves—

24          "(1) a claim concerning a covered security as

25          defined under section 16(f)(3) of the Securities Act

17

1    of 1933 and section 28(f)(5)(E) of the Securities

2    Exchange Act of 1934;

3        "(2) a claim that relates to the internal affairs

4    or governance of a corporation or other form of busi-

5    ness enterprise and arises under or by virtue of the

6    laws of the State in which such corporation or busi-

7    ness enterprise is incorporated or organized; or

8        "(3) a claim that relates to the rights, duties

9    (including fiduciary duties), and obligations relating

10    to or created by or pursuant to any security (as de-

11    fined under section 2(a)(1) of the Securities Act of

12    1933 and the regulations issued thereunder).".

13    (b) REMOVAL LIMITATION.—Section 1446(b) is

14 amended in the second sentence by inserting "(a)" after

15 "section 1332".

16    (c) TECHNICAL AND CONFORMING AMENDMENTS.—

17 The table of sections for chapter 89 is amended by adding

18 after the item relating to section 1452 the following:

"1453. Removal of class actions.".

19 **SEC. 6. APPEALS OF CLASS ACTION CERTIFICATION OR-**

20           **DERS.**

21    (a) IN GENERAL.—Section 1292(a) is amended by in-

22 serting after paragraph (3) the following:

23        "(4) Orders of the district courts of the United

24    States granting or denying class certification under

25    rule 23 of the Federal Rules of Civil Procedure, if

18

1    notice of appeal is filed within 10 days after entry
2    of the order.''.

3    (b) DISCOVERY STAY.—All discovery and other pro-
4    ceedings shall be stayed during the pendency of any appeal
5    taken pursuant to the amendment made by subsection (a),
6    unless the court finds upon the motion of any party that
7    specific discovery is necessary to preserve evidence or to
8    prevent undue prejudice to that party.

9    **SEC. 7. ENACTMENT OF JUDICIAL CONFERENCE REC-**
10            **OMMENDATIONS.**

11    Notwithstanding any other provision of law, the
12    amendments to Rule 23 of the Federal Rules of Civil Pro-
13    cedure which are embraced by the order entered by the
14    Supreme Court of the United States on March 27, 2003,
15    shall take effect on the date of the enactment of this Act
16    or on December 1, 2003 (as specified in that order),
17    whichever occurs first.

18    **SEC. 8. EFFECTIVE DATE.**

19    (a) IN GENERAL.—The amendments made by this
20    Act shall apply to—

21          (1) any civil action commenced on or after the
22        date of the enactment of this Act; and

23          (2) any civil action commenced before such date
24        of enactment in which a class certification order (as
25        defined in section 1332(d)(1)(C) of title 28, United

19

1     States Code, as amended by section 4 of this Act)

2     is entered on or after such date of enactment.

3     (b) FILING OF NOTICE OF REMOVAL.—In the case

4 of any civil action to which subsection (a)(2) applies, the

5 requirement relating to the 30-day period for the filing

6 of a notice of removal under section 1446(b) and section

7 1453(d) of title 28, United States Code, shall be met if

8 the notice of removal is filed within 30 days after the date

9 on which the class certification order referred to in sub-

10 section (a)(2) is entered.

     Passed the House of Representatives June 12, 2003.

     Attest:

                          *Clerk.*

# EXHIBIT 3

I

109TH CONGRESS
1ST SESSION

# H. R. 516

To amend the procedures that apply to consideration of interstate class actions to assure fairer outcomes for class members and defendants, to outlaw certain practices that provide inadequate settlements for class members, to assure that attorneys do not receive a disproportionate amount of settlements at the expense of class members, to assure prompt consideration of interstate class actions, to amend title 28, United States Code, to allow the application of the principles of Federal diversity jurisdiction to interstate class actions, and for other purposes.

---

## IN THE HOUSE OF REPRESENTATIVES

### FEBRUARY 2, 2005

Mr. GOODLATTE (for himself, Mr. BOUCHER, Mr. SENSENBRENNER, Mr. SMITH of Texas, Mr. DELAY, Mr. BLUNT, Mr. CANTOR, Ms. PRYCE of Ohio, Mr. DREIER, Mr. MANZULLO, Mr. KINGSTON, Mr. FEENEY, Mr. COBLE, Mr. CHABOT, Mr. FORBES, Mr. PENCE, Mr. ISSA, Mr. KELLER, Mr. BACHUS, Mr. HOSTETTLER, Mr. GALLEGLY, Mr. DANIEL E. LUN-GREN of California, Mr. FLAKE, Mr. BRADLEY of New Hampshire, Mr. CARTER, Mr. SESSIONS, Mr. ROGERS of Michigan, Mr. KUHL of New York, Ms. HART, Mr. NORWOOD, Mr. PEARCE, Mr. GILCHREST, Mr. CHOCOLA, Mr. HENSARLING, Mr. BAKER, Mrs. BIGGERT, Mr. KENNEDY of Minnesota, Mr. BURGESS, Mr. GINGREY, Mr. COX, Mr. DENT, Mr. WICKER, Mr. CANNON, Mr. CUNNINGHAM, Mr. MILLER of Florida, Mr. FITZPATRICK of Pennsylvania, Mr. MCCRERY, Mr. STEARNS, Ms. FOXX, Mr. CONAWAY, Mr. MORAN of Virginia, Mr. MATHESON, Mr. HOLDEN, Mr. BOYD, Mr. TANNER, Mr. COOPER, Mr. CRAMER, Mr. SCOTT of Geor-gia, Mr. DAVIS of Tennessee, Mr. MOORE of Kansas, Ms. GINNY BROWN-WAITE of Florida, and Mr. BOREN) introduced the following bill; which was referred to the Committee on the Judiciary

---

# A BILL

To amend the procedures that apply to consideration of interstate class actions to assure fairer outcomes for

2

class members and defendants, to outlaw certain practices that provide inadequate settlements for class members, to assure that attorneys do not receive a disproportionate amount of settlements at the expense of class members, to assure prompt consideration of interstate class actions, to amend title 28, United States Code, to allow the application of the principles of Federal diversity jurisdiction to interstate class actions, and for other purposes.

1    *Be it enacted by the Senate and House of Representa-*
2    *tives of the United States of America in Congress assembled,*
3    **SECTION 1. SHORT TITLE; REFERENCE; TABLE OF CON-**
4    **TENTS.**
5        (a) SHORT TITLE.—This Act may be cited as the
6    "Class Action Fairness Act of 2005".
7        (b) REFERENCE.—Whenever in this Act reference is
8    made to an amendment to, or repeal of, a section or other
9    provision, the reference shall be considered to be made to
10   a section or other provision of title 28, United States
11   Code.
12       (c) TABLE OF CONTENTS.—The table of contents for
13   this Act is as follows:

Sec. 1. Short title; reference; table of contents.
Sec. 2. Findings and purposes.
Sec. 3. Consumer class action bill of rights and improved procedures for interstate class actions.
Sec. 4. Federal district court jurisdiction of interstate class actions.
Sec. 5. Removal of interstate class actions to Federal district court.
Sec. 6. Appeals of class action certification orders.
Sec. 7. Effective date.

3

1 **SEC. 2. FINDINGS AND PURPOSES.**

2     (a) FINDINGS.—The Congress finds as follows:

3         (1) Class action lawsuits are an important and

4     valuable part of our legal system when they permit

5     the fair and efficient resolution of legitimate claims

6     of numerous parties by allowing the claims to be ag-

7     gregated into a single action against a defendant

8     that has allegedly caused harm.

9         (2) For many years there have been abuses of

10     the class action device that have—

11         (A) harmed class members with legitimate

12         claims and defendants that have acted respon-

13         sibly;

14         (B) adversely affected interstate commerce;

15         and

16         (C) undermined public respect for the judi-

17         cial system in the United States.

18         (3) Class members have been harmed by a

19     number of actions taken by plaintiffs' lawyers, which

20     provide little or no benefit to class members as a

21     whole, including—

22         (A) plaintiffs' lawyers receiving large fees,

23         while class members are left with coupons or

24         other awards of little or no value; and

4

1          (B) unjustified rewards being made to cer-
2     tain plaintiffs at the expense of other class
3     members.

4     (4) Through the use of artful pleading, plain-
5     tiffs are able to avoid litigating class actions in Fed-
6     eral court, forcing businesses and other organiza-
7     tions to defend interstate class action lawsuits in
8     county and State courts where—

9          (A) the lawyers, rather than the claimants,
10    are likely to receive the maximum benefit;

11         (B) less scrutiny may be given to the mer-
12    its of the case; and

13         (C) defendants are effectively forced into
14    settlements, in order to avoid the possibility of
15    huge judgments that could destabilize their
16    companies.

17    (5) These abuses undermine the Federal judi-
18    cial system, the free flow of interstate commerce,
19    and the intent of the framers of the Constitution in
20    creating diversity jurisdiction, in that county and
21    State courts are—

22         (A) handling interstate class actions that
23    affect parties from many States;

5

1     (B) sometimes acting in ways that dem-

2 onstrate bias against out-of-State defendants;

3 and

4     (C) making judgments that impose their

5 view of the law on other States and bind the

6 rights of the residents of those States.

7     (6) Abusive interstate class actions have

8 harmed society as a whole by forcing innocent par-

9 ties to settle cases rather than risk a huge judgment

10 by a local jury, thereby costing consumers billions of

11 dollars in increased costs to pay for forced settle-

12 ments and excessive judgments.

13 (b) PURPOSES.—The purposes of this Act are—

14     (1) to assure fair and prompt recoveries for

15 class members with legitimate claims;

16     (2) to protect responsible companies and other

17 institutions against interstate class actions in State

18 courts;

19     (3) to restore the intent of the framers of the

20 Constitution by providing for Federal court consider-

21 ation of interstate class actions; and

22     (4) to benefit society by encouraging innovation

23 and lowering consumer prices.

6

1 **SEC. 3. CONSUMER CLASS ACTION BILL OF RIGHTS AND IM-**

2         **PROVED PROCEDURES FOR INTERSTATE**

3         **CLASS ACTIONS.**

4     (a) IN GENERAL.—Part V is amended by inserting

5 after chapter 113 the following:

6         **"CHAPTER 114—CLASS ACTIONS**

"Sec.
"1711. Judicial scrutiny of coupon and other noncash settlements.
"1712. Protection against loss by class members.
"1713. Protection against discrimination based on geographic location.
"1714. Prohibition on the payment of bounties.
"1715. Definitions.

7 **"§ 1711. Judicial scrutiny of coupon and other**

8         **noncash settlements**

9     "The court may approve a proposed settlement under

10 which the class members would receive noncash benefits

11 or would otherwise be required to expend funds in order

12 to obtain part or all of the proposed benefits only after

13 a hearing to determine whether, and making a written

14 finding that, the settlement is fair, reasonable, and ade-

15 quate for class members.

16 **"§ 1712. Protection against loss by class members**

17     "The court may approve a proposed settlement under

18 which any class member is obligated to pay sums to class

19 counsel that would result in a net loss to the class member

20 only if the court makes a written finding that nonmone-

21 tary benefits to the class member outweigh the monetary

22 loss.

7

1 **"§ 1713. Protection against discrimination based on**
2     **geographic location**

3     "The court may not approve a proposed settlement
4 that provides for the payment of greater sums to some
5 class members than to others solely on the basis that the
6 class members to whom the greater sums are to be paid
7 are located in closer geographic proximity to the court.

8 **"§ 1714. Prohibition on the payment of bounties**

9     "(a) IN GENERAL.—The court may not approve a
10 proposed settlement that provides for the payment of a
11 greater share of the award to a class representative serv-
12 ing on behalf of a class, on the basis of the formula for
13 distribution to all other class members, than that awarded
14 to the other class members.

15     "(b) RULE OF CONSTRUCTION.—The limitation in
16 subsection (a) shall not be construed to prohibit any pay-
17 ment approved by the court for reasonable time or costs
18 that a person was required to expend in fulfilling his or
19 her obligations as a class representative.

20 **"§ 1715. Definitions**

21     "In this chapter:

22         "(1) CLASS ACTION.—The term 'class action'
23     means—

24             "(A) any civil action filed in a district
25         court of the United States pursuant to rule 23
26         of the Federal Rules of Civil Procedure; or

8

1            "(B) any civil action that is removed to a

2         district court of the United States and that was

3         originally filed pursuant to a State statute or

4         rule of judicial procedure authorizing an action

5         to be brought by one or more representatives on

6         behalf of a class.

7         "(2) CLASS COUNSEL.—The term 'class coun-

8 sel' means the persons who serve as the attorneys

9 for the class members in a proposed or certified

10 class action.

11         "(3) CLASS MEMBER.—The term 'class mem-

12 ber' means any of the persons who fall within the

13 definition of the proposed or certified class in a class

14 action.

15         "(4) PROPOSED SETTLEMENT.—The term 'pro-

16 posed settlement' means an agreement that resolves

17 claims in a class action, that is subject to court ap-

18 proval, and that, if approved, would be binding on

19 the class members.".

20     (b) TECHNICAL AND CONFORMING AMENDMENT.—

21 The table of chapters for part V is amended by inserting

22 after the item relating to chapter 113 the following:

"**114. Class Actions** ............................................................................ **1711**".

9

1 **SEC. 4. FEDERAL DISTRICT COURT JURISDICTION OF**

2 **INTERSTATE CLASS ACTIONS.**

3 (a) APPLICATION OF FEDERAL DIVERSITY JURISDIC-

4 TION.—Section 1332 is amended—

5 (1) by redesignating subsection (d) as sub-

6 section (e); and

7 (2) by inserting after subsection (c) the fol-

8 lowing:

9 "(d)(1) In this subsection—

10 "(A) the term 'class' means all of the class

11 members in a class action;

12 "(B) the term 'class action' means any civil ac-

13 tion filed pursuant to rule 23 of the Federal Rules

14 of Civil Procedure or similar State statute or rule of

15 judicial procedure authorizing an action to be

16 brought by one or more representative persons on

17 behalf of a class;

18 "(C) the term 'class certification order' means

19 an order issued by a court approving the treatment

20 of a civil action as a class action; and

21 "(D) the term 'class member' means any of the

22 persons who fall within the definition of the pro-

23 posed or certified class in a class action.

24 "(2) The district courts shall have original jurisdic-

25 tion of any civil action in which the matter in controversy

10

1  exceeds the sum or value of $5,000,000, exclusive of inter-
2  est and costs, and is a class action in which—

3      "(A) any member of a class of plaintiffs is a
4      citizen of a State different from any defendant;

5      "(B) any member of a class of plaintiffs is a
6      foreign state or a citizen or subject of a foreign state
7      and any defendant is a citizen of a State; or

8      "(C) any member of a class of plaintiffs is a
9      citizen of a State and any defendant is a foreign
10     state or a citizen or subject of a foreign state.

11  "(3) A district court may, in the interests of justice,
12  decline to exercise jurisdiction under paragraph (2) over
13  a class action in which greater than one-third but less than
14  two-thirds of the members of all proposed plaintiff classes
15  in the aggregate and the primary defendants are citizens
16  of the State in which the action was originally filed based
17  on consideration of the following factors:

18     "(A) Whether the claims asserted involve mat-
19     ters of national or interstate interest.

20     "(B) Whether the claims asserted will be gov-
21     erned by laws other than those of the State in which
22     the action was originally filed.

23     "(C) In the case of a class action originally
24     filed in a State court, whether the class action has

11

1  been pleaded in a manner that seeks to avoid Fed-
2  eral jurisdiction.

3      "(D) Whether the number of citizens of the
4  State in which the action was originally filed in all
5  proposed plaintiff classes in the aggregate is sub-
6  stantially larger than the number of citizens from
7  any other State, and the citizenship of the other
8  members of the proposed class is dispersed among a
9  substantial number of States.

10      "(E) Whether 1 or more class actions asserting
11  the same or similar claims on behalf of the same or
12  other persons have been or may be filed.

13      "(4) Paragraph (2) shall not apply to any class action
14  in which—

15      "(A) two-thirds or more of the members of all
16  proposed plaintiff classes in the aggregate and the
17  primary defendants are citizens of the State in
18  which the action was originally filed;

19      "(B) the primary defendants are States, State
20  officials, or other governmental entities against
21  whom the district court may be foreclosed from or-
22  dering relief; or

23      "(C) the number of members of all proposed
24  plaintiff classes in the aggregate is less than 100.

12

1    "(5) In any class action, the claims of the individual

2    class members shall be aggregated to determine whether

3    the matter in controversy exceeds the sum or value of

4    $5,000,000, exclusive of interest and costs.

5    "(6) This subsection shall apply to any class action

6    before or after the entry of a class certification order by

7    the court with respect to that action.

8    "(7)(A) A district court shall dismiss any civil action

9    that is subject to the jurisdiction of the court solely under

10   this subsection if the court determines that the action may

11   not proceed as a class action based on a failure to satisfy

12   the requirements of rule 23 of the Federal Rules of Civil

13   Procedure.

14   "(B) Nothing in subparagraph (A) shall prohibit

15   plaintiffs from filing an amended class action in Federal

16   court or filing an action in State court, except that any

17   such action filed in State court may be removed to the

18   appropriate district court if it is an action of which the

19   district courts of the United States have original jurisdic-

20   tion.

21   "(C) In any action that is dismissed under this para-

22   graph and is filed by any of the original named plaintiffs

23   therein in the same State court venue in which the dis-

24   missed action was originally filed, the limitations periods

25   on all reasserted claims shall be deemed tolled for the pe-

13

1   riod during which the dismissed class action was pending.
2   The limitations periods on any claims that were asserted
3   in a class action dismissed under this paragraph that are
4   subsequently asserted in an individual action shall be
5   deemed tolled for the period during which the dismissed
6   action was pending.

7       "(8) Paragraph (2) shall not apply to any class action
8   brought by shareholders that solely involves a claim that
9   relates to—

10          "(A) a claim concerning a covered security as
11      defined under section 16(f)(3) of the Securities Act
12      of 1933 and section 28(f)(5)(E) of the Securities
13      Exchange Act of 1934;

14          "(B) the internal affairs or governance of a cor-
15      poration or other form of business enterprise and
16      arises under or by virtue of the laws of the State in
17      which such corporation or business enterprise is in-
18      corporated or organized; or

19          "(C) the rights, duties (including fiduciary du-
20      ties), and obligations relating to or created by or
21      pursuant to any security (as defined under section
22      2(a)(1) of the Securities Act of 1933 and the regula-
23      tions issued thereunder).

24      "(9) For purposes of this subsection and section
25   1453 of this title, an unincorporated association shall be

14

1  deemed to be a citizen of the State where it has its prin-

2  cipal place of business and the State under whose laws

3  it is organized.

4      "(10) For purposes of this section and section 1453

5  of this title, a civil action that is not otherwise a class

6  action as defined in paragraph (1)(B) of this subsection

7  shall nevertheless be deemed a class action if—

8          "(A) the named plaintiff purports to act for the

9          interests of its members (who are not named parties

10         to the action) or for the interests of the general pub-

11         lic,   seeks   a   remedy   of   damages,   restitution,

12         disgorgement, or any other form of monetary relief,

13         and is not a State attorney general; or

14         "(B) monetary relief claims in the action are

15         proposed to be tried jointly in any respect with the

16         claims of 100 or more other persons on the ground

17         that the claims involve common questions of law or

18         fact.

19 In any such case, the persons who allegedly were injured

20 shall be treated as members of a proposed plaintiff class

21 and the monetary relief that is sought shall be treated as

22 the claims of individual class members. The provisions of

23 paragraph (7) of this subsection and subsections (b)(2)

24 and (d) of section 1453 shall not apply to civil actions

25 described under subparagraph (A). The provisions of para-

15

1 graph (7) of this subsection, and subsections (b)(2) and

2 (d) of section 1453 shall not apply to civil actions de-

3 scribed under subparagraph (B).".

4     (b) CONFORMING AMENDMENTS.—

5         (1) Section 1335(a)(1) is amended by inserting

6     "(a) or (d)" after "1332".

7         (2) Section 1603(b)(3) is amended by striking

8     "(d)" and inserting "(e)".

9 **SEC. 5. REMOVAL OF INTERSTATE CLASS ACTIONS TO FED-**

10                   **ERAL DISTRICT COURT.**

11     (a) IN GENERAL.—Chapter 89 is amended by adding

12 after section 1452 the following:

13 **"§ 1453. Removal of class actions**

14     "(a) DEFINITIONS.—In this section, the terms 'class',

15 'class action', 'class certification order', and 'class mem-

16 ber' have the meanings given these terms in section

17 1332(d)(1).

18     "(b) IN GENERAL.—A class action may be removed

19 to a district court of the United States in accordance with

20 this chapter, without regard to whether any defendant is

21 a citizen of the State in which the action is brought, except

22 that such action may be removed—

23         "(1) by any defendant without the consent of

24     all defendants; or

16

1      "(2) by any plaintiff class member who is not

2    a named or representative class member without the

3    consent of all members of such class.

4    "(c) WHEN REMOVABLE.—This section shall apply to

5 any class action before or after the entry of a class certifi-

6 cation order in the action, except that a plaintiff class

7 member who is not a named or representative class mem-

8 ber of the action may not seek removal of the action before

9 an order certifying a class of which the plaintiff is a class

10 member has been entered.

11    "(d) PROCEDURE FOR REMOVAL.—The provisions of

12 section 1446 relating to a defendant removing a case shall

13 apply to a plaintiff removing a case under this section,

14 except that, in the application of subsection (b) of such

15 section, the requirement relating to the 30-day filing pe-

16 riod shall be met if a plaintiff class member files notice

17 of removal within 30 days after receipt by such class mem-

18 ber, through service or otherwise, of the initial written no-

19 tice of the class action.

20    "(e) REVIEW OF ORDERS REMANDING CLASS AC-

21 TIONS TO STATE COURTS.—The provisions of section

22 1447 shall apply to any removal of a case under this sec-

23 tion, except that, notwithstanding the provisions of section

24 1447(d), an order remanding a class action to the State

17

1 court from which it was removed shall be reviewable by

2 appeal or otherwise.

3    "(f) EXCEPTION.—This section shall not apply to any

4 class action brought by shareholders that solely involves—

5        "(1) a claim concerning a covered security as

6    defined under section 16(f)(3) of the Securities Act

7    of 1933 and section 28(f)(5)(E) of the Securities

8    Exchange Act of 1934;

9        "(2) a claim that relates to the internal affairs

10    or governance of a corporation or other form of busi-

11    ness enterprise and arises under or by virtue of the

12    laws of the State in which such corporation or busi-

13    ness enterprise is incorporated or organized; or

14        "(3) a claim that relates to the rights, duties

15    (including fiduciary duties), and obligations relating

16    to or created by or pursuant to any security (as de-

17    fined under section 2(a)(1) of the Securities Act of

18    1933 and the regulations issued thereunder).".

19    (b) REMOVAL LIMITATION.—Section 1446(b) is

20 amended in the second sentence by inserting "(a)" after

21 "section 1332".

22    (c) TECHNICAL AND CONFORMING AMENDMENTS.—

23 The table of sections for chapter 89 is amended by adding

24 after the item relating to section 1452 the following:

"1453. Removal of class actions.".

18

1 **SEC. 6. APPEALS OF CLASS ACTION CERTIFICATION OR-**

2 **DERS.**

3     (a) IN GENERAL.—Section 1292(a) is amended by in-

4 serting after paragraph (3) the following:

5         "(4) Orders of the district courts of the United

6     States granting or denying class certification under

7     rule 23 of the Federal Rules of Civil Procedure, if

8     notice of appeal is filed within 10 days after entry

9     of the order.".

10     (b) DISCOVERY STAY.—All discovery and other pro-

11 ceedings shall be stayed during the pendency of any appeal

12 taken pursuant to the amendment made by subsection (a),

13 unless the court finds upon the motion of any party that

14 specific discovery is necessary to preserve evidence or to

15 prevent undue prejudice to that party.

16 **SEC. 7. EFFECTIVE DATE.**

17     (a) IN GENERAL.—The amendments made by this

18 Act shall apply to—

19         (1) any civil action commenced on or after the

20     date of the enactment of this Act; and

21         (2) any civil action commenced before such date

22     of enactment in which a class certification order (as

23     defined in section 1332(d)(1)(C) of title 28, United

24     States Code, as amended by section 4 of this Act)

25     is entered on or after such date of enactment.

19

1    (b) FILING OF NOTICE OF REMOVAL.—In the case

2    of any civil action to which subsection (a)(2) applies, the

3    requirement relating to the 30-day period for the filing

4    of a notice of removal under section 1446(b) and section

5    1453(d) of title 28, United States Code, shall be met if

6    the notice of removal is filed within 30 days after the date

7    on which the class certification order referred to in sub-

8    section (a)(2) is entered.

○

# EXHIBIT 4

plaintiffs and multimillion dollar award to lawyers, but we certainly can curb a great deal of this nonsense.

I know some of my friends on the other side of the aisle will complain this bill will sound the death knell for class actions in State court. Nothing could be further from the truth. This is an important piece of legislation, but it is also a moderate and reasonable piece of legislation.

Frankly, I liked the original version, but we are where we are today, and I will talk more about that in a moment. The bill on the floor is the product of not one, not two, but three carefully crafted compromises. Not one, not two, but three carefully crafted compromises. These carefully crafted compromises have us to a point where we can enact meaningful reform that respects the ability of States to adjudicate local controversies as class actions while allowing Federal courts to decide truly national class actions.

The House, frankly, would prefer a stronger bill, and so would I. I like the original bill that stalled out at 59 votes last year. But the House also understands that the legislation on the floor is a good bill.

Therefore, the House is prepared to take this up and pass it without amendment, assuming that our carefully crafted compromise is itself not compromised on the Senate floor.

I had an opportunity to talk to Majority Leader TOM DELAY this morning and he reiterated the statement that he and Chairman JIM SENSENBRENNER made last Friday and it is this: If this bill is passed without amendment in the Senate, the House will take it up immediately, pass it, and send it to the President for signature. If it is altered in any way, the House will then follow the regular order and maybe sometime during this Congress we will get a class action bill.

Frankly, in my judgment, those who are skeptical of this bill would be better off with this compromise version than having the House go through the regular order, in which case they would probably pass a bill much different from this compromise. We would ultimately have a conference and in all likelihood, out of that conference might come a bill more like the one we had last year, which stalled out at 59 votes.

So I would say that for those who are not terribly enthusiastic about this compromise, it could get a lot worse from their point of view. This compromise is one that people who have worked on this bill for years are willing to take, and so our challenge is to keep it clean, to defeat the amendments that would slow down the process and prevent this important piece of tort reform legislation from getting to the President for an early signature. So that is where we are.

We have a marvelous opportunity to demonstrate at the beginning of this Congress that we are indeed going to be able to accomplish some important things on a bipartisan basis. This compromise bill appears to have at least 62 Senators who are for it. Let us hold it together. Let us keep it as it is and demonstrate to the American public that we can work together on a bipartisan basis and pass important legislation for our country.

I yield the floor.

The PRESIDING OFFICER. The Senator from Pennsylvania.

Mr. SPECTER. Mr. President, the next Senator to seek recognition is Senator DODD. I am informed Senator LOTT will be coming to the floor shortly to speak, and that soon thereafter Senator DURBIN will offer his amendment. It is now 11:18. That should take the time for floor action until the hour of 12:30 when we are scheduled under a previous order to recess for the party caucuses. So I now yield to Senator DODD.

The PRESIDING OFFICER. The Senator from Connecticut.

Mr. DODD. Mr. President, I begin by thanking our colleague from Pennsylvania for his leadership on this issue as the new chairman of the Senate Judiciary Committee, and also to commend our colleague from Vermont, Senator LEAHY, the ranking Democrat on the committee. Despite their differences on this legislation, we are debating this bill because the managers have gone through the committee process and have produced a product for the consideration of the full Senate. I am pleased this bill is finally before us once again. It has been a year and a half since we last considered this legislation.

I also commend the two leaders, Senators FRIST and Daschle, for working as early as the fall of 2003 to try and craft a compromise. Senator REID of Nevada has picked up on this and I want to particularly commend Senator REID. He has some strong reservations about this bill, as many of our colleagues do, but he has arranged, as the Democratic leader can, for this matter to come forward. Certainly all of my colleagues are fully aware that a determined minority can pretty much stop anything from happening, but the Senator from Nevada, despite his reservations about this legislation, has worked through the process with the distinguished majority leader.

The chairman of the committee, the ranking member, and those who are interested in this bill are trying to move this matter forward. So I would not want to begin my comments without commending the leaders, but particularly the Democratic leader, my leader, for putting in the time and effort to see to it that this matter dealing with class action be a part of the Senate debate.

The legislation has had a rather long and torturous history, going back a number of years. I am not going to recite at length their history. I will only note that several of our colleagues deserve to be acknowledged for their long and steady persistence in bringing the Senate to this point. Those Senators

include Senator GRASSLEY of Iowa, Senator KOHL of Wisconsin, Senator HATCH of Utah, and Senator FEINSTEIN of California. They have worked on the Judiciary Committee, in a very strong bipartisan fashion, to try and bring this matter up.

I also want to highlight and mention Senator CARPER of Delaware who has been tireless in his support for this effort. Senator McCONNELL as well has worked on this issue. Senator LANDRIEU, and Senator SCHUMER, I should mention as well, as a member of the Judiciary Committee, have also been a part of an effort to try and come up with a bill that could enjoy broadbased support.

I mentioned Senators SPECTER and LEAHY at the outset of my remarks as the chairman and ranking member who also worked well together to bring us to this point. I want to point out to my colleagues, of course, as someone who was very much involved in the negotiations back in the fall of 2003, as pointed out by the Senator from Kentucky, within a few moments of that vote this Senator rose and offered to the majority at that point a willingness to sit down that day in fact to try and work out differences that would allow for this bill to go forward.

The distinguished majority leader accepted that offer and we immediately began a process to put this bill together. In fact, several of us sent a letter at that time to Senator FRIST. The letter was sent by myself, Senator LANDRIEU, Senator SCHUMER, and Senator BINGAMAN,- outlining four areas that we thought if we could be accommodated in these areas the bill could go forward in a bipartisan fashion.

I ask unanimous consent that the letter dated November 14, 2003, from three of my colleagues and me to Senator FRIST be printed in the RECORD.

There being no objection, the material was ordered to be printed in the RECORD, as follows:

U.S. SENATE,
*Washington, DC, November 14, 2003.*
Hon. BILL FRIST,
*Senate Majority Leader,*
*U.S. Capitol, Washington, DC.*

DEAR MAJORITY LEADER FRIST: We agree with the fundamental principle of the pending class action legislation that would permit removal of national or national class actions to federal court. Under current law, there have been a number of instances of unjustified forum-shopping and other abuses of the legal process. We are committed to helping to reform the law to ensure fair adjudication for all Americans. To that end, we are writing to outline the policies that need to be addressed in order to move the Senate toward a bill that can pass before Congress adjourns for the year.

While we support the general thrust of S. 1751, there are some instances where the legislation goes beyond the scope of what we believe must be addressed. It is our view that we are very close to having a bill that we can support and if we can satisfactorily address each of the following issues, we can move forward quickly with you to pass a reform bill.

Based upon our understanding of the issues that have been discussed by you and the

Democratic Leader, we believe that most of our concerns are readily solvable [while a narrow subset may require some further negotiation to resolve.]

We believe more consideration must be given to the formula for federal removal. We agree that many types of cases are best considered in federal court. At the same time, we would not want the Senate to fashion rules that permit the removal of cases that are truly single-state cases which are appropriately considered in state court. Additionally, we should permit federal court judges to consider a set of factors that includes both state and federal concerns when determining whether a case in the "middlethird" of the current formula should be removed.

Mass tort actions that are not brought as class actions should be removed from the bill. The bill passed by the Judiciary Committee did not contain this language. We understand that the peculiarities of state law in two states may need to be addressed. However, the current mass tort standard is much broader than necessary to address issues raised by two of the fifty states. We want to write a rule that is as precise as possible—in this case, by encompassing actions that are truly class actions, while at the same time excluding any cases that are not.

There are several places in the bill that pre-empt current law or allow for significant deviation from standard practice. This has the effect of encouraging manipulation or abuse by either side, and should not be allowed in reform legislation. The current version of the removal provision permits removal at any time, even during trial. This includes a potential "merry-go-round effect" of repeated removal and remand between state and federal courts. Additionally, the underlying bill does not specify when the court would measure the plaintiff class and it creates a new appellate review of remand orders.

In many cases, plaintiffs, who take the risk of coming forward, should be able to be compensated for that risk. The bill currently requires their recovery to be precisely the same as all other members of the class. Different risks and different damages in civil rights and other claims, should receive different compensation, upon approval of the trial judge.

Lastly, the underlying bill simply restates current law in requiring judges to review coupon settlements. Given the clear problems that have been raised with abusive coupon settlements, we believe it is imperative to include stronger provisions that the attorneys' fees to the actual coupons redeemed.

While time is short in this session, there is no reason why the Senate cannot consider this legislation in a bi-partisan spirit. If we indeed reach agreement, it is critical that the agreement be honored as the bill moves forward—both in and beyond the Senate. We are prepared to work with you toward that end and we look forward to hearing from you soon as possible as to how we can best move this legislation forward.

Sincerely,

MARY L. LANDRIEU.
CHARLES SCHUMER.
CHRISTOPHER J. DODD.
JEFF BINGAMAN.

Mr. DODD. As a result of that letter, we went through several days of negotiations on this bill. The four areas that we sought changes in the bill are the following: Removal of formula including the definition of mass torts; the so-called merry-go-round problem in the bill; coupon settlements; and fair compensation for named plaintiffs. Those are the four areas we identified in the November 14 letter. As a result of our negotiations, we came back with 12 improvements in this bill, agreed to by myself, Senators FRIST, GRASSLEY, HATCH, KOHL, LANDRIEU, and SCHUMER.

I ask unanimous consent that the list of the 12 changes that was a result of that negotiation be printed in the RECORD.

There being no objection, the material was ordered to be printed in the RECORD, as follows:

SUMMARY OF CHANGES TO S. 1751 AS AGREED TO BY SENATORS FRIST, GRASSLEY, HATCH, KOHL, CARPER, DODD, LANDRIEU, AND SCHUMER

THE COMPROMISE IMPROVES COUPON SETTLEMENT PROCEDURES

S. 1751 would have continued to allow coupon settlements even though only a small percentage of coupons are actually redeemed by class members in many cases.

The compromise proposal requires that attorneys fees be based either on (a) the proportionate value of coupons actually redeemed by class members or (b) the hours actually billed in prosecuting the class action. The compromise proposal also adds a provision permitting federal courts to require that settlement agreements provide for charitable distribution of unclaimed coupon values.

THE COMPROMISE ELIMINATES THE SO-CALLED BOUNTY PROHIBITION IN S. 1751

S. 1751 would have prevented civil rights and consumer plaintiffs from being compensated for the particular hardships they endure as a result of initiating and pursuing litigation.

The compromise deletes the so-called "bounty provision" in S. 1751, thereby allowing plaintiffs to receive special relief for enduring special hardships as class members.

THE COMPROMISE ELIMINATES THE POTENTIAL FOR NOTIFICATION BURDEN AND CONFUSION

S. 1751 would have created a complicated set of unnecessarily burdensome notice requirements for notice to potential class members. The compromise eliminates this unnecessary burden and preserves current federal law related to class notification.

THE COMPROMISE PROVIDES FOR GREATER JUDICIAL DISCRETION

S. 1751 included several factors to be considered by district courts in deciding whether to exercise jurisdiction over class action in which between one-third and two-thirds of the proposed class members and all primary defendants are citizens of the same state.

The compromise provides for broader discretion by authorizing federal courts to consider any "distinct" nexus between (a) the forum where the action was brought and (b) the class members, the alleged harm, or the defendants. The proposal also limits a court's authority to base federal jurisdiction on the existence of similar class actions filed in other states by disallowing consideration of other cases that are more than three years old.

THE COMPROMISE EXPANDS THE LOCAL CLASS ACTION EXCEPTION

S. 1751 established an exception to prevent removal of a class action to federal court when 2/3 of the plaintiffs are from the state where the action was brought and the "primary defendants" are also from that state (the Feinstein formula). The compromise retains the Feinstein formula and creates a second exception that allows cases to remain in state court if: (1) more than 2/3 of class members are citizens of the forum state; (2) there is at least one in-state defendant from whom significant relief is sought and who contributed significantly to the alleged harm; (3) the principal injuries happened within the state where the action was filed; and (4) no other class action asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons has been filed during the preceding three years.

THE COMPROMISE CREATES A BRIGHT LINE FOR DETERMINING CLASS COMPOSITION

S. 1751 was silent on when class composition could be measured and arguably would have allowed class composition to be challenged at any time during the life of the case. The compromise clarifies that citizenship of proposed class members is to be determined on the date plaintiffs filed the original complaint, or if there is no federal jurisdiction over the first complaint, when plaintiffs serve an amended complaint or other paper indicating the existence of federal jurisdiction.

THE COMPROMISE ELIMINATES THE "MERRY-GO-ROUND" PROBLEM

S. 1751 would have required federal courts to dismiss class actions if the court determined that the case did not meet Rule 23 requirements. The compromise eliminates the dismissal requirement, giving federal courts discretion to handle Rule 23-ineligible cases appropriately. Potentially meritorious suits will thus not be automatically dismissed simply because they fail to comply with the class certification requirements of Rule 23.

THE COMPROMISE IMPROVES TREATMENT OF MASS ACTIONS

S. 1751 would have treated all mass actions involving over 100 claimants as if they were class actions. The compromise makes several changes to treat mass actions more like individual cases than like class actions when appropriate.

The compromise changes the jurisdictional amount requirement. Federal jurisdiction shall only exist over those persons whose claims satisfy the normal diversity jurisdictional amount requirement for individual actions under current law (presently $75,000).

The compromise expands the "single sudden accident" exception so that federal jurisdiction shall not exist over mass actions in which all claims arise from any "event or occurrence" that happened in the state where the action was filed and that allegedly resulted in injuries in that state or in a contiguous state. The proposal also added a provision clarifying that there is no federal jurisdiction under the mass action provision for claims that have been consolidated solely for pretrial purposes.

THE COMPROMISE ELIMINATES THE POTENTIAL FOR ABUSIVE PLAINTIFF CLASS REMOVALS

S. 1751 would have changed current law by allowing any plaintiff class member to remove a case to federal court even if all other class members wanted the case to remain in state court. The compromise retains current law—allowing individual plaintiffs to opt out of class actions, but not allowing them to force entire classes into federal court.

THE COMPROMISE ELIMINATES THE POTENTIAL FOR ABUSIVE APPEALS OF REMAND ORDERS

S. 1751 would have allowed defendants to seek unlimited appellate review of federal court orders remanding cases to state courts. If a defendant requested an appeal, the federal courts would have been required to hear the appeal and the appeals could have taken months or even years to complete.

The compromise makes two improvements: (1) grants the federal courts discretion to refuse to hear an appeal if the appeal is not in the interest of justice; (2) Establishes tight deadlines for completion of any appeals

so that no case can be delayed more than 77 days, unless all parties agree to a longer period.

THE COMPROMISE PRESERVES THE RULEMAKING AUTHORITY OF SUPREME COURT AND JUDICIAL CONFERENCE

The compromise clarifies that nothing in the bill restricts the authority of the Judicial Conference and Supreme Court to implement new rules relating to class actions.

THE COMPROMISE IS NOT RETROACTIVE

Unlike the House bill, the compromise will not retroactively change the rules governing jurisdiction over class actions.

Mr. DODD. I will not go through and name each one of them. Some of them are rather arcane but nevertheless important provisions of this bill, the point being that we were prepared basically in the fall of 2003 to go forward.

We were notified at that point that the first item of business in January of 2004, more than a year ago, would be the class action reform bill. Well, here we are in February of 2005 finally getting to this matter. There was a prepared bipartisan bill over a year ago on class action and we are now dealing with exactly the same bill. As the Senator from Kentucky pointed out, he would have preferred the House bill, the bill that was not approved when the cloture motion was held, and reluctantly is supporting this bill.

There are those of us who could not have supported the House bill or the version that came up in the Senate earlier, but we have worked very hard to put this compromise together over a year ago. So we could have dealt with this a long time ago, but nonetheless we are here today and that is the good news.

I am heartened that the other body has agreed to accept this version if it goes unamended over the next day or so during the debate and consideration of this legislation. I am hopeful that will be the case.

Very briefly, I will go through what we have achieved. As I mentioned, following the vote Senator FRIST asked myself and others, including my good friend from Delaware who is on the floor today, to enter into discussions with him and other Members to explore whether there might be some ways of building greater support for this bill. Senators SCHUMER and LANDRIEU joined in writing a letter to the majority leader, which I have put into the RECORD already, in which we laid out the four areas of our concerns. We subsequently entered into those negotiations among our four offices. Senators GRASSLEY, KOHL, HATCH, and CARPER played very important roles in that consideration. Those negotiations were very productive. We reached significant agreement not on the four original areas of concern but on eight others as well. That point deserves special emphasis. We went into the negotiations seeking improvement on four issues. We emerged with significant changes on 12 issues.

The result is a bill that is now before this body. In my view, it is very fair and balanced, rather modest legislation that addresses a number of well documented shortcomings in our Nation's class action system. It shows what we can accomplish in the Senate when we work together in a bipartisan fashion. As with all good compromises, this bill is entirely satisfactory to no one and in some respects unsatisfactory to everyone.

There are those who will say this bill does not go nearly far enough in rectifying the shortcomings of the class action system in our country. On the other hand, there are those who believe that the sky is falling, that the bill severely impairs the ability of people to gain access to our courts. In my judgment, claims of both sides are vastly overstated. One of the reasons why I believe this is so is that the people on both sides of the legislation, proponents and opponents alike, agree our compromise has made this bill better. It targets more precisely those problems in need of reform and addresses them in an appropriate and effective manner.

We will no doubt discuss those problems in more detail in the coming hours, but allow me to briefly mention two of them. Perhaps the central problem addressed by the compromise is the forum shopping issue. Article III of the Federal Constitution sets forth the circumstances under which cases may be heard in Federal court. Article 2 of Article III extends Federal jurisdiction to suits "between citizens of different States." These are known as diversity cases. The Framers had two separate but related reasons for allowing Federal courts to hear cases between citizens of different States.

Very simply, one was to prevent the possibility that the courts of one State would discriminate against the citizens of another State. The second reason was to prevent the possibility that the courts of one State would discriminate against interstate business and thereby impede interstate commerce. Over the years, however, class action rules have been interpreted in such a way that plaintiffs' lawyers have been able to keep class actions out of Federal court, even those that are precisely the kind of cases for which diversity jurisdiction was created, because of their interstate character. They do this by adding named plaintiffs or defendants solely based on their State of citizenship in order to defeat the diversity requirement.

Alternatively, they allege an amount in controversy that does not trigger the $75,000 threshold for removing cases to Federal court. The result is frequently an absurd one. A slip-and-fall case in which a plaintiff alleges, say, $76,000 in damages can end up in Federal court. At the same time, a case involving millions of plaintiffs and billions of dollars in alleged damages is heard in State court, just because no plaintiff claims more than $75,000 in damages or because at least one defendant is from the same State of at least one plaintiff.

Section four of the bill modifies these diversity rules to allow Federal courts to hear diversity cases that have a strong interstate character. In particular, it allows Federal jurisdiction if the amount in controversy alleged by all plaintiffs exceeds $5 million and if any member of the plaintiff class is a citizen of a different State than any defendant. At the same time, the bill creates careful exceptions that allow cases to remain in State courts where those cases are primarily intrastate actions that lack national implications.

The legislation attempts to bring diversity rules more in line with the original purpose of Federal diversity jurisdiction. Cases that are interstate in nature because they involve citizens of multiple States and interstate commerce may be heard in Federal courts. Cases that are not interstate in nature remain in State courts.

A second problem the compromise addresses is the so-called coupon settlements. As our colleagues may know, a growing number of class action cases involves these type of settlements. In a typical coupon settlement, class members receive only a promotional coupon to reduce the cost of a defendant's products while the lawyers for the class action receive a rather large fee that is disproportionate to any client benefit.

For instance, in one case a soft drink company was sued for improperly adding sweeteners in apple juice. The company agreed to settle the case. The settlement required it to distribute to customers a 50-percent coupon off the purchase of apple juice. Meanwhile, class counsel received $1.5 million in cash.

I have no problem with attorneys earning a fee for their services. In fact, the compromise bill places no caps at all on attorney fees, although there were those who wanted to do that.

But what is particularly disturbing about these coupon settlements is class members typically redeem only a small portion of the coupons awarded. In fact, over the years only 10 or 20 percent of coupons are actually redeemed. Yet the attorneys are paid regardless of how many coupons are cashed in.

In effect, there is a negative incentive for counsel for both plaintiffs and defendants to enter into such settlements. Counsel for the plaintiff is paid their fee regardless of the percentage of coupons redeemed. At the same time, counsel for the defendants know they are likely to pay in redeemed coupons only a fraction of what they would pay if they paid cash to settle a case. Meanwhile, the actual class members—the ones who have actually been aggrieved—receive a benefit of little or no value at all.

Our compromise takes several steps to remove this negative incentive to enter into coupon settlements. Most importantly, it states that an attorney's fee incurred to obtain a coupon

# EXHIBIT 5

settlement can only be paid in proportion to the percentage of coupons actually redeemed. For example, if an attorney's fee for obtaining a coupon settlement is $5 million but only one-fifth of the coupons are actually redeemed, the attorney can only recover one-fifth of his or her fee—roughly $1 million.

In addition, the bill requires that a judge may not approve a coupon settlement until he or she conducts a hearing to determine whether settlement terms are fair, reasonable, and adequate for class members.

There are other provisions of the bill that are also important.

In the interest of time—I see my colleague from Mississippi also wants to speak before our colleague from Illinois offers the first amendment—I will defer discussing them in detail at this hour. However, to reinforce my central argument that this is a reasonable, modest piece of legislation, it is worth mentioning what the bill does not do.

First, it does not apply retroactively, despite those who wanted it to. A case filed before the date of enactment will be unaffected by any provision of this legislation.

Second, this legislation does not distinguish in any way or alter a pending case.

Third, it does not in any way alter substantive law or otherwise affect any individual's right to seek equitable and monetary relief.

Fourth, in does not in any way limit damages, including punitive damages.

Fifth, it does not cap attorney fees.

These are all matters that some people wanted to include in the bill.

And, it also does not impose more rigorous pleading requirements of evidentiary burdens of proof.

As some of our colleagues have said, this legislation is actually more court reform than tort reform. Candidly, I think they are more right than wrong about that. This is more court reform than tort reform. It stands in very sharp contrast to some of the other legislation considered by the Senate in the last Congress. That includes the Energy bill, which extinguished pending and future suits against makers of MTBE, a highly toxic substance that pollutes ground water.

It also includes legislation that shielded gunmakers and gun dealers from many types of lawsuits.

Incredibly, we were about to adopt legislation that would completely exclude an entire industry even when there was complete negligence on their behalf of being sued. I suggested when we were about to adopt those bills that Members think about talking about tort reform. Those matters cause this Senator deep concern, despite the fact I represent the largest gun producers in the United States. I cannot imagine my insurance companies getting a deal as the gun manufacturers were about to get. Nonetheless, those bills died, as they should have, in my opinion.

The legislation before the Senate today does not close the courthouse door to a single citizen in this country. Maybe that citizen will end up in Federal court rather than State court, but no citizen will lose the sacred right in America to seek redress or grievance in a court of law.

When this compromise was written 15 months ago, it was said that it was critical that this bill be honored as the bill moves forward—both within and beyond the Senate. I continue to believe that to be the case.

In the words of the Senator from Kentucky earlier today, as well as statements made by Speaker HASTERT, this Member is assured that, in fact, the agreements will be kept. In fact, I had a conversation with the staff of Mr. SENSENBRENNER, chairman of the House Judiciary Committee, who reinforced the notion that if we adopt this bill as it presently reads, then there will no changes in the House and they will accept the Senate language. That is good news for those of us who have worked on this compromise.

Certainly, this is not a perfect bill. No bill is. We all know that, but I think it strikes a careful balance between remedying the shortcomings and retaining the strengths of current class action practice in this country.

Obviously, the bill is not yet through the Senate. But the consent agreement entered into by the two leaders is an auspicious beginning to preserving the balance.

Let me, once again, reiterate my thanks to Senator REID of Nevada, the distinguished Democratic leader, and for Senator FRIST entering into that agreement which allows us to have this debate, and for all relevant and germane amendments to be considered to this legislation. Certainly, that is the way it ought to be done.

Moreover, I note that the leadership of the other body has indicated its willingness to respect the balance that this bill strikes, as well. That, too, is a positive development.

I stand in strong support of this legislation. I think it is a good compromise. It is not a perfect one. I know my colleagues may offer some amendments that I might have been attracted to under different circumstances which I may support, but when you try to reach agreement here, it is not easy. And when you do, I think it is worthy of support, particularly when those agreements cover as much territory as we did during the compromise efforts 15 months ago.

As I mentioned at the outset, there were four proposals with which we ended the negotiations. Those four proposals were adopted, and eight others were added during that negotiation.

I commend again the leader. I commend Senators SPECTER and LEAHY for their efforts, and I look forward to this bill passing the Senate and being adopted by the House and going to the President for his signature.

I yield the floor.

The PRESIDING OFFICER. The Senator from Mississippi.

Mr. LOTT. Mr. President, I rise today in strong support of the Class Action Fairness Act of 2005.

Before he leaves the floor, I thank the Senator from Connecticut, Mr. DODD, for his comments and for his leadership in this area. He has been steadfast. He has been involved in the process of moving this bill forward. A process which involves some give and take and some compromise.

Surprise, surprise. That is the legislative process. This is not a perfect bill, as he noted. It is not one that I particularly like. I would like to make it a lot stronger, but it is a major step forward.

I thank Senator DODD, and other Senators. Senator CARPER has been involved in that process, and colleagues on this side of the aisle.

I am pleased that the first substantive bill of the year is one that truly has a chance to make a huge difference in this country, and it is a bipartisan effort. It is one that I predict, when we go through the amendment process and get to the end, will have a large vote in support. I will not be surprised if it gets 70 votes. I hope for that. That would be a positive step.

If we can hold the line on amendments that may be offered—some that I would be attracted to, some that Senators such as Senator DODD would be attracted to—but we worked out an agreement. We should brush back those amendments, discourage a whole raft of amendments being contemplated, and complete our work. The House has indicated they will accept this product—the compromise we came up with. When was the last time you heard of that even being possible?

But they have reaffirmed just in the last few days that, yes, if we can complete it the way it is presently structured, they will take it up, pass our bill, and send it to the President. That would be a good way to start this year.

I thank colleagues on both sides of the aisle for the work that has been done.

Senator HATCH is here managing the legislation. He has worked on this long and hard, including last year when we had an opportunity that slipped away from us for a variety of reasons. It was tough last year to get much of anything done with all of us preoccupied with the Presidential campaign and our Senate campaigns and the House races. There is no use going back and rehashing why we didn't get it completed. We didn't get the job done. But we can do it now.

I thank Senator HATCH for the work he has done on this bill over the years, and Senator SPECTER for getting it out of the Judiciary Committee in good order. I thank Senator GRASSLEY for his usual dogged determination to not give up on an issue, and he continues to press not only this but the bankruptcy reform issues.

I am thankful for the way we are starting off this year. I thank the leadership for working out an agreement to

# EXHIBIT 6

excellent reason not to include them. This bill will harm victims of civil rights and labor law abuses by delaying their cases and making it much more difficult and much more expensive—for them to obtain the justice they deserve. It may even discourage many from seeking any relief at all.

That is not what this bill was meant to do. We were told this bill was about cases in which individuals from across the country receive relief in State courts for relatively minor violations—sometimes getting just a coupon or a few dollars in a case they didn't even know about while a few elite attorneys receive more megadollar fees. Civil rights and wage-and-hour class action suits are not about minor violations. They are about serious, sometimes devastating harm to people who have been treated unfairly and are seeking their day in court; people such as Mary Singleton, a long-term employee at a scientific laboratory in California who joined a gender discrimination class action after her employer refused to give her and other female employees equal pay for equal work. Ms. Singleton and her coworkers filed their case in State court because State law provided greater protection against gender discrimination and retaliation and because the Federal court rules would have placed additional limits on discovery.

This bill would also harm people such as Georgie Hartwig who spent 6 years working at a national discount retailer in Colville, WA. For years, Ms. Hartwig and her fellow workers were forced to work off the clock, skipping breaks and lunch, but not being paid for their time. Now she is fighting, along with 40,000 coworkers, to get the wages they have earned. This bill was not supposed to make it harder for people such as Ms. Hartwig to get justice.

We were also told this bill would not shift cases to Federal courts unless they truly involve national issues, while State cases would remain in State court. The bill's actual effects are quite different. It does not just affect cases where the events affect people in multiple States; under this bill, a corporate defendant with headquarters outside the State can move State class action cases, including civil rights cases and worker right cases, into Federal court, even if all the underlying facts in the case happened in a single State. Think about that. If 100 workers in Alabama sue their employer under Alabama law for job discrimination that occurred in Alabama, this bill says the employer can drag their case into Federal court if the employer happens to be incorporated in Delaware. That makes no sense.

The bill would also apply to cases that seek justice for other strictly local events such as environmental damage. That is not what this amendment is about. This problem, which is affecting us now in Massachusetts, illustrates the fact that this bill is not just about truly national cases, as supporters keep insisting.

A case now pending in a Massachusetts State court illustrates how the bill deprives local citizens of access to their own State courts when they become innocent victims of widespread pollution occurring in their hometowns.

In April 2003 an oil barge ran aground on Buzzard's Bay off the coast of New Bedford, MA, spilling 98,000 gallons of oil into the bay and polluting almost 90 miles of beaches and sensitive tidal marshes in the area. Homeowners filed a class action suit in State court asking for compensation for the damage to their property. One of the defendants, Bouchard Transportation Company, has already been convicted of criminal negligence in causing the spill. The defendant companies are from out of State. Even though the case occurred entirely under Massachusetts law, if the current bill, the proposed bill, had been in effect when the case was filed, this case could be removed to Federal court even though all the victims are full-time Massachusetts residents and seeking relief in Massachusetts courts under Massachusetts laws.

Because this bill is not retroactive, the case will not be affected by this bill, but with the passage of this act, similar future cases, properly brought in the courts of the State where the harm occurs, can be removed to the Federal courts. As a result, the victims will often be confronted by class action certification procedures more onerous than those in their State courts. They will face delays from congested Federal dockets. They will have to travel greater distances from their homes to the courthouse. The procedural changes in this bill seem abstract, but they will have a devastating consequence for real people.

First and foremost, it reduces each State's power to protect its own citizens and enforce its own laws. Moving these cases to Federal court will often end them for all practical purposes. Federal courts may decide they do not meet the Federal rules for class certification. Even if the cases are not dismissed, plaintiffs forced into Federal court on State law claims have the decks stacked against them in Federal court because Federal courts take the narrowest possible view in interpreting State laws. The First and Seventh Circuits ruled in interpreting State laws Federal courts must take the view that narrows liability. State judges should be the ones who interpret State laws, not Federal "big brother."

Often State laws have greater protections than Federal laws. That is the genius of our Federal system. Many States have stronger minimum wage laws and greater overtime protections than Federal law. Fourteen States and the District of Columbia have a higher minimum wage than the Federal standard. Twenty states have overtime laws that give workers greater protection than the Federal Fair Labor Standards Act. Over 20 States have child labor laws that are more protective than Federal child labor laws.

At a time when the administration is bent on undermining overtime at the Federal level, State law protections are more important than ever.

States are also pioneers in protecting civil rights. Many States, such as California, Minnesota, New Jersey, New York, Rhode Island, Washington, and West Virginia, have greater protections for persons with disabilities than the Federal Americans With Disabilities Act. States are also in the forefront of protecting against discrimination based on family status or citizenship.

A majority of States prohibits genetic discrimination in the workplace, a new and troubling form of discrimination where the Federal Government has been too slow to respond. Our proposal, to prohibit genetic discrimination under Federal law, passed 95–0 in the Senate, but it stalled in the House. When States act ahead of the Federal Government to provide greater rights for their citizens, State courts should be allowed to interpret their own laws. State courts, not Federal courts, have the expertise in exerting the will of the State legislature and they should have the right to do so.

We all know what is going on. We should call this bill the "Class Action Hypocrisy Act of 2005." Our colleagues love to proclaim States rights when Congress tries to expand the rights of law in all 50 States, but they do not hesitate to override States rights to help their business friends. This bill is a windfall for guilty corporate offenders. It even allows repeat offenders to drag State cases into Federal court and allows them to spend months litigating whether the case belongs there. If the Federal court decides that the case does not fit the narrow rules set by the bill and should be sent back to State court, that will cause another delay because the employer can appeal the decision. Delay is a serious problem today in many Federal trial courts across the country.

Paul Jones, an employee of Goodyear Tire Company in Ohio, found that out the hard way. He and other workers in their fifties filed an age discrimination case in the State court in Akron. All they wanted was to be judged by their ability, not their age. His attorney said, we file our class action lawsuits in the Ohio State court system because it is our experience these cases move much more rapidly in the State court than they would if filed in the Federal court system. The difference in the amount of time it takes to adjudicate a State court age discrimination case compared to a Federal court case may be as much as 2 years. No wonder the corporate defendants are salivating over this opportunity to escape the liability for their wrongs.

Paul Jones had a State law claim in State court, but his employer tried to have it dismissed based on Federal court rulings that certain types of arguments in age discriminations were invalid. The State court rejected that argument. It held that Mr. Jones could

# EXHIBIT 7

Mr. McCAIN. Madam President, I ask unanimous consent that the order for the quorum call be rescinded.

The PRESIDING OFFICER. Without objection, it is so ordered.

(The remarks of Mr. McCAIN and Mr. LIEBERMAN pertaining to the introduction of S. 342 are located in today's RECORD under "Statements on Introduced Bills and Joint Resolutions.")

Mr. McCAIN. I suggest the absence of a quorum.

The PRESIDING OFFICER (Mr. ENSIGN). The clerk will call the roll.

The assistant legislative clerk proceeded to call the roll.

Mr. SPECTER. Mr. President, I ask unanimous consent the order for the quorum call be rescinded.

The PRESIDING OFFICER. Without objection, it is so ordered.

CONCLUSION OF MORNING BUSINESS

The PRESIDING OFFICER. Morning business is closed.

CLASS ACTION FAIRNESS ACT OF 2005

The PRESIDING OFFICER. Under the previous order, the Senate will resume consideration of S. 5, which the clerk will report.

The legislative clerk read as follows:

A bill (S. 5) to amend the procedures that apply to the consideration of interstate class actions to assure fairer outcomes for class members and defendants, and for other purposes.

Pending:

Durbin (Modified) Amendment No. 3, to preserve State court procedures for handling mass auctions.

Feingold Amendment No. 12, to establish time limits for action by Federal district courts on motions to remand cases that have been removed to Federal court.

Mr. SPECTER. Mr. President, I thank Senators on both sides of the aisle for their cooperation in moving this class action bill. We reported it out of committee a week ago today and started the opening debate on it on Monday afternoon and then proceeded in a very timely fashion. The prospects are good that we will conclude action on the bill today. A unanimous consent agreement is currently in the process of being worked out, and we will know in the next few minutes precisely what will happen.

We are going to proceed in a few minutes to the amendment offered by the Senator from Wisconsin, Mr. FEINGOLD, which would impose some time limits on the courts which, as I said at the committee hearing last week, I think is a good idea. I advised Senator FEINGOLD that I would feel constrained to oppose it on this bill because of the procedural status, where the House of Representatives has been reported to accept the Senate bill provided it comes over as what we call a clean bill, without amendments.

But as I said to Senator FEINGOLD, and will repeat for the record, I had heard many complaints about delays in our Federal judicial system. I believe that is an appropriate subject for inquiry by the Judiciary Committee on a broader range than the issue specifically proposed by Senator FEINGOLD. It is in the same family.

I want to be emphatic. We are not impinging in any way on the independence of the Federal judiciary, their discretionary judgments. But when it comes to time limits, how long they have these matters under advisement, I think that is an appropriate matter for congressional inquiry. It bears on how many judges we need and what ought to be done with our judicial system generally. So that will be a subject taken up by the Judiciary Committee at a later date.

I think the Senate bill—this may be a little parochial pride—is more in keeping with an equitable handling of class action bills than is the House bill. For example, the House bill would be retroactive and apply to matters now pending in the State courts, which would be extraordinarily disruptive of many State court proceedings. I think it is fair and accurate to say that the House bill is more restrictive than the Senate bill and our Senate bill, I think, is a better measure to achieve the targeted objective of having class actions decided in the Federal court with balance for plaintiffs and for defendants as well.

So we are moving, I think, by this afternoon, to have a bill which will be ready for concurrence by the House, and signature by the President, and that I think will be a sign that we are moving forward on the legislative calendar.

The Senator from Louisiana is going to seek recognition in a few minutes. I thank my distinguished colleague, Senator HATCH, the former chairman, who has agreed to come over and manage the bill during my absence. We are, at the moment, having hearings on the bankruptcy bill which we hope to have in executive session next Thursday, to move ahead on our fast moving, ambitious judiciary calendar.

I now yield to my distinguished colleague from Louisiana.

The PRESIDING OFFICER. The Senator from Louisiana.

Mr. VITTER. Mr. President, I rise in strong support of S. 5, the Class Action Fairness Act of 2005. In doing so, I wish to recognize and thank them for their leadership, so many Senators who have moved the bill thus far, certainly including the chairman of the Judiciary Committee who just spoke, also the Senator from Iowa, the chief sponsor of the bill, and also the Senator from Utah, the former chairman of the Judiciary Committee.

I am also an original cosponsor of this bill, because it would protect consumers from some of the most egregious abuses in our judicial system.

Let me begin by saying that class actions are an important part of our justice system. They serve an important purpose when properly defined. No one would dispute they are a valuable feature of the legal system. This bill doesn't do away with them.

As stated so eloquently by the bill's chief sponsor, my colleague from Iowa, S. 5 is really court reform more than tort reform. What does it reform? What is the problem?

The reason we need to pass this bill is that there are loopholes in the class action system, and it allows bad actors to game the system. As a result, in recent years class actions have been subject to abuses that actually work to the detriment of individual consumers, plaintiffs in such cases. That is exactly who the law is supposed to help.

Additionally, this gaming of the system clearly works to the detriment of business and our economy, and the need for job creation in forging a strong economy.

Such abuses happen mainly in State and local courts in cases that really ought to be heard in Federal court.

We currently have a system, therefore, which some trial lawyers seeking to game the system in an effort to maximize their fees seek out some small jurisdiction to pursue nationwide cookie-cutter cases, and they act against major players in a targeted industry. Often, these suits have very little, if anything, to do with the place in which they are brought. Rather, lawyers select the venues for strategic reasons, or for political reasons, a practice known as forum shopping.

These trial lawyers seek out jurisdictions in which the judge will not hesitate to approve settlements in which the lawyers walk away with huge fees and the plaintiff class members often get next to nothing. The judges in these jurisdictions will decide the claims of other State citizens under their unique State law. They will use litigation models that deny due process rights to consumers and defendants.

Often the decisions coming out of these hand-picked and carefully selected venues are huge windfalls for trial lawyers and big law firms and a punch line for consumers and the people the lawyers claim to represent. There is now in our country a full blown effort aimed at mining for jackpots in sympathetic courts known as "magnet courts" for the favorable way they treat these cases.

Let us look at a few examples of exactly what I am talking about. Perhaps the best example nationwide, in terms of preferred venues for trial lawyers, is Madison County, IL, where class action filings between 1998 and 2000 increased nearly 2,000 percent. There is actually an example of a South Carolina law firm filing a purported class action on behalf of three named plaintiffs. None of them lived in Madison County, IL, but the lawsuit was filed in that jurisdiction against 31 defendants throughout the United States. None of those defendants were located in Madison County. These lawyers based the alleged jurisdiction on the mere allegation that some as yet unknown class

# EXHIBIT 8

stewardship, I don't think th achievement would have become a reality.

I come from Illinois—the Land of Lincoln— where downstate Madison County has the dubious distinction as a personal injury lawyer's paradise. No, there are not palm trees or sandy beaches there. Instead, Madison County, Illinois, is home to very warm courtrooms where frivolous lawsuits are filed virtually everyday.

Why's Madison County? The answer: "venue shopping."

Cagey trial lawyers have figured out there's a pretty good likelihood their case—no matter what its merit—will literally get its day in court because of favorable judges.

To use a sports analogy, thanks to willing judges, personal injury lawyers get to play on their "home court" each and every time they file a frivolous lawsuit there.

For instance, a legendary class action case from Madison County illustrates what's wrong with the current legal system.

In 2000, Cable TV customers who filed suit over their cable operator's late fee policy won their case, but received nothing . . . not a dime, not a nickel, not a Lincoln penny. Instead, their $5.6 million settlement went directly into the pockets of their attorneys. How is that justice? How does that help victims?

The American people deserve better. Our working families demand better.

Today's action takes a step in the right direction to end the so-called Tort Tax.

The Tort Tax makes consumers pay more for the goods and services they use.

The Tort Tax adds to the cost of everything we buy because businesses and manufacturers have to cover themselves and their employees—just in case they get sued by a greedy personal injury lawyer.

At last estimate, this outrageous Tort Tax cost the nation's economy $246 billion a year, and by 2006, it will cost the average American nearly $1,000 more each year on their purchases because of defensive business practices.

In closing, as a matter of principle, damage awards should go to the victim, not the lawyers. Lawsuits should not be "strike it rich" schemes for lawyers.

There has to be some limit to what lawyers can take from their clients. Otherwise, cagey attorneys end up with the lion's share of the settlement and the victims end up with little more than scraps.

Mr. UDALL of Colorado. Mr. Speaker, the House has considered similar legislation in 1999, 2002, and 2003. On each of those occasions, I voted "no"—not because I was unalterably opposed to Congress acting on this subject, but because in my judgment the defects of those bills outweighed their potential benefits.

When it was announced that this bill would be considered, I hoped that the pattern would be broken and that this time I would be able to support the legislation. And if the Conyers substitute had been adopted, that would have been the case.

Adoption of the substitute would have greatly improved the legislation. It would have reaffirmed the authority and ability of each State's Attorney General to carry out his or her duties under State law. It would have made sure that the bill would not prejudice people with complaints about violations of their civil rights. It would have properly focused the legislation on class actions unrelated to personal injuries. It would have added important protections for the public's right to know about the proceedings in our courts. And it would have made other changes that would have improved the bill.

Unfortunately, the substitute was not adopted—and I have come to the reluctant conclusion that I must vote against this bill.

That conclusion is reluctant because in several ways this bill is better—or, more accurately, less bad—than its predecessors.

Unlike earlier versions, S. 5 would not have a retroactive effect, so it would not affect pending cases. It also does not include a provision for immediate interlocutory appeals of denials of class action certification, or for a stay of all discovery while the appeal was pending. And in several other ways, it differs for the better from previous versions.

However, while the bill is less bad, in my opinion it still is not good enough. I remain unconvinced that the problem the bill purports to address is so great as to require such a sweeping remedy, and I am still concerned that in too many cases the side-effects of this treatment will be more severe than the disease.

Mr. Speaker, one of the most important rights we have as Americans is the ability to seek redress from the courts when we believe our rights have been abridged or we have been improperly treated. And, when a complaint arises under a State law, it is both appropriate and desirable that it be heard in State court because those are the most convenient and with the best understanding of State laws and local conditions.

Of course, it is appropriate to provide for removing some State cases to Federal courts. But I think that should be more the exception than the rule, and I think this bill tends to reverse that. I think it excessively tilts the balance between the States and the Federal government so as to throw too many cases into already-overburdened Federal courts—with the predictable result that too many will be dismissed without adequate consideration of their merits.

So, while I respect those who have urged the House to pass this bill, I cannot vote for it.

Mr. BLUMENAUER. Mr. Speaker, I agree with this bill's intent to prevent the legal system from being "gamed" by attorneys who lump thousands of speculative claims into a single class action lawsuit and then seek out a sympathetic State court. Any abusive or frivolous class action is a drain on the system and forces innocent defendants to settle cases rather than play judicial roulette with the risk of a huge unjustified settlement.

Unfortunately, instead of narrowly focusing on such abuses, Senate bill 5 completely reconfigures the judicial system, resulting in diminished corporate accountability and fundamental legal rights of individuals. While this bill makes some improvements to limit frivolous lawsuits, it does so at a price that will make it harder for average Americans to successfully pursue real claims against interests that violate their States' consumer health, civil rights, and environmental protection laws. This is an unnecessary tradeoff. I voted for a Democratic substitute motion which would have minimized some of these abuses. Sadly, it was defeated and, as a result, I voted against final passage.

I will continue to be open to changes that make our judicial system work better, but not at the expense of the people I represent. It is essential that we hold accountable the forces that have so much impact on the lives of every American.

Mr. WEXLER. Mr. Speaker, I rise today in strong opposition to the so-called "Class Action Fairness Act." I have strong objections to not only to the text of the bill itself but also to the very process by which it was strong-armed by the Republican leadership past the Judiciary Committee. This process did not allow any opportunity for committee members to raise our objections or to work constructively to fix the major problems in this legislation. This circumvention of regular order is being sold to us with a myriad of excuses, one of them is that the bill is a simple procedural fix for a judicial crisis with nothing controversial in it.

Nothing could be further from the truth. This bill is a federal mandate to undermine and all but kill the ability to raise class actions cases in State courts. Under this so-called "procedural bill," almost every class action lawsuit would be removed from State jurisdiction and forced onto an already overburdened Federal judiciary. Moving these cases to Federal court will make litigation more costly, more time-consuming and less likely that victims can get their rightful day in court at all. This bill is so preposterously far-reaching it would prevent State courts from considering class action cases that only involve State laws. We have already added so many State cases to Federal jurisdiction that if this bill passes victims will be added to the substantial backlog of Federal cases and will likely find it difficult to ever have their cases heard.

It should be obvious to even the most casual observer that the intent of this bill is to prevent class action lawsuits from ever being heard. Members should make no mistake about it—if we pass this misguided legislation, we will have effectively shut the door on civil rights, on workers rights and on anyone injured through corporate negligence.

Mr. Speaker, I urge my colleagues to join me in opposing one of the most destructive and far reaching civil justice measures ever considered by this body.

Mr. SHAYS. Mr. Speaker, I rise in support of S. 5, the Class Action Fairness Act.

This legislation will work to balance class actions. Currently, plaintiffs' lawyers take advantage of the system by bringing large, national lawsuits in specific jurisdictions with relaxed certification criteria.

Attorneys are increasingly filing interstate class actions in State courts, mostly in what are known as "magnet" jurisdictions. Courts in these jurisdictions are attractive to lawyers because they routinely approve settlements in which attorneys receive large fees and the class members receive virtually nothing, and they also decide the claims of other state's citizens under the court's state law.

This results in more and more class actions being losing propositions for everyone involved—except for the lawyers who brought them.

The Class Action Fairness Act works to improve our legal system by allowing larger interstate class action cases to be heard in Federal courts, closing the magnet jurisdiction loophole.

This bill will also make it easier for local businesses to avoid harassment. Currently,

# EXHIBIT 9

*February 17, 2005*    CONGRESSIONAL RECORD — HOUSE    **H753**

In section 1332(d)(1)(B) of title 28, United States Code, as amended by section 4(a)(2) of the bill, insert before the semicolon the following ", except that the term 'class action' does not include any action arising by reason of the use of the drug Vioxx''.

The SPEAKER pro tempore. Pursuant to the rule, the gentleman from Ohio (Mr. BROWN) is recognized for 5 minutes in support of his motion.

Mr. BROWN of Ohio. Mr. Speaker, Janet Huggins died last September. She was 39 years old. She had a 9-year-old son.

She had no personal or family history of heart problems, but she suffered a fatal heart attack just a month after she began taking a new medicine for her early-onset arthritis.

That medicine she took was Merck's anti-inflammatory drug, Vioxx. Cardiologist, Dr. Eric Topol, and other researchers at the Cleveland Clinic sounded the alarm in August of 2001.

Their article in the Journal of the American Medical Association pointed to increased occurrence of heart problems in patients taking Vioxx and similar Cox-II anti-inflammatory drugs. Dr. Topol even called Merck's CEO and research director to talk about his concerns. His calls went unanswered. His warnings went unheeded.

Instead, Merck continued to sell Vioxx, continued to spend $100 million a year on direct-to-consumer advertising, encouraging more and more Americans to buy Vioxx. That is what Ms. Huggins did. She was buried the same day that Merck finally took Vioxx off the market.

Her husband Monty has filed suit against Merck. His suit will be captured, along with thousands of other Vioxx suits, under the mass actions provisions of S. 5. This bill is designed to make it more difficult for Monty Huggins and others to pursue their claims that companies like Merck will never be held accountable.

S. 5 will make it more expensive for him and much harder for him to travel for court proceedings. It may even dead-end Monty Huggins' claim entirely.

Federal Courts have repeatedly refused to certify multistate class actions because they found them too complex to choose one State law over the other. So Monty Huggins may arrive in Federal Court only to find that is the end of the line.

The bitter irony here is that Vioxx claims are not really class actions at all.

Here is a good example of the sort of things settled by class action lawsuits. This iPod portable music player is all the rage. There are some people out there who thought the batteries on these things run out too quickly. They have filed a class action lawsuit against the manufacturer. If they win, everybody in the class probably gets a few bucks and the whole thing is done.

That is what class action lawsuits are about. They do not generally involve personal injuries. They do not generally involve huge losses. There is a world of difference, Mr. Speaker, between a faulty battery in this, and the death of a 39-year-old wife and mother.

Perhaps the worst aspect of this bill is that it treats these suits the same. We should strip out the whole class action, the mass action provision, but that is not realistic in this political environment.

My motion to commit prevents harm so obvious it cannot be ignored by specifically exempting Vioxx lawsuits.

Dr. Topol at the Cleveland Clinic, who I mentioned earlier wrote, "Neither of the two major forces in this 5-and-a-half year affair, neither Merck nor the FDA, fulfilled its responsibilities to the public.''

This motion to commit offers an opportunity for someone at last to act responsibly.

If we adopt this motion to commit, Monty Huggins will have a fighting chance for justice. If we do not, the U.S. House of Representatives will join the list of those who betrayed the public's trust.

Mr. Speaker, I yield the reminder of my time to my friend, the gentleman from Arkansas (Mr. ROSS).

Mr. ROSS. Mr. Speaker, the Class Action Fairness Act could not be more inappropriately named, and this motion to commit shows why.

Since 1999, Merck has spent over $100 million a year to advertise Vioxx. More than 80 million people took Vioxx, and the drug generated sales of $2.5 billion for Merck.

Merck should take responsibility for the harm their products may cause. Thousands, literally thousands of American families believe they lost a loved one or suffered personal harm because Vioxx was unsafe.

These families believe Merck knew of the danger Vioxx was causing, but allowed the drug to remain on the market anyway. Maybe they are right. Maybe they are not. But the point is that the so-called Class Action Fairness Act does not give them a fair chance to make their case before a jury of their peers.

The Class Action Fairness Act makes it very difficult for those who feel they were harmed by drugs like Vioxx from getting the justice they deserve. We should adopt this motion to commit and pass a Class Action Fairness Act worthy of the name.

Mr. GOODLATTE. Mr. Speaker, I rise in opposition to the motion to commit.

The SPEAKER pro tempore. The gentleman from Virginia (Mr. GOODLATTE) is recognized for 5 minutes.

Mr. GOODLATTE. Mr. Speaker, first let me thank Chairman SENSENBRENNER for his leadership in bringing us to this historic point. He and I have been working on this for over 6 years. It has passed the House of Representatives three times before.

Due to his good work, it has now passed the Senate and we have the opportunity to send it to the President. He is waiting to sign it and we shouldn't waste any more time.

□ 1315

Now the truth about class action fairness and Vioxx. Critics have been arguing in the press that S. 5 should be rejected because it will hurt consumers bringing Vioxx cases against Merck. The truth is, however, that this legislation will have absolutely no effect on Vioxx suits, and here is why. The majority of personal injury cases brought against Merck are individual cases that would not be affected by the bill in any manner whatsoever. These include more than 400 personal injury cases that are part of a coordinated proceeding in New Jersey State Court. None of these cases will be affected by the bill because they are neither class actions nor mass actions.

Merck has been named in more than 75 statewide and nationwide class actions involving Vioxx, but only a small percentage are personal injury class actions. To the extent these cases do involve personal injury, most were already bought in or removed to Federal Court because each potential class member's claims exceeds $75,000. Thus, these cases are removable to Federal Court under the old rules.

There are a few cases which plaintiffs have joined together in mass action-type cases against Merck. However, not a single Vioxx case has been brought against Merck in State court by more than 100 plaintiffs, one of the requirements for removal to Federal Court under the class action legislation. Thus, there is no reason to believe that the mass action provision would affect any Vioxx-related cases whatsoever.

Most of the class actions have been brought against Merck. Since the legislation is not retroactive, it would absolutely have no effect on the 75 class actions already filed against Merck in the wake of the Vioxx withdrawal.

Mr. BROWN of Ohio. Mr. Speaker, I have a parliamentary inquiry.

The SPEAKER pro tempore (Mr. COLE of Oklahoma). Does the gentleman from Virginia yield to the gentleman from Ohio for a parliamentary inquiry?

Mr. GOODLATTE. Mr. Speaker, I do not yield.

The SPEAKER pro tempore. The gentleman from Virginia (Mr. GOODLATTE) may continue.

Mr. GOODLATTE. Mr. Speaker, given the large number of suits already filed and the fact that every former Vioxx taker in America is already a proposed class member in numerous class actions, it is unlikely there will be many more class actions after the legislation is enacted.

It is bad legislation to have something pass that covers all class actions in the country for all time and name one specific product or one specific company in the legislation. It is irrelevant anyway.

Now, let me tell you the kinds of cases that are affected by this legislation. Take a look at the "Class Action Wheel of Fortune'' on this chart. It will tell you what we are doing here today.