## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE NEURONTIN MARKETING AND SALES PRACTICES LITIGATION | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: | Master File No. 04-10981 |
| LAURA ALLEN, ADMINISTRATIX OF THE ESTATE OF THE LATE DANIEL ALLEN, TIMOTHY BRIDGES, and ALFRED MORABITO, individually and on behalf of themselves and all others similarly situated, | Judge Patti B. Saris |
|  | Civil Action No. 05-10797 |
| Plaintiffs, |  |
| v. |  |
| PFIZER, INC. and PARKE-DAVIS, a division of Warner-Lambert Company |  |
| Defendants. |  |

## PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND

Unable to respond to the Massachusetts authorities cited by plaintiffs that define and interpret "commencement", defendants simply ignore them. Unable to address the exhibits provided by plaintiffs that demonstrate the explicit limitation of the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (February 18, 2005) (hereinafter "CAFA") and Congress' clear intent, defendants overlook them. Unable to rebut the decisions by the multiple courts that decided this very same jurisdictional issue, defendants simply aver that the courts are wrong.

In opposition, defendants offer a few inapposite cases from foreign jurisdictions

addressing completely different statutes and hold them out as the "majority". At the same time, defendants make a desperate plea upon the Court for judicial economy. Failing to cite one single Massachusetts case, let alone one decision from the First Circuit, defendants cannot and have not met their burden of establishing that this Court has subject matter jurisdiction over this action. Therefore, removal was improper and the case should be remanded to Suffolk Superior Court Department of the Trial Court of the Commonwealth of Massachusetts.

**1.  Massachusetts Law is Clear that Commencement of an Action is the Date of Filing in State Court**

Massachusetts law is clear that an action is commenced by the mailing or filing of the complaint. *See* Mass. R. Civ. P. 3. Massachusetts law is also clear that an amendment to a complaint relates back to the date of original pleading. *See* Mass. R. Civ. P. 15(c). Judge Woodlock when faced with the question, when is an action commenced, held that the court must look to applicable state law and that Mass. R. Civ. P. 3 makes clear that an action is commenced by "mailing to the clerk of the proper court via certified or registered mail a complaint and an entry fee prescribed by law, or (2) filing such complaint and entry fee with such clerk." *Santiago v. Barre National, Inc.*, 795 F. Supp. 508, 510 (D. Mass. 1992) (quoting Mass. R. Civ. P. 3). *See also, Nett ex rel. Nett v. Belluci*, 269 F.3d 1, 7 (1st Cir. 2001) (citations omitted) ("[T]he Federal Rules of Civil Procedure determine the date from which various timing requirements begin to run. They do not, however, affect the commencement of a lawsuit. Rather, state commencement rules apply.").

The Massachusetts Supreme Judicial Court also recognized that courts must look to the rules of civil procedure to determine the commencement date. *Nett v. Belluci*, 437 Mass. 630, 635 (2002). "Ordinarily, we would look to our rules of civil procedure to determine the date on

which an action is 'commenced,' and, under the straightforward provisions of those rules, we would find that amended pleadings adding or substituting a party, where the claims asserted against the new party arise out of the same conduct, transaction, or occurrence set forth in the original pleading, 'relate[ ] back' to the date of the original pleading. Thus, under the rules, an action against such a party added by amendment is 'commenced' on the date that the original complaint was filed." *Id.*

Unable to provide a single case reputing unambiguous Massachusetts authority, Defendants cite to a number of foreign cases for the proposition that courts look to the date of removal in determining subject matter jurisdiction.[1] Beyond the obvious, that not one single case is from Massachusetts or the First Circuit, defendants look for guidance from a line of cases addressing amendments to completely different statutes.

Defendants rely upon *Abernathy v. Consolidated Cab Company*, 169 F. Supp. 831 (D. Kan. 1959), a foreign district court opinion that adopts a broader view of an effective date. In *Abernathy*, after the court found that no history existed for the meaning of "commenced" in the 1958 amendment to 28 U.S.C. §1332(a), it simply followed the rationale of a previous decision in *Lorraine Motors, Inc. v. Aetna Cas. & Sur. Co.*, 166 F. Supp. 319 (E.D.N.Y. 1958). *Abernathy*, 169 F. Supp. at 834. The *Abernathy* action does not deal with CAFA. *Abernathy*, is a 1959 decision involving a statute that attempts to restrict federal court jurisdiction by increasing the amount in controversy. *Id.* at 833. Moreover, there are other courts that had different views of the very same statute. *See Lomax v. Duchow*, 163 F. Supp. 873, 874 (D. Neb. 1958) and *Kieffer v. Travelers Fire Ins. Co.,* 167 F. Supp. 398 (D.Md. 1958). Thus, the decision

---

[1] Defendants also cite a number of holdings from other states that contradict defendants' seminal cases.

is not controlling and offers little value.

As noted by the Tenth Circuit Court of Appeals, *Lorraine Motors* [and *Abernathy*] "actually supported [its] interpretation of the term commenced and that the cases "rely heavily upon the principle that removal statutes are to be strictly construed, with all doubts resolved against removal." *Pritchett v. Office Depot*, 404 F.3d 1232, 1237 (10th Cir. April 11, 2005). "[T]here is a major difference between a statute that defines additional circumstances in which diversity of citizenship exists (such as the Class Action Fairness Act) and a statute that increases the amount in controversy requirement." *Id. Abernathy* and *Lorraine Motors* rely heavily upon the principle that removal statutes are to be strictly construed, with all doubts resolved against removal. *Id.* Thus, in those cases, interpreting the term commenced as to the filing of the removal petition would serve that aim by restricting the number of preexisting state claims that could be removed. *Id.* In contrast, such an interpretation here would actually permit broader federal court jurisdiction by increasing the number of removable actions. *Id.*

For additional reasons, *Cedillo v. Valcar*, 773 F. Supp. 932 (N.D. Tex. 1991), does not support defendants' position here. The *Cedillo* court found, with very little discussion, that the Judicial Improvements Act of 1990, codified as 28 U.S.C. § 1367, applied to a case that was filed in state court prior to the effective date of the statute but removed after the effective date. *Id.* at 939. The court does this without any discussion, much less any analysis, of the legislative history or purpose of §1367. In fact, *Cedillo* was distinguished and overruled on other grounds by holdings within its own district and circuit. In addition, the court makes the following statement, its only discussion on the issue, without any citation or supporting authority: "the pertinent time to review federal jurisdiction is when such jurisdiction is invoked." *Id.* at 939.

There is also another significant difference between *Cedillo* and the other cases cited by the parties addressing the applicability of federal jurisdiction statutes. In most of the other cases, the result was directly dependent on whether or not a specific jurisdictional provision applied to that case. In *Cedillo*, by contrast, the result may very well have been affected by the court's application of § 1367, and it is entirely possible that the court may have found federal jurisdiction over the plaintiff's state law claim under the prior governing principles of pendent jurisdiction. In fact, the *Cedillo* court expressly noted that § 1367 "ratifies and incorporates the constitutional analysis [with regard to pendent jurisdiction] the Supreme Court made in the *Gibbs* case." *Id.* at 939. And when the court analyzed whether or not supplemental jurisdiction under § 1367 was present, it performed the analysis with reference to the standard enunciated in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). *Id.* at 940, 942.

The *Lomax* decision cited by defendants actually supports plaintiffs' arguments. *Lomax v. Duchow*, 163 F. Supp. 873, 874 (D. Neb. 1958). The *Lomax* Court, in determining whether the action met the jurisdictional requisites of U.S.C. §1332, held that the court must look to the date of commencement of the action, which is the date the case was filed in state court and not when it was removed. *Id.*

In addition, there are other foreign cases that contradict the reasoning of the cases provided by defendants. In *Rhinehart v. Cincinnati Inc.*, 716 F. Supp. 7, 8 (E.D. Mich. 1989), the defendants removed the action relying upon a recent amendment of 28 U.S.C. §1332 which increased the amount in controversy requirements from $10,000 to $50,000. The Act stated: "The amendments made by this section shall apply to any civil action commenced on or after the 180th day after the date of enactment of this title." The court, like this Court, was called upon to

determine the meaning of "commenced." In doing so, the court turned to the Federal Rules of

Civil Procedure which defined commencement of a civil action as follows:

> Rule 3. Commencement of Action
> A civil action is commenced by filing a complaint with the court.

*Id.* at 8. The court also noted that when Congress intended removal to be a trigger, it expressly

stated its intent to do so.

> "Commencement" of an action is a procedure clearly distinct from "removal" of an
> action. It is evident that Congress was aware of this distinction because in other sections
> of the Act, Congress refers to civil actions "commenced in or removed". In fact, in the
> sections immediately following section 201, namely 202(b) and 203(b), Congress
> expressly stated: "the amendments made ... shall apply to ... civil actions commenced in
> or removed ... after the 180th day after the date of enactment of this title." The fact that
> Congress made this distinction in sections 202 and 203 clearly informs this Court that
> Congress intended that section 201 only apply to the date a civil action was "commenced"
> *i.e.*, the date it was initially filed.

*Id.* The court held that since the action was filed, *i.e.*, commenced, in state court before the

effective date of the Act, the increased amount in controversy requirements did not apply. *Id.*

Similarly, in *Kieffer v. Travelers Fire Ins. Co.,* 167 F. Supp. 398, 401 (D. Md. 1958), the

court ruled that the term "commenced" refers to the date the action is originally filed in state

court, as opposed to the date the action is removed. The court reasoned that had Congress

intended the new act apply to cases "commenced in state court before the date of its enactment,

but removed to federal court thereafter" it easily could have done so by using language from

which that conclusion necessarily follows. *Id. See also*, 14B CHARLES A WRIGHT, ET AL,

Federal Practice & Procedure § 3721, at 302 (3d ed. 1998) (removal jurisdiction is unique

because it allows a federal court to hear a claim over which it has no original subject matter

jurisdiction and therefore to adjudicate a suit that could never have been commenced there).

Many of the same cases advanced by defendants here, were reviewed and rejected in the

*Pritchett* actions. *See Pritchett v. Office Depot*, 360 F. Supp. 2d 1176 (D. Colo. March 9, 2005); *Pritchett*, 404 F.3d 1232. The Tenth Circuit Court of Appeals noted that defendants' decisions in question "are relevant only by analogy" – and then proceeded to emphasize that "their persuasive value is diluted ... by the presence of contemporaneous contrary authority from other federal courts. *Pritchett*, 404 F.3d at 1237.

Because this Court did not have original jurisdiction over this case at the time it was commenced in Suffolk Superior Court, it must be remanded to state court.

### 2.    Defendants Reading of Congress' Intent in Enacting CAFA Overlooks the Explicit Language of the Act

Defendants cite various passages from CAFA for the proposition that Congress intended to expand federal jurisdiction and encourage removal of class actions to federal court. (Def Opp. at 8-9). Plaintiffs do not dispute Congress' intent with regard to the Act and its purposes. What is at issue and what defendants continue to skirt around, is the express language of CAFA pertaining to the effective date, the deletion of retroactive language from prior pending legislation, and the clear intent of Congress that CAFA would not apply retroactively to pending state court class actions. The language and intent cannot be any clearer.

First, CAFA states: "[T]he amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act." 119 Stat. 4, §9. (Plfs. Mem. Ex. 1).

Second, earlier versions of the Act, H.R. 1115 and H.R. 516, included retroactive language that was removed from the final version of CAFA. (Plfs. Mem. Exs. 2 & 3). When the Act was originally introduced in the House, the removal provision applied both to cases "commenced on or after the date of enactment" and to cases "commenced before such date of enactment in which a class certification order ... in entered on or after such date of enactment." *See* H.R. 1115, 108th

Cong. §8 and H.R. 516, 109th Cong. §7.

Third, Congressional supporters and opponents of CAFA all stated that the Act will not affect cases filed before the date of enactment. (Plfs Mem. Exs. 4-9). In fact, there is not a single "statement of contrary intent by any legislator evincing an intention that the Act permit removal of presently-pending cases." *Pritchett*, 360 F. Supp.2d at 1180.

Defendants' statements to the contrary are simply musings.

### 3.    As a Matter of Law, the Present Action was Commenced Prior to the Enactment of CAFA

Unable to provide authority to contradict the holdings in *Pritchett*, defendants submit that the District of Colorado decision and Tenth Circuit decision in *Pritchett* are wrong. However, four other decisions addressing the commencement issue of CAFA have similarly held that commencement begins when the action is filed in state court.[2] *See Lander v. Berkowitz, P.C. v. Transfirst Health Services, Inc.*, case No. 4:04CV527 RWS at 3(E.D. Mo., May 19, 2005) (state court complaint filed on February 17, 2005, one day prior to enactment of CAFA- court declared "[i]t is clear that this Court does not have jurisdiction to hear this case.") (attached hereto as Ex. 1); *Hankins v. Pfizer, Inc.*, CV05-1797 ABC (RZx) at 3 (C.D. Cal. March 25, 2005) ("[r]emoving defendants cannot rely on diversity conferred by CAFA, which was not enacted at the time the state action was filed.") (attached hereto as Ex. 2); *Smith v. Pfizer, Inc.*, Case No. 05-CV-0112-MJR at 9 (S.D. Ill. March 24, 2005) ([t]his Court rejects Pfizer's argument that 'commenced' means the date the case reached federal courts (*i.e.*, the date the case was removed)

---

[2] Defendants cite to three of the decisions in a footnote. (Def. Opp. at 12 n.2). Of no surprise, defendant Pfizer, Inc. was the removing party for three of the four actions. Pfizer's argument that "commenced" means the date the case reached federal court (*i.e.*, the date the case was removed) rather than the date the complaint was filed has been rejected by all four courts. *Lander* at 3; *Hankins* at 3; *Smith* at 9; *Lott* at 4; *Hankins* at 3.

rather than the date the complaint was filed.") (attached hereto as Ex. 3); *Lott v. Pfizer, Inc.*, Case No. 05-CV-0230 –MJR at 4 (S.D. Ill. April 7, 2005) (same) (attached hereto as Ex. 4). Of course, defendants submit that those courts were wrong in their analysis as well.

Defendant makes an effort to distinguish this action from the *Pritchett* decisions, the same decisions the defendants maintain are incorrect as a matter of law, by averring that plaintiffs' amendment to and/or service of the complaint somehow changes the commencement date of the action. Such a contention, unsupported by law, flies in the face of Massachusetts Rules of Civil Procedure and case law. In a telling sign of defendants' complete failure to meet their burden of establishing jurisdiction, defendants neglect to cite one Massachusetts or First Circuit court case in either their removal petition or opposition papers.

As stated by the district court in *Pritchett*, "the most natural reading to the plain meaning of the term 'commenced,'" and in view of Congressional intent and public policy considerations, the term 'commenced' in CAFA "does not apply to cases, such as this one, commenced [in state court] prior to February 18, 2005." *Pritchett*, 360 F. Supp.2d at 1180-81. *See also*, Mass. R. Civ. P. 3 and Mass. R. Civ. P. 15(c).

### 4.    Judicial Economy Is Not a Ground for Diversity Jurisdiction

Defendants, in a desperate attempt to elicit the compassion of the Court, aver that judicial economy dictates that this action be heard in federal court. Plaintiffs, however, have made very clear in their complaint that this case involves state law claims solely under the laws of Massachusetts. In fact, plaintiffs, as masters of their complaint, specifically deny any attempt to state a federal cause of action under the laws of the United States of America. (Complaint, ¶ 20).

The threshold issue to be decided by this Court is jurisdiction. "For purposes of judicial

economy, the jurisdictional issue should be resolved immediately.  If federal jurisdiction does not

exist, the case can be remanded before federal resources are further expended." *Aetna v. U.S.*

*Healthcare, Inc.,* 54 F. Supp.2d 1042, 1047-48 (D.Kan. 1999).  *See also, Tortola Restaurants,*

*L.P. v. Kimberly-Clark Corp.*, 987 F. Supp. 1186, 1189 (N.D. Cal. 1997) (judicial economy best

served by addressing the remand issue).

Judicial economy is not a reason to confer diversity jurisdiction and as such, the Motion

to Remand should be granted.

## CONCLUSION

Defendants have failed to meet their burden in establishing the jurisdiction of this Court.

As such removal was improper and the case should be remanded to Suffolk Superior Court

Department of the Trial Court of the Commonwealth of Massachusetts.

DATED:  June 16, 2005

/s/ Daniel D'Angelo
Robert J. Bonsignore, BBO# 547880
Daniel D'Angelo, BBO# 630321
BONSIGNORE & BREWER
23 Forest Street
Medford, MA 02155
Tel:  (781) 391-9400
Fax:  (781) 391-9496

ATTORNEYS FOR PLAINTIFFS

# EXHIBIT 1

**PLAINTIFFS' REPLY MEMORANDUM
OF LAW IN SUPPORT OF MOTION TO REMAND**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LANDER AND BERKOWITZ, P.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:05CV527 RWS |
| | ) | |
| TRANSFIRST HEALTH | ) | |
| SERVICES, INC., et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Remand. It is clear that this Court does not have jurisdiction to hear this case. As a result, the motion to remand will be granted.

Defendants argue that this Court has jurisdiction over this case based on the new Class Action Fairness Act, 28 U.S.C. § 1332(d) (the "Act"). This case was filed in state court on February 17, 2005. The Act was passed by Congress on February 17, 2005. President Bush signed the Act into law on February 18, 2005. Section 9 of the Act states that, "[t]he amendments made by this Act shall apply to any civil action commenced *on or after the date of enactment of this Act*." (Emphasis added.)

Defendants argue that it is Congress that enacts a law, not the President.

Plaintiff responds that enactment is the process of making an act into a law, which can occur when the President signs an act into law or when Congress enacts a law over a presidential veto. Plaintiff is correct.

The issue before me is what is the date of enactment for the Class Action Fairness Act. I find that the date of enactment of the Act is February 18, 2005, the day when it was signed into law by the President. The United States Court of Appeals for the Tenth Circuit reached the same conclusion in <u>Pritchett v. Office Depot, Inc.</u>, 404 F.3d 1232 (10th Cir. 2005) ("The date of enactment of the [Class Action Fairness] Act is February 18, 2005.").[1]

Plaintiff is seeking attorneys' fees to cover the cost of Defendants improper removal. Under 28 U.S.C. § 1447(c), an order remanding a case "may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal." "In making this determination, the key factor is the propriety of the defendant's removal." <u>Lytle v. Lytle</u>, 982 F. Supp. 671, 674 (E.D. Mo. 1997) (citing <u>Excell, Inc. v. Sterling Boiler & Mechanical, Inc.</u>, 106 F.3d 318,

---

[1]Although it is certainly not binding precedent, the parties may recall a popular episode of the television series Schoolhouse Rock" titled *I'm Just a Bill*. In that episode, Bill sang, "I'm just a bill/Yes, I'm only a bill/And if they vote for me on Capitol Hill/Well, then I'm off to the White House/Where I'll wait in a line/With a lot of other bills/For the president to sign/And if he signs me, then I'll be a law/How I hope and pray that he will/*But today I am still just a bill*." (Emphasis added.)

322 (10th Cir. 1997)).  After reviewing the case, it is my determination that an award of attorneys' fees is not warranted.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that this case is **REMANDED** to the Circuit Court for the City of St. Louis, State of Missouri.

**IT IS FURTHER ORDERED** that Plaintiff's request for an award of attorneys' fees is **DENIED**.

Dated this <u>19th</u> Day of May, 2005.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

- 3 -

# EXHIBIT 2

**PLAINTIFFS' REPLY MEMORANDUM
OF LAW IN SUPPORT OF MOTION TO REMAND**

Priority ✓
Send ✓
Enter ✓
Closed ✓
JS-5/JS-6 ✓
JS-2/JS-3 ———
Scan Only ———

ENTERED
CLERK. U.S. DISTRICT COURT

MAR 29 2005

CENTRAL DISTRICT OF CALIFORNIA
BY Bg                DEPUTY

FILED
CLERK. U.S. DISTRICT COURT

MAR 25 2005

CENTRAL DISTRICT OF CALIFORNIA
BY 12H              DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

MONICA HANKINS,                          CV 05-1797 ABC (RZx)

                    Plaintiff

          v.                             ORDER REMANDING CASE TO STATE
                                         COURT

PFIZER, INC., et al.,                    BC327641

                    Defendants.

          On January 24, 2005, Plaintiff filed a complaint in Los Angeles
County Superior Court against Pfizer, Inc., Pharmacia & Upjohn, Inc.
(a/k/a Pharamacia & Upjohn Co.), and McKesson Corp.  Plaintiff's
complaint alleges a single cause of action, namely, state law unfair
competition.  On March 11, 2005, Pfizer, Inc., Pharmacia & Upjohn,
Inc. (a/k/a Pharamacia & Upjohn Co.) (together, "Removing Defendants")
removed the action to this Court on the basis of diversity
jurisdiction.[1]

_____
    [1] Removing Defendants do not assert that the Court has federal
question jurisdiction, as Plaintiff's complaint involves a single
state law claim.



1   Federal courts have jurisdiction under 28 U.S.C. § 1332(a) where

2 an action is between citizens of different states and the amount in

3 controversy exceeds $75,000.  The removal statutes are to be strictly

4 construed; there is an inherent "'strong presumption' against

5 removaljurisdiction."  <u>Gaus v. Miles</u>, 980 F.2d 564, 566 (9th Cir.

6 1992)(quoting <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S.

7 283, 288-89 (1938)).  On February 18, 2005, the Class Action Fairness

8 Act ("CAFA") was passed creating federal diversity jurisdiction where

9 "the matter in controversy exceeds the sum or value of $5,000,000,

10 exclusive of interests and costs, and is a class action in which . .

11 .(A) any member of a class of plaintiffs is a citizen of a State

12 different from any defendant . . . ."  28 U.S.C. § 1332(d)(2).

13   Although Plaintiff initiated this action on January 24, 2005,

14 well <u>before</u> the enactment of CAFA on February 18, 2005, Removing

15 Defendants assert that CAFA governs.  In support of this argument,

16 Removing Defendants cite <u>Hunt v. Transport Indemnity Ins., Co.</u>, 1990

17 U.S. Dist. LEXIS 16555 (D. Haw. July 30, 1990) as authority that the

18 date of commencement of an action is determined by the date an action

19 is removed to federal court.  <u>See</u> Notice of Removal ¶ 2.

20   <u>Hunt</u> involved the 1988 amendment to 28 U.S.C. § 1332, which

21 raised the jurisdictional amount in controversy required for diversity

22 from $10,000 to $50,000.  The <u>Hunt</u> court remanded a state action

23 seeking an amount in controversy more than $10,000, but less than

24 $50,000.  The state action was commenced before, but removed after,

25 the effective date of the jurisdictional increase.  In remanding, the

26 <u>Hunt</u> court construed the date of removal as controlling because of the

27 Ninth Circuit's clear preference for construction of removal statutes

28 against removal.

2

1    <u>Hunt</u> is not controlling authority.  In any event, if this Court

2    were to adopt similar reasoning, this Court would construe CAFA

3    against removal such that the date of filing in state court controls,

4    given the strong presumption against removal.  <u>See</u> <u>Gaus</u>, 980 F.2d at

5    566 (quoting <u>St. Paul Mercury Indem. Co.</u>, 303 U.S. at 288-89).[2]

6        Because the Removing Defendants cannot rely on diversity

7    conferred by CAFA, which was not enacted at the time the state action

8    was filed, Removing Defendants must demonstrate diversity jurisdiction

9    according to 28 U.S.C. § 1332(a).  However, Removing Defendants cannot

10   show that the amount in controversy exceeds $75,000, as Plaintiff

11   specifically alleges that the amount in controversy is less than

12   $75,000.  <u>See</u> Complaint at 12-13.

13       Therefore, on the Court's own motion, on the basis of the lack of

14   either federal question or diversity jurisdiction, the case is

15   REMANDED to state court.[3]

16

17   **SO ORDERED.**

18   DATED:    _March 25, 2005_

19

20                              _Audrey B. Collins_

21                              **AUDREY B. COLLINS**

22                              **UNITED STATES DISTRICT JUDGE**

23       [2]  The Court notes that CAFA specifically provides that the
     citizenship of class members shall be determined as of the date of
24   filing of the complaint.  <u>See</u> 28 U.S.C. 1332(d)(7).

25       [3]  The Notice of Removal contained several procedural defects,
     including the failure of all defendants to join in the removal and
26   Removing Defendants' failure to establish that the case was removed
     thirty (30) days from when the <u>first</u> defendant was served.  However,
27   given that the Court bases its remand on the lack of jurisdiction,
     these procedural defects are moot.

28

                                  3

# EXHIBIT 3

**PLAINTIFFS' REPLY MEMORANDUM
OF LAW IN SUPPORT OF MOTION TO REMAND**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

MARY SMITH, individually and )
on behalf of similarly situated individuals, )
                                    )
                    Plaintiffs,    )
                                    )
vs.                                 )        Case No. 05-cv-0112-MJR
                                    )
PFIZER, INC.,                       )
                                    )
                    Defendant.     )

**MEMORANDUM and ORDER**

**REAGAN, District Judge:**

In the Circuit Court of Madison County, Illinois, Mary Smith filed a putative class action against Pfizer, Inc., manufacturer of a prescription pain relief medication "Bextra." Pfizer timely removed the case on February 18, 2005, invoking this Court's subject matter jurisdiction under the federal diversity statute, **28 U.S.C. § 1332**. Ten days later, Judge Herndon recused, and the case randomly was reassigned to the undersigned District Judge.

Before the Court is Plaintiff Smith's fully-briefed remand motion. For the reasons described below, the Court finds that it lacks subject matter jurisdiction and grants the motion.

Smith's state court complaint, based on an Illinois consumer fraud statute, alleges that Pfizer negligently marketed Bextra, despite the fact Pfizer knew of dangerous side effects and symptoms of the drug.

Of significance is what Smith's complaint does *not* seek. She does not sue for any personal injury she or others may have sustained as a result of ingesting Bextra. Nor does she pray for injunctive relief. Rather, she seeks compensatory damages to cover the costs of medical monitoring and testing which would facilitate early detection of any injuries.

Specifically, the complaint asks for damages "sufficient to cover the costs of periodic medical examinations which are reasonably necessary to detect and enable early treatment of injuries and/or diseases caused by Bextra" (Doc. 2, p. 6). As explained further below, this aspect of the complaint plays a key role in determining the amount in controversy.

28 U.S.C. § 1332 confers original jurisdiction over suits between citizens of different states if (a) complete diversity exists between the parties, and (b) the amount in controversy exceeds $75,000, excluding interest and costs. The party invoking federal jurisdiction bears the burden of demonstrating that all jurisdictional requirements have been satisfied. *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997).

Here, complete diversity exists between the parties. The question is whether Pfizer has shown that the amount in controversy exceeds $75,000, excluding interest and costs.

For a defendant to successfully remove a class action based on diversity, at least one of the named plaintiffs must have a claim that surpasses the $75,000 jurisdictional bar. *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 607 (7th Cir. 1997), *cert. denied*, 522 U.S. 1153 (1998); *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 409 (7th Cir. 2000). If one named plaintiff meets the jurisdictional minimum, the other named plaintiffs and class members can "piggyback" on that plaintiff's claim, via supplemental jurisdiction under 28 U.S.C. § 1367. *Brand Name*, 123 F.3d at 607.

Pfizer's removal notice alleges: "it is Pfizer's good faith belief" that the amount in controversy exceeds $75,000 (Doc. 1, p. 2). Plainly, that allegation does not meet Pfizer's burden of proof as to the amount in controversy. *See, e.g., Chase*, 110 F.3d at 427 (removing defendant must support allegations of diversity jurisdiction with "competent proof"); *America's Best*

-2-

*Inns, Inc. v. Best Inns of Abilene, L.P.*, **980 F.2d 1072, 1074 (7th Cir. 1992)(allegations based**
**upon information and belief are insufficient to support diversity jurisdiction).**

Pfizer does offer proof to support its contention that the amount in controversy
exceeds $75,000. With the removal notice, Pfizer submitted the declaration of Dennis R. Connolly,
who has experience in tort-related medical monitoring programs. Connolly suggests that the
medical monitoring requested by Smith in this case actually will be much more extensive than Smith
anticipates and, despite the fact the class is defined to include only consumers who purchased Bextra
in Illinois, the consumers to be tested – and the doctors doing the testing – would be located
"throughout the country" (Doc. 1, Exh. C, p. 2).

Furthermore, Connolly predicts that the monitoring will require the establishment of
a claims-handling facility. According to Connolly, the cost of "siting" that facility will include
expenditures to rent space, store records, manage operations, install hardware and communication
lines, purchase furnishings, staff the operations center, train the staffers, and compile and analyze
the results of all medical monitoring (*Id.*, p. 3). Relying on the Connolly declaration, Pfizer
maintains that the cost to set up this facility and provide medical monitoring for "hundreds of
thousands" of class members easily exceeds $75,000, justifying the exercise of jurisdiction in this
case.

The Court disagrees. This Circuit does recognize that, in determining the amount in
controversy, the Court may consider the cost to defendant of enforcing the requested relief, as well
as the value to plaintiff of obtaining that relief. *McCarty v. Amoco Pipeline Co.*, **595 F.2d 389, 395**
**(7th Cir. 1989)(adopting "either viewpoint" rule under which the Court may consider the**
**"pecuniary result to either party which the judgment would directly produce").**

-3-

But it is far from clear that the either viewpoint rule applies in a case, such as this, in which the plaintiff requests no injunctive relief and instead seeks only compensatory damages. For instance, in **Uhl v. Thoroughbred Technology and Telecommunications, Inc., 309 F.3d 978, 983-84 (7th Cir. 2002)**, the United States Court of Appeals for the Seventh Circuit sharply distinguished cases in which only money damages were sought (such as Smith's case against Pfizer) from cases in which injunctive relief was sought.

The Court emphasized:

> In a case that seeks only money damages, the amount the defendant will lose is more or less the same. But in a case like this one, for injunctive relief, there may be an asymmetry. The question has thus arisen whether it is proper in determining amount in controversy to look in the alternative to the cost the defendant will incur in complying with the injunction the plaintiff seeks. In this circuit, the answer to the latter question has been yes: it is established that the jurisdictional amount should be assessed looking at either the benefit to the plaintiff or the cost to the defendant of the requested relief – the so-called "either viewpoint" rule. *See, e.g., In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 609 (7th Cir.1997); *McCarty v. Amoco Pipeline Co.*, 595 F.2d 389, 391- 95 (7th Cir.1979). Those cases specifically establish that the cost to a defendant of complying with an injunction sought by the plaintiff may properly be considered in determining the amount in controversy

**Uhl** indicates that the either viewpoint assessment should be used only in cases in which the complaint includes a request for injunctive relief. **See also Gould v. Artisoft, Inc., 1 F.3d 544, 548 n.4 (7th Cir. 1993)(applying either viewpoint rule to case in which the pecuniary harm to the defendant from the injunctive relief requested by the plaintiff exceeded the amount in controversy).** The instant case contains no such request.[1]

---

[1] *See also* this Court's 10-20-2003 Order in *Flynn, et al. v. General Motors Corp., et al.*, Case No. 03-cv-0486-MJR, Doc. 34, p. 4 ("Defendants cite no cases extending the 'either viewpoint' rule to complaints seeking only monetary relief.").

Additionally, even if the either viewpoint rule *does* apply (if the Court accepts Pfizer's argument that Smith's prayer for compensatory damages is really a request for injunctive relief in disguise), the Court is not persuaded that the entire cost envisioned by Pfizer is chargeable to the single named plaintiff (Smith) from whose standpoint the Court evaluates the amount in controversy. As the Seventh Circuit explained in *Brand Name*, 123 F.3d at 609-10:

> Whatever the form of relief sought, each plaintiff's claim must be held separate from each other plaintiff's claim from both the plaintiff's and the defendant's standpoint. The defendant in such a case is deemed to face multiple claims for injunctive relief, each of which must be separately evaluated.[2]

*Accord Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 977-78 (7th Cir. 2000)(Even under the either viewpoint rule, each plaintiff's claim for relief must be separately evaluated. "That means, for Del Vecchio, that the amount in controversy from the defendants' point of view is the amount they risk paying him, not the amount they might have to pay the entire class.").

The Court *does* find appeal in Pfizer's argument as to the effect of Smith's purported disclaimer of damages, but that does not support this Court's exercise of diversity jurisdiction.

Plaintiffs' counsel mistakenly believes that remand is warranted based solely on the allegations of the complaint and an accompanying affidavit of counsel. The complaint states:

> Plaintiff stipulates that she will not seek and will neither demand nor accept on behalf of any Class Member any recovery in excess of $75,000 exclusive of interest and costs.

Doc. 2, p. 2.

---

[2] Nor does this case fit into the narrow exceptions to the anti-aggregation rule recognized in *Snyder v. Harris*, 394 U.S. 332 (1969) and its progeny – the "common fund exception" which covers situations in which there is a single *res* at issue (like an estate), and the recovery is a "unitary whole." *See Del Vecchio*, 230 F.3d at 977-78.

-5-

Simultaneously filed in state court with the complaint is an affidavit of Plaintiffs' counsel that "the total damages sought by the Plaintiff in this cause of action exceeds Fifty Thousand Dollars ($50,000), but is less than Seventy-Five Thousand Dollars ($75,000) per Plaintiff or class member [sic]."

This "stipulation" in Smith's complaint does not prevent removal. Allegations that a plaintiff seeks no more than $75,000 or will not accept damages over $75,000 do not, standing alone, preclude removal. Such allegations properly are *considered* by the Court (and have been considered by this Court in prior cases) but are not determinative of the amount in controversy.

In *American Bankers Life Assur. Co. of Florida v. Evans*, 319 F.3d 907, 908 (7th Cir. 2000), the Seventh Circuit (a) affirmed the determination by Judge William D. Stiehl of this Court that subject matter jurisdiction did not lie and (b) found insufficient an allegation which stated that the damages were "in no event to exceed $75,000."

> The district court properly ignored this detail – **it was neither a limit on recovery,** *see* 735 ILCS 5/2-604; *BEMI, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 552 (7th Cir.2002) ... **nor a demand for $75,000,** *see De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir.1995)--and looked instead to the claim's actual value, *see In re Brand Name Prescription Drugs Antitrust Litigation*, 248 F.3d 668, 671 (7th Cir.2001),

*American Bankers*, **319 F.3d at 908 (emphasis added).**

So, the language of the complaint, by itself, does not defeat removal here. Next, the Court examines to the affidavit filed with Plaintiffs' state court complaint in compliance with **ILLINOIS SUPREME COURT RULE 222 ("Any civil action seeking money damages shall have attached to the initial pleading the party's affidavit that the total of money damages sought does or does not exceed $50,000.").**

-6-

The law of this Circuit clearly holds: "Litigants who want to prevent removal must file a binding stipulation or affidavit with their complaints." *Chase*, 110 F.3d at 430, *citing In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992). *See also* CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE, Jurisdiction 3d § 3725 at 87 (a plaintiff's waiver of over $75,000 "must be truly binding on the plaintiff in state court before it will prevent removal"). The question is whether attorney Armstrong's Rule 222 affidavit (filed with Smith's state court complaint) is *binding* as to Smith's damages.

No Seventh Circuit case located by the undersigned Judge or cited by counsel squarely delineates what constitutes a legally binding stipulation/affidavit under *Shell Oil*. A number of federal district courts have held that, to prevent removal, a pre-removal affidavit or stipulation must be signed by the plaintiff, not just plaintiff's counsel. *See, e.g., Asbury-Castro v. GlaxoSmithKline, Inc.*, 352 F. Supp. 2d 729, 733 (N.D. W.Va. 2005)("to be operative, a disclaimer must be 'a formal, truly binding, pre-removal stipulation signed by counsel and his client explicitly limiting recovery'"); *Virden v. Altria Group, Inc.*, 304 F. Supp. 2d 832, 847 (N.D. W.Va. 2004) ("Therefore, absent a binding stipulation signed by Virden that he will neither seek nor accept damages in excess of $75,000, the Court must independently assess whether the defendants have proven by a preponderance of the evidence that Virden's complaint seeks damages in excess of $75,000."); *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 485-86 (S.D. W.Va. 2001)("The better rule requires a formal, truly binding, pre-removal stipulation signed by counsel and his client explicitly limiting recovery.").

Other courts have interpreted an attorney's stipulation as binding on the plaintiff (even when not signed by the plaintiff), *if* the plaintiff confirmed in writing the attorney's authority

to bind the plaintiff. *See Dozier v. Kentucky Finance Co., Inc.,* 319 F. Supp. 2d 716, 719 (S.D. Miss. 2003)(complaint demand for less than $75,000 "coupled with the stipulation of plaintiff's counsel," whose authority to stipulate on behalf of plaintiff has been confirmed by plaintiff himself, established that amount in controversy did not exceed $75,000). *See also Dora v. Citifinancial, Inc.,* 2003 WL 22243996, *4 (N.D. Miss. 2003)(removal thwarted where plaintiffs affirmed that they were legally bound by stipulation which stated "Neither the individual Plaintiffs nor their lawyers will accept an amount that exceeds the federal jurisdictional minimum ...; Neither the individual Plaintiffs nor their lawyers will amend the complaint after one year to plead an amount in controversy in excess of the $74,900, per Plaintiff, nor will they authorize anyone on their behalf or their future heirs and assigns, to make such an amendment").

In the case at bar, the Court already has found the "stipulation" in the complaint that Plaintiff Smith will not seek or accept over $75,000 insufficient to block removal. (For one thing, Plaintiff could amend her complaint at any time and delete that language.) The separate affidavit tendered by lawyer Armstrong was not signed by Smith. Nor did Smith, in any pre-removal document, affirm that stipulation as binding her. The Court is not convinced that the affidavit is "binding" under *Shell Oil,* so as to effectively block removal. Thus, the undersigned Judge must look "instead to the claim's actual value." *American Bankers,* 319 F.3d at 908.

Smith seeks compensatory damages to cover the cost of periodic doctor visits – and presumably tests – to detect any injury or disease caused by ingesting Bextra (Doc. 2, p. 6). She seeks no injunctive relief or punitive damages. She does not ask for a comprehensive system of court-supervised medical monitoring.

-8-

Although the estimate of the amount in controversy contained in the complaint is not *dispositive* of the amount in controversy, the Court may consider it. Indeed, accepted wisdom provides " when deciding whether a claim meets the minimum amount in controversy, the plaintiff's evaluation of the stakes must be respected." *Barbers*, **132 F.3d at 1205.** The Court cannot conceive how (and Pfizer has not demonstrated that) Smith's claim surpasses the $75,000 jurisdictional bar.

Nor does the Court find persuasive Pfizer's argument that subject matter jurisdiction lies here under the recently-enacted amendments to the federal jurisdictional statutes known as the "Class Action Fairness Act of 2005." **Pub. L. 109-2, Feb. 18, 2005, 119 Stat. 14.**

**28 U.S.C. § 1332(d)(2)(A)** now confers original subject matter jurisdiction on federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and is a class action in which any member of a class of plaintiffs is a citizen of a state different from any defendant. The statute explicitly permits aggregation of claims in class actions to reach the $5,000,000 hurdle. *See* **28 U.S.C. § 1332(d)(6)("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.").** Pfizer argues that the aggregated claims in the instant case easily exceed $5,000,000 (Doc. 11, p. 9).

The Court, however, concludes that the amendments in question do not apply, because this case was not "commenced on or after the date of enactment" (February 18, 2005). Plaintiff commenced this case by filing her complaint in Illinois state court on December 28, 2004.

The Court rejects Pfizer's argument that "commenced" means the date the case reached federal court (*i.e.*, the date a case was removed) rather than the date the complaint was filed.

Both a plain reading of the statute and the legislative history of the bill indicate that the jurisdictional amendments were never intended to apply retroactively. *See* **P.L. 102-9 ("The amendments made by this Act ... shall apply to any civil action commenced on or after the date of enactment of this Act.")**; **151 Cong. Rec. H741 (Feb. 17, 2005(remarks of Rep. Udall)("Unlike earlier versions, S. 5 would not have a retroactive effect, so it would not affect pending cases.")**. *See also* **151 Cong. Rec. H753 (Feb. 17, 2005)(remarks of Rep. Goodlatte); 151 Cong. Rec. S1080 (Feb. 8, 2005)(remarks of Sen. Dodd); 151 Cong. Rec. S1087 (Feb. 8, 2005)(remarks of Sen. Kennedy).**

Pfizer has not met its burden of establishing that the amount in controversy exceeds $75,000, exclusive of interest and costs. Jurisdiction does not lie under the federal diversity statute. Because this Court lacks subject matter jurisdiction, it **GRANTS** Smith's February 24, 2005 motion (Doc. 4) and **REMANDS** this case to the Circuit Court of Madison County, Illinois.

Smith did not request an award of costs and expenses of removal in her remand motion or supporting brief, and the Court **DECLINES** to award such costs under **28 U.S.C. § 1447(c).**

**IT IS SO ORDERED.**

**DATED this __24th__ day of March, 2005.**

**s/Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**

-10-

# EXHIBIT 4

**PLAINTIFFS' REPLY MEMORANDUM
OF LAW IN SUPPORT OF MOTION TO REMAND**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

RICKY LOTT, GERALD SUMNER,            )
SANDY BECKER & MIKE BALDWIN,          )
individually and on behalf of all other )
similarly situated individuals,         )
                                        )
                    Plaintiffs,         )
                                        )
vs.                                     )     Case No. 05-cv-0230-MJR
                                        )
PFIZER, INC.,                           )
                                        )
                    Defendant.          )

## MEMORANDUM and ORDER

**REAGAN, District Judge:**

On February 17, 2005, four Illinois citizens who live in the St. Clair/Madison County area (Ricky Lott, Gerald Sumner, Sandy Becker, and Mike Baldwin) filed a putative class action suit against Pfizer, Inc., in the Circuit Court of Madison County, Illinois.

Plaintiffs allege that Pfizer, a Delaware corporation with its principal place of business in New York, actively concealed information regarding the risks and dangerous side effects of two medications – Celebrex and Bextra. Celebrex and Bextra are the brand names of two non-steroidal anti-inflammatory drugs manufactured by Pfizer and used to treat musculoskeletal problems.

More specifically, Plaintiffs allege that Pfizer (via misrepresentations and concealment) was able to charge a higher price for Celebrex and Bextra than the drugs' true fair market value, had the health hazards been known by the purchasers. *See* Complaint, Doc. 2, p. 8. Plaintiffs allege that Pfizer thereby violated the Illinois Consumer Fraud and Deceptive Business Practices Act, **815 ILCS § 505/2**, and similar consumer protection statutes in other states.

Served on March 4, 2005, Pfizer removed the action to this Court on April 1, 2005, invoking subject matter jurisdiction under **28 U.S.C. § 1332**. Pfizer maintains that diversity jurisdiction lies both under § 1332 *and* under recently-enacted amendments to § 1332, resulting from passage of the Class Action Fairness Act of 2005, **Pub. L. 109-2, Feb. 18, 2005, 119 Stat. 14.**

**28 U.S.C. § 1332** confers subject matter jurisdiction over suits between citizens of different states if (a) complete diversity exists between the parties, and (b) the amount in controversy exceeds $75,000, excluding interest and costs. The party invoking federal jurisdiction – here, Pfizer – bears the burden of demonstrating that all jurisdictional requirements have been satisfied. *Chase v. Shop 'N Save Warehouse Foods, Inc.,* **110 F.3d 424, 427 (7th Cir. 1997).**

In this case, complete diversity exists, because "the citizenship requirement for purposes of diversity jurisdiction in a class action hinges entirely on the citizenship of the named plaintiffs," each of whom (as an Illinois citizen) is diverse from Pfizer (a citizen of Delaware and New York). *See Tropp v. Western-Southern Life Ins. Co.,* **381 F.3d 591, 595 (7th Cir. 2004),** *citing Payton v. County of Kane,* **308 F.3d 673, 681 (7th Cir. 2002).** The question is whether Pfizer has shown that the amount in controversy exceeds $75,000, excluding interest and costs.

For a defendant to successfully remove a class action based on diversity, one of the named plaintiffs must have a claim that surpasses the $75,000 jurisdictional bar. *In re Brand Name Prescription Drugs Antitrust Litigation,* **123 F.3d 599, 607 (7th Cir. 1997),** *cert. denied,* **522 U.S. 1153 (1998);** *Garbie v. DaimlerChrysler Corp.,* **211 F.3d 407, 409 (7th Cir. 2000).** If one named plaintiff meets the jurisdictional minimum, the other named plaintiffs and class members can "piggyback" on that plaintiff's claim, via supplemental jurisdiction under **28 U.S.C. § 1367.** *Brand Name,* **123 F.3d at 607.**

-2-

Here, Plaintiffs seek to recover damages "in an amount equal to the difference between the price charged for the drugs and the fair market value which the drugs would have had" but for Pfizer's misrepresentations and omissions. Doc. 2, p. 10. In their prayer for relief contained in the state court complaint, Plaintiffs request (*Id.*, p. 11):

> that this action be certified as a class action, that the acts and practices of the Defendant be adjudged in violation of the New Jersey Consumer Fraud Act, and that the Court award them compensatory damages, treble damages, attorneys' fees, their costs of suit, and pre- and post-judgment interest.

Pfizer contends that the amount in controversy suffices, because "Plaintiffs are seeking a 'common fund' on behalf of all class members that exceeds $75,000, exclusive of interest and costs." Removal Notice, Doc. 1, p. 2. The Court, below, solicits briefs on this issue.

Alternatively, Pfizer relies on recent legislation, the Class Action Fairness Act (or "Act"), which amended the federal diversity statute. **28 U.S.C. § 1332(d)(2)(A)** now confers original subject matter jurisdiction on federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and is a class action in which any member of a class of plaintiffs is a citizen of a state different from any defendant. Moreover, the statute explicitly permits aggregation in class actions to reach the $5,000,000 hurdle. *See* **28 U.S.C. § 1332(d)(6)("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.").**

Pfizer argues that the requisite minimal diversity exists, and "the amount in controversy, after aggregating the claims of the proposed class members, exceeds $5 million, exclusive of interest and costs." Doc. 2, p. 2.

The Court rejects Pfizer's argument based on the provisions of the Class Action Fairness Act. Those provisions apply only to civil actions commenced on or after the date the Act was enacted. Plaintiffs commenced this civil action by filing their complaint in Madison County Circuit Court on February 17, 2005. The Class Action Fairness Act was not "enacted" until the following day – February 18, 2005.

As it did in another case recently removed by Pfizer, this Court rejects Pfizer's argument that "commenced" means the date the case reached federal court (*i.e.*, the date a case was removed) rather than the date the complaint was filed. *See* 3/24/05 Order (Doc. 12) in *Smith, et al. v. Pfizer*, Case No. 05-cv-0112-MJR.

Both a plain reading of the statute and the legislative history of the bill indicate that the jurisdictional amendments were never intended to apply retroactively. *See* **P.L. 102-9 ("The amendments made by this Act ... shall apply to any civil action commenced on or after the date of enactment of this Act."); 151 Cong. Rec. H741 (Feb. 17, 2005(remarks of Rep. Udall)("Unlike earlier versions, S. 5 would not have a retroactive effect, so it would not affect pending cases.").** *See also* **151 Cong. Rec. H753 (Feb. 17, 2005)(remarks of Rep. Goodlatte); 151 Cong. Rec. S1080 (Feb. 8, 2005)(remarks of Sen. Dodd); 151 Cong. Rec. S1087 (Feb. 8, 2005)(remarks of Sen. Kennedy).**

Having determined that jurisdiction does <u>not</u> lie under the Class Action Fairness Act, the Court returns to whether jurisdiction lies under the original (pre-Class Action Fairness Act) provisions of § 1332. The Court has found the parties diverse. The potential obstacle is the amount in controversy. After permitting counsel to brief whether one of the named plaintiffs has a claim that surpasses the $75,000 jurisdictional bar, the Court will assess the propriety of Pfizer's removal.

-4-

The Court instructs counsel to carefully review the undersigned Judge's 3/24/05 Order in *Smith v. Pfizer*, Case No. 05-cv-0112-MJR, with particular attention to the discussion of damage disclaimers and binding stipulations, before drafting their briefs regarding the amount in controversy herein.

The Court **DIRECTS** Plaintiffs' counsel to file a brief, no longer than 10 pages, addressing whether the amount in controversy suffices under **28 U.S.C. § 1332** (ignoring the recent amendments which this Court has declared inapplicable here).   Plaintiffs' brief – captioned "Jurisdictional Memorandum" – must be filed on or before April 28, 2005.[1]

The Court **DIRECTS** Pfizer's counsel to file a brief in the nature of a reply (Pfizer already has presented its jurisdictional arguments in the removal notice) no longer than 5 pages. Pfizer's brief – also captioned "Jurisdictional Memorandum" – must be filed by May 5, 2005.

**IT IS SO ORDERED.**

**DATED this 7th day of April, 2005.**

s/ Michael J. Reagan
**MICHAEL J. REAGAN**
**United States District Judge**

---

[1]     This due-date does not toll or modify any otherwise applicable deadline for remand motions under **28 U.S.C. § 1447(c)**.