# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE NEURONTIN MARKETING AND SALES PRACTICES LITIGATION ) | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: ) | Master File No. 04-10981 |
| LAURA ALLEN, ADMINISTRATIX OF THE ESTATE OF THE LATE DANIEL ALLEN, TIMOTHY BRIDGES, and ALFRED MORABITO, individually and on behalf of themselves and all others similarly situated, ) | Judge Patti B. Saris  Civil Action No. 05-10797 |

IN RE NEURONTIN MARKETING AND )
SALES PRACTICES LITIGATION )
)
THIS DOCUMENT RELATES TO: )
)
LAURA ALLEN, ADMINISTRATIX )
OF THE ESTATE OF THE LATE )
DANIEL ALLEN, TIMOTHY BRIDGES, )
and ALFRED MORABITO, individually )
and on behalf of themselves and all others )
similarly situated, )
)
          Plaintiffs, )
)
v. )
)
PFIZER, INC. and PARKE-DAVIS, )
a division of Warner-Lambert Company )
)
          Defendants. )

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Civil Action No. 05-10797

## PLAINTIFFS' NOTICE OF ADDITIONAL RELEVANT AUTHORITY IN SUPPORT OF MOTION TO REMAND

Plaintiffs Laura Allen, Administratrix of the Estate of the Late Daniel Allen, Timothy

Bridges and Alfred Morabito ("Plaintiffs") submit this Notice to bring to the Court's attention

four recent decisions by District Courts, including one in Massachusetts, and one decision by the

Seventh Circuit all remanding cases removed on grounds identical to the grounds for Defendants'

removal of this action and rejecting the arguments raised by Defendants here in support of federal

jurisdiction. In each of the cases submitted with this Notice, the Court determined that the action

was "commenced" when it was initially filed in state court, and not when it was removed to

federal court. The cases submitted herewith are:

1. *Natale v. Pfizer, Inc.*, 2005 WL 1793451 (D. Mass. July 28, 2005) (Young, J) (copy submitted herewith as Exhibit 1).

2. *Sneddon v. Hotwire, Inc.*, 2005 WL 1593593 (N.D. Cal. June 29, 2005) (copy submitted herewith as Exhibit 2);

3. *Knudsen v. Liberty Mutual Insurance Company*, 411 F.3d 805 (7th Cir. June 7, 2005) (copy submitted herewith as Exhibit 3)

4. *Bush v. Cheaptickets, Inc.*, 2005 WL 1706908 (C.D. Cal. May 9, 2005) (copy submitted herewith as Exhibit 4); and

5. *In re Expedia Hotel Taxes and Fees Litigation*, 2005 WL 1706920 (W.D. Wash. April 15, 2005) (copy submitted herewith as Exhibit 5).

The cases submitted herewith, together with the decisions previously submitted by Plaintiffs, result in eleven known decisions in which courts have endorsed the arguments urged by Plaintiffs as to when a case is commenced for the purposes of CAFA.

Respectfully submitted,

DATED: August 12, 2005

*/s/ Daniel D'Angelo*
Robert J. Bonsignore, BBO# 547880
Daniel D'Angelo, BBO# 630321
BONSIGNORE & BREWER
23 Forest Street
Medford, MA 02155
Tel: (781) 391-9400
Fax: (781) 391-9496

ATTORNEYS FOR PLAINTIFFS

2

# EXHIBIT 1

Westlaw.

2005 WL 1793451                                                    Page 1

--- F.Supp.2d ---
(Cite as: 2005 WL 1793451 (D.Mass.))

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Massachusetts.
Jerry NATALE, On Behalf of Himself and All
Others Similarly Situated,
Plaintiff,
v.
PFIZER INC. Defendant,
Sherry KWAAK, On Behalf of Herself and All
Others Similarly Situated,
Plaintiff,
v.
PFIZER INC. Defendant,
**No. CIV.A.05-10590-WGY,
CIV.A.05-10591-WGY.**

July 28, 2005.

**Background:** Consumers brought state-court class actions against pharmaceutical company, asserting state-law claims for fraud, unjust enrichment and violation of consumer protection statute in connection with over-the-counter product. Company removed actions pursuant to Class Action Fairness Act. Consumers moved to remand.

**Holdings:** The District Court, C.J., held that:
(1) action was "commenced," for purposes of Act's applicability provision, when it was filed in state court, not when it was removed;
(2) value of class members' claims could not be aggregated for purposes of reaching minimum diversity jurisdictional amount;
(3) attorney fee award was not warranted; and
(4) controlling question of law would be certified to Court of Appeals concerning interpretation of Act's applicability provision.
Question certified.

**[1] Removal of Cases** ☞107(7)
334k107(7) Most Cited Cases
Under Class Action Fairness Act, party opposing removal has burden to prove that remand is appropriate. 28 U.S.C.A. §§1332, 1453.

**[2] Removal of Cases** ☞2
334k2 Most Cited Cases
Term "commenced" in provision of Class Action Fairness Act making Act applicable to any civil action commenced on or after Act's effective date referred to date that action was first filed in state court, not date that it was removed to federal court, regardless of timeliness of removal. 28 U.S.C.A. §§1332, 1453; Fed.R.Civ.P. 3.

**[3] Removal of Cases** ☞74
334k74 Most Cited Cases
In consumers' state-court class action against pharmaceutical company, alleging unjust enrichment from misrepresentations as to over-the-counter product, and seeking disgorgement of "amount by which [company] has been unjustly enriched," value of class members' claims could not be aggregated for purposes of reaching minimum diversity jurisdictional amount so as to permit removal; class members had engaged in separate purchases, each was entitled to sue separately, and each could only recover to extent of his loss, and thus members lacked common and undivided interest required for aggregation. 28 U.S.C.A. §§ 1332, 1441.

**[4] Removal of Cases** ☞107(11)
334k107(11) Most Cited Cases
Award of attorney fees and costs to class action plaintiffs was not warranted, following federal district court's rejection of defendant's argument that Class Action Fairness Act permitted removal of action, even though identical argument had been rejected in federal courts several times before; defendant's position was fairly supportable and Act was new. 28 U.S.C.A. §§1332, 1447(c), 1453.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ---
**(Cite as: 2005 WL 1793451 (D.Mass.))**

**[5] Removal of Cases 💬107(9)**
334k107(9) Most Cited Cases
In state-court class action filed before Class Action Fairness Act's effective date but removed to federal district court pursuant to Act, controlling question of law would be certified to Court of Appeals as to district court's determination that Act's applicability to cases "commenced" after Act's effective date referred to date of filing in state court rather than date of removal; there was substantial ground for difference of opinion, and immediate appeal could materially advanced ultimate termination of litigation. 28 U.S.C.A. §§1292(b), 1332, 1453.
William M. Cowan, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC, Boston, for Pfizer, Inc., Defendant.

Richard A. DeSevo, Kaye Scholer LLP, New York, NY, for Pfizer, Inc., Defendant.

Dora L. Kripapuri, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC, Boston, for Pfizer, Inc. Defendant.

Kenneth D. Quat, Concord, for Sherry Kwaak, Plaintiff.

Thomas A. Smart, Kaye, Scholer LLP, New York, NY, for Pfizer, Inc ., Defendant.

MEMORANDUM AND CERTIFICATION

YOUNG, C.J.

*1 Jerry Natale, on behalf of himself and all others similarly situated ("Natale"), and Sherry Kwaak, on behalf of herself and all others similarly situated ("Kwaak"), challenge the removal of this case from state court and whether this Court, pursuant to the Class Action Fairness Act of 2005, Pub.L. No. 109-2 (2005) (the "Act") (amending 28 U.S.C. §§ 1332, 1453), properly has jurisdiction over these matters. The motions to remand of Natale, Civ. Action No. 05-10590, and Kwaak, Civil Action No. 05-10591, will be treated identically here for discussion purposes. [FN1]

Section 9 of the Act provides that the Act applies to any case "*commenced* on or after [February 18,

2005,] the date of enactment," of the new federal class action law. Pub.L. No. 109-2 (emphasis added). The controlling issue to be decided by this Court is: under section 9 of the Class Action Fairness Act of 2005, is a civil action "commenced" on the date a class action complaint is filed by a plaintiff in the state court or on the date a case is removed by a defendant to the federal court? This Court answers this question as did the United States Courts of Appeals for the Seventh and Tenth Circuits and holds that an action is commenced as of the *date of filing in the state court.*

I. Relevant Facts and Procedural History

A. Natale v. Pfizer

On February 14, 2005, Natale commenced this action by filing his state court class action complaint in the Massachusetts Superior Court sitting in and for the County of Middlesex ("Middlesex Superior Court"). Mem. in Supp. of Mot. to Remand [Civ. A. No. 05-10590 Doc. No. 10] at 3 ("Natale Mem."). Natale sought "certification of a statewide class consisting of all Massachusetts consumers who purchased Listerine ® Antiseptic Mouthrinse [ ] between February 11, 2002 and the present." *Id.* The advertising statement that was the subject of the class action suit was: "Listerine as effective as Floss-- Clinical studies prove it." *Id* . Natale argues that this statement "knowingly contained materially false and misleading misrepresentations, statements and omissions" and seeks to receive damages under a theory of common law fraud. *Id.*

On March 25, 2005, Pfizer filed, pursuant to the Act, a notice of removal with the United States District Court removing the civil action from the Middlesex Superior Court. *Id.* at 4. Pfizer asserts that federal diversity jurisdiction exists under the new Act and argues that, under section 9 of the Act, a case is commenced in federal court upon a timely removal to federal court rather than on the date of filing with the state court.

B. Kwaak v. Pfizer

Kwaak filed her state class action complaint against

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ---
(Cite as: 2005 WL 1793451 (D.Mass.))

Pfizer in the Middlesex Superior Court on January 13, 2005, and a first amended complaint on March 2, 2005. Mem. of Law in Supp. of Pl.'s Mot. to Remand [Civ. A. No. 05-10591 Doc. No. 11] at 3 ("Kwaak Mem."). Like Natale, Kwaak seeks "certification of a statewide class consisting of all Massachusetts consumers who purchased Listerine ® Antiseptic Mouthrinse [ ] from June 1, 2004 through the present." *Id.* The Kwaak case focuses on the same allegedly misleading misrepresentation--"Listerine ® as effective as Floss--Clinical studies prove it"--as does Natale's claim. *Id.* Kwaak seeks damages for herself and the class under the theory of unjust enrichment and under the Massachusetts consumer protection act. *Id.;* Mass. Gen. Laws ch. 93A, § 2.

*2 On March 25, 2005, Pfizer filed a notice of removal with the district court again arguing that federal diversity jurisdiction exists pursuant to the removal provisions of the Act because "commence" means removal to the federal court. Kwaak Mem. at 4. In Kwaak's matter, Pfizer argues in the alternative that federal diversity jurisdiction exists because Kwaak's "request for relief in the form of disgorgement among all class members is a 'common and undivided interest' in excess of $75,000, exclusive of interest and costs." *Id.*

The parties presented oral argument on June 13, 2005 as to whether this Court has jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005. This Court took the matter under advisement properly to consider and interpret the Act as applied to these matters. Tr. of Mot. Hr'g of June 13, 2005 at 13.

II. Class Action Fairness Act of 2005

A. General Overview of the Act

The Class Action Fairness Act of 2005 was passed by Congress and signed into law by President George W. Bush on February 18, 2005. [FN2] Pub.L. 109-2 (2005). Its enactment was heralded as a product of bipartisan efforts. [FN3] Yet, the Act was the subject of much controversy and debate. [FN4] *See* 151 Cong. Rec. H643-01, H643 (daily ed. Feb. 16, 2005) (statement of Rep. Gingrey)

(noting that "[e]ven with such bipartisan support ... there are differences of opinion on how to reform our class action system."); Rick Knight, *The Class Action Fairness Act of 2005: A Perspective,* 52 Fed. Law. 46 (June 2005) ("[D]espite the roiling public brouhaha surrounding this and other--so-called national litigation--reform, the jury is likely to be out on [the Act] ... for years to come.").

The Act is expected by some to be "problematic." Georgene M. Vairo, *Class Action Fairness,* Nat'l L.J., June 27, 2005 at 12. It was enacted to "address some of the most egregious problems in class action practice." The Class Action Fairness Act of 2005, Dates of Consideration and Passage, S. Rep. 109-14 , 2005 U.S.C.C.A.N. 3, 6 (describing the legislation as a "modest, balanced step" and not a "panacea" in reform). Among other things, the Act amends 28 U.S.C. § 1332, in pertinent part, to establish original subject matter jurisdiction in federal courts [FN5] over class actions, and amends 28 U.S.C. § 1453, to allow removal jurisdiction from state courts [FN6] in those cases in which (1) the class consists of at least 100 proposed members; (2) the matter in controversy is greater than $5,000,000 after aggregating the claims of the proposed class members, exclusive of interest and costs, Pub.L. 109-2, § 4, and (3) in pertinent part, [FN7] "*any* member of a class of plaintiffs is a citizen of a different state from *any* defendant." S. Rep. 109-14, 2005 U.S.C.C.A.N. at 28, 34 (emphasis added); *see also* Andrée Sophia Blumstein, *A New Road to Resolution--The Class Action Fairness Act of 2005,* 41 Tenn. Bar J. 16 (Apr.2005) (noting that, after the passage of the Act, "bare-bones minimal diversity" is sufficient for purposes of federal diversity jurisdiction (internal quotation marks omitted)).

*3 As described by Senator Arlen Specter on behalf of the Senate Judiciary Committee:

One of the primary historical reasons for diversity jurisdiction "is the *reassurance of fairness and competence* that a federal court can supply to an out-of-state defendant facing suit in state court." Because interstate class actions typically involve more people, more money, and more interstate commerce ramifications than any other type of lawsuit, the Committee firmly believes that such cases properly belong in federal court. To that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1793451                                                                      Page 4

--- F.Supp.2d ---
**(Cite as: 2005 WL 1793451 (D.Mass.))**

end, this bill (a) *amends section 1332* to allow
federal courts to hear more interstate class actions
*on a diversity jurisdiction basis,* and (b) *modifies
the federal removal statutes* to ensure that
qualifying interstate class actions initially brought
in state courts may be heard by federal courts if
any of the defendants so desire.
S. Rep. 109-14, 2005 U.S.C.C.A.N. at 6, 7 (stating
the judiciary committee's view that the diversity and
removal statutes as they currently apply to class
action lawsuits "have facilitated a parade of abuses,
and are thwarting the underlying purpose of the
constitutional requirement of diversity jurisdiction")
(internal footnotes omitted, emphasis added).

The primary mechanisms for expanding
jurisdiction both (1) replaces the strict complete
diversity requirement with a lenient rule now
granting jurisdiction if *any* diversity exists between
plaintiffs and defendants and (2) allows for the
claims to be aggregated when calculating and
satisfying the $75,000 amount in controversy
required. Still, not all class actions may be heard in
federal court subsequent to the Act. Some class
actions may yet be heard in state court--those class
actions in which all parties reside in the same state,
those with fewer than 100 plaintiffs or with less
than $5 million at issue, those where a state
government is the main defendant, those against a
company in its home state if two-thirds or more of
the plaintiffs are residents of such state, and those
involving local matters. Pub.L. 109-2, § 4
(amending section 28 U.S.C.A. § 1332); S. Rep.
109-14, 2005 U.S.C.C.A.N. at 27, 29, 48
(describing the Act as "narrowly tailored" to "leave[
] most legitimately local disputes in state court,
while ensuring that large, interstate class actions
like those typically brought in [state] magnet courts
can be heard in federal court"). [FN8]

The dispute here arises out of the section 9
language that "amendments made by this Act shall
apply to any civil action *commenced on or after* the
date of enactment." Pub.L. 109-2, § 9 (emphasis
added). So the question arises: do federal courts
have jurisdiction over cases commenced in state
court prior to the passage of the Act but removed
subsequent to its enactment? [FN9]

B. Removal Provisions of the Act

The Act modifies the standard rules for removal
under the Federal Rules of Civil Procedure. Pub.L.
109-2, § 4 (amending 28 U.S.C. § 1453, the
removal statute pertaining to class action lawsuits);
S. Rep. 109-14, 2005 U.S.C.C.A.N. at 10
(explaining that both removal jurisdiction and
diversity jurisdiction seek to guarantee out-of-state
defendants a neutral federal arena in which to be
heard).

*4 [1] Under the Act, the burden of removal is on
the party opposing removal to prove that remand is
appropriate. *Berry v. American Express Publ'g
Corp., et al.,* SA CV 05-302 AHS at 6-7
(S.D.Cal.2005) (unpublished opinion), *available at*
http://www.cacd.uscourts.gov/cacd
/recentpubop.nsf/0/7855b691877dc
bc388257022004e7c0f/$F
ILE/SACV05-302AHS.pdf (hereinafter "*Berry* ")
(explaining that, with respect to the Act, "the
Committee Report expresses a clear intention to
place the burden of removal on the party *opposing*
removal to demonstrate that an interstate class
action should be remanded to state court."
(emphasis added)); [FN10] *id.* at 8 (citing S. Rep.
109-14, 2005 U .S.C.C.A.N. at 41 ("It is the
Committee's intention with regard to each of these
exceptions that the party opposing federal
jurisdiction shall have the burden of demonstrating
the applicability of an exemption."); *id.* ("[T]he
named plaintiff(s) should bear the burden of
demonstrating that a case should be remanded to
state court.")).

The amendments and expansion of federal diversity
jurisdiction, including the expansion of removal of
state actions, are "[t]he most publicized changes
associated with the ... Act." Joseph M. Callow Jr.,
*The Class Action Fairness Act of 2005: Overview
and Analysis,* 52 Fed. Law. 26 (May 2005).
Pursuant to the Act, any individual defendant may,
without the approval of the other defendants,
remove a class action more than one year after the
filing of the case in state court, including a
defendant who is a citizen of the state in which such
action was filed. 28 U.S.C. §§ 1441(b), 1446(b),
1453(b); *see* Guy V. Amoresano and Michael R.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ---
(Cite as: 2005 WL 1793451 (D.Mass.))

McDonald, *Class Litigants Face Tougher Forum--Will Closer Scrutiny By Federal Judges Curb Costs?* 180 N.J.L.J. 282, Apr. 25, 2005 (noting that the Act removes these "impediment[s]" to federal jurisdiction). Furthermore, parties are now granted an appeal of a decision on a motion to remand a case removed to federal court; the decision to allow such appeal is left to the discretion of the courts of appeals. *Compare* 28 U.S.C. § 1453(c) (allowing a discretionary appeal to the court of appeals of a district court decision to remand a matter to state court and requiring that a court of appeals exercising such discretion and hearing such appeal must, generally, render an opinion in sixty days or less), *with* 28 U.S.C. § 1447(d) (establishing that, with the exception of civil rights cases under 28 U.S.C. § 1443, "[a]n order remanding a case to the State court from which it was removed is not reviewable upon appeal or otherwise.").

C. Discussion

1. Precedent from the Seventh and Tenth Circuits and District Courts Interpreting the "Commence" Language of Section 9 of the Act

a. Tenth Circuit

[2] This Court is persuaded by the Tenth Circuit's reasoned and concise analysis in *Pritchett v. Office Depot, Inc.,* 404 F.3d 1232 (10th Cir.2005), one of the first courts generally to consider this issue and the first circuit court to rule on this specific point. In *Pritchett,* the Tenth Circuit rejected an argument identical to the one Pfizer now makes, and held that timely removal to federal court does *not* constitute commencement for purposes of section 9 of the Act. *Id.* at 1235, 1238. Affirming the decision [FN11] of Judge Marcia S. Krieger of the United States District Court for the District of Colorado, 360 F.Supp.2d 1176 (D.Colo.2005), the Tenth Circuit considered, among other things, the traditional trend of narrowly construing removal statutes and general tenets of statutory construction, as well as the meaning of the word "commenced," the Act's legislative history, and legal precedent. *Pritchett,* 404 F.3d at 1235-1238.

*5 The Tenth Circuit stated initially that its statutory analysis began with the plain language of the statute and was then "governed by traditional rules of statutory construction and rules pertaining to federal jurisdiction." *Id.* at 1235 (looking, initially, at the plain language of the statute). The court highlighted the "general federal rule that a lawsuit is commenced at a discrete moment in time: the *filing* of the *original* complaint *in a court of competent jurisdiction.*" *Id.* (citing Fed.R.Civ.P. 3) (emphasis added). Despite the Congressional intent to expand federal jurisdiction to encompass class action suits, the Tenth Circuit explained that the statute should not be expanded beyond Congressional intent and, to that end, it "is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of [the federal courts'] constitutional role as limited tribunals." *Id.* (citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108-109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941)). It therefore stated that, "if there is ambiguity as to whether the instant statute confers federal jurisdiction over [a] case, [the court] is compelled to adopt a *reasonable, narrow construction.*" *Pritchett,* 404 F.3d at 1235 (deciding that plaintiff's construction was the reasonable one) (emphasis added).

In considering the Act's legislative history, the Tenth Circuit described such history as a helpful "interpretative" tool. *Id.* The original language of the statute, as introduced in the House, provided both for removal of cases " 'commenced' on or after the enactment date *and ...* cases in which a class certification order is entered on or after the enactment date." *Id.* at 1235- 36 (citing H.R. 516, 109th Cong. § 7 (2005)) (emphasis added). The latter portion was later dropped from the Act, thus including only those cases *commenced after* enactment. *Id.* at 1236 ("The Senate version and the final statute provided only for application of the Class Action Fairness Act to civil actions 'commenced' on or after the date of the Act.") (citation omitted)). As the Tenth Circuit specified,

It is thus clear that Congress initially started out with *broader language that could have included a number of then-pending lawsuits in state courts.* By excising the House provision, *Congress*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1793451                                                                                          Page 6

--- F.Supp.2d ---
**(Cite as: 2005 WL 1793451 (D.Mass.))**

*signaled an intent* to *narrow the removal provisions* of the Act to *exclude currently pending suits.*
*Id.* (emphasis added); *see id.* (citing 151 Cong. Rec. S1080 (daily ed. Feb. 8, 2005) (statement of Sen. Dodd) ("[The Act] *does not apply retroactively,* despite those who wanted it to. A case *filed before the date of enactment* will be *unaffected by any provision of this legislation.*") and 151 Cong. Rec. H753 (daily ed. Feb. 17, 2005) (statement of Rep. Goodlatte) ("Since the legislation is *not retroactive,* it would have absolutely no effect on the 75 actions *already filed* against Merck in the wake of the Vioxx withdrawal." (emphasis added)); *accord id.* (noting that while "[o]rdinarily, individual floor statements are entitled to little weight, ... here, where they are *consistent with* and *cast light upon the meaning of* a specific change in the language between an earlier version of the bill and the final Act, the *statements confirm our construction of the Act.*" (emphasis added)).

*6 Finally, the Tenth Circuit fittingly observed that public policy required an interpretation of "commenced" to mean the filing in state court rather than the timely removal to federal court. It stated:
Where the language of a statute is arguably ambiguous, courts also look to public policy considerations to cast further elucidation on Congress' likely intent. Here, *we are mindful of the fact that Defendant's argument,* if accepted, *could have serious consequences for both the federal judiciary and our colleagues on the state bench.* Permitting the Act to apply to currently pending state suits would, in the words of the chairman of the Senate Judiciary Committee, "be *extraordinarily disruptive* of many State court proceedings."
*Id.* at 1237 (internal citations omitted, emphasis added).

Pfizer attempts to discredit *Pritchett* by suggesting that a Tenth Circuit case is not binding on this Court and, further, that the defendants in *Pritchett* had sought removal in an untimely manner, namely after the "30 days after service of complaint" window had passed. This Court, however, receives the *Pritchett* opinion as significant persuasive

authority and, as discussed infra, does not believe that the timeliness of the removal from state court or the proximity in time to the enactment date are germane to this Court's interpretation of the statutory language. Further, in reading *Pritchett,* one discerns that the Tenth Circuit articulated in no uncertain manner its general interpretation of the "commence" language as to *any and all* proceedings filed with the State Court prior to the effective date of the Act.
We are mindful of the fact that Congress' goal in passing this legislation was to increase access to federal courts, and we also recognize that the Senate report instructs us to construe the bill's terms broadly. But these general statements do *not* provide *carte blanche* for federal jurisdiction over a state class action any time the statute is ambiguous. While it is clear the Congress wished to expand federal jurisdiction, *when* that expansion *is made effective is what is at issue* in this case, and that is an issue we approach *cautiously.*
*Id.* at 1237 n. 6 (internal citations omitted, emphasis added).

b. Seventh Circuit

Recently, in *Knudsen v. Liberty Mut. Ins. Co.,,* Judge Frank H. Easterbrook, writing for the court, declared the Seventh Circuit's agreement with the Tenth Circuit's holding *Pritchett.* 411 F.3d 805, 806 (7th Cir.2005) ("[W]e agree with *Pritchett v. Office Depot, Inc.* that [section] 9 of the new Act must be taken seriously." (internal citation omitted)). Judge Easterbrook continued: [FN12]
*Deconstructionist tactics do not permit [section 9's] evasion.* The defendant in *Pritchett* contended that the notice of removal itself commenced a new case (the one in federal court). *Rebuffing that effort to sidestep the legislative decision,* Pritchett concluded that a civil action is "commenced" for purposes of [section] 9 when it is *filed* in state court and *not* when some later step occurs in its prosecution. [FN13]
*7 *Id.* (internal citations omitted, footnote and emphasis added). The Seventh Circuit noted that "[e]quating *filing* with *commencement* is the *norm* in civil practice" and "[a]lthough there are a few exceptions ... none applies here." *Id.* (making clear

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1793451                                                                                    Page 7

--- F.Supp.2d ---
**(Cite as: 2005 WL 1793451 (D.Mass.))**

its view on removal as commencement, by stating that "a new development in a pending suit *no more commences* a new suit *than does its removal* ") (emphasis added) . [FN14]

c. *Pfizer* Line of District Court Cases [FN15]

A number of judges have already rejected Pfizer's previous attempts to urge the application of the Act to class actions in a procedural posture identical to the matter here. In *Hankins v. Pfizer, Inc.,* CV 05-1797 ABC (C.D.Cal. Mar. 25, 2005) (unpublished opinion) (hereinafter "*Hankins* "), Judge Audrey Collins of the United States District Court of the Central District of California rejected Pfizer's attempt to remove the case to federal court under the new Act. Judge Collins first cited the "strong presumption" against removal jurisdiction generally. *Id.* at 3 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288-89, 58 S.Ct. 586, 82 L.Ed. 845 (1938)). She then continued to distinguish, *Hunt v. Transport Indem. Ins. Co.,* No. 90-00041 ACK, 1990 WL 192483 (D.Haw. Jul.30, 1990) (unpublished opinion), a case cited by Pfizer. *Hankins* at 3 ("*Hunt* is not controlling authority. In any event, if this Court were to adopt similar reasoning, this Court would construe [the Act] against removal *such that the date of filing in state court controls,* given the strong presumption against removal." (emphasis added)). This is persuasive; had Congress wished to have broadened the reach of the removal provisions, it could have done so explicitly. [FN16]

In *Smith v. Pfizer, Inc.,* 05-cv-0112-MJR (S.D.Ill. Mar. 24, 2005) (unpublished opinion) (hereinafter "*Smith* "), Judge Michael Reagan, in the first of his two decisions on this issue, indicated that Pfizer's claim in the alterative--that the federal court had subject matter jurisdiction in light of the recent enactment of the Act--lacked merit. *Smith* at 9-10 ("The Court *rejects* Pfizer's argument that 'commenced' means the date the case reached federal court (i.e. the date a case was removed) rather than the date the complaint was filed. Both a *plain reading* of the statute and the *legislative history* of the bill *indicate* that the jurisdictional amendments were *never intended to apply retroactively.* " (emphasis added)). In *Lott v. Pfizer,*

*Inc.,* 05-cv-0230-MJR (S.D.Ill. Apr. 7, 2005) (unpublished opinion) (hereinafter "*Lott* "), Judge Reagan once again rejected Pfizer's attempt to argue removal was proper under the new class action act. Judge Reagan's strict interpretation of the Act is evident: [FN17]

The Court rejects Pfizer's argument based on the provisions of the Class Action Fairness Act. Those provisions apply *only to civil actions commenced on or after the date the Act was enacted.* Plaintiffs commenced this civil action by filing their complaint in [state court] on February 17, 2005. The Class Action Fairness Act was not "enacted" *until the following day--February 18, 2005.*

*\*8 Id.* at 4 (ruling that a difference of as little as *one day* between the date of filing of a complaint and the Act's enactment date was insufficient to confer jurisdiction on federal courts) (emphasis added).

d. Other District Court Cases

In *Bush v. Cheaptickets, Inc.,* CV05-2285 PA at 3 (C.D.Cal. May 9, 2005) (unpublished opinion) (hereinafter "*Cheaptickets* "), Judge Peggy Anderson held that "commence" in every sense of the word means at the time a case "begins," namely, with the filing in state court. As Judge Anderson explained, "[a] lawsuit does not 'begin' on the date it is removed to federal court; *it is already pending by that time.*" *Id.* at 3 (noting that Congress specifically narrowed the scope of the Act to eliminate federal jurisdiction over those cases in which classes were certified after the date of enactment) (emphasis added). In light of the legislative history and the language of the Act, Judge Anderson expressly agreed with the Tenth Circuit in *Pritchett* and held that federal subject matter jurisdiction was lacking.

In *Sneddon v. Hotwire Inc.,* No. C05-0951-53-SI, 2005 WL 1593593, slip op. at \*3 (N.D. Cal. June 29, 2005), decided a few weeks ago, Judge Susan Illston likewise held that "commencement" means the date of filing a case in state court. *Id.* at \*2 (noting that "all courts which have addressed this issue under [the Act] have [so] held"). Judge Illston expounded that "[s]tatutory definitions of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1793451

Page 8

--- F.Supp.2d ---
**(Cite as: 2005 WL 1793451 (D.Mass.))**

'commencement' support this view." *Id.* (noting that this comports with the meaning of the word in the Federal Rules of Civil Procedure as well as legislative history). "Serendipitously," noted Judge Illston, *"logic also supports this view: since an action can only be commenced once, it cannot commence at the time of removal ...."* *Id.* (citing *Cheaptickets* at 3) which noted that a case "is already pending" at the time of removal) (emphasis added).

In *In re Expedia Hotel Taxes and Fees Litig.,* C05-0365C (W.D.Wash. Apr. 15, 2005) (involving the consolidation of cases), Judge John C. Coughenour likewise ruled that one ought defer to state law to define the word "commence," noting that this was consistent with Ninth Circuit precedent. *Id.* at 3 (acknowledging that Washington state law defines "commencement" as the time of filing).

2. Case Law Interpreting Congressional Use of the Word "Commence" in Other Jurisdictional Statutes

All of the cases that have considered the question before this Court have determined that a class action is commenced as of *the date of filing with the state court.* Pfizer urges this Court to consider courts' antecedent interpretations of the word "commence" in other jurisdictional statutes.

Pfizer argues that a "wealth of authority holds that a jurisdictional statute, applicable only to actions 'commenced on or after' the effective date, applies to actions removed to federal court after the effective date, even though the action was filed in state court before the effective date." Pfizer Notice of Removal [Civ. A. No. 05-10590 Doc. No. 1] at 5 (citing, among other cases, *Cedillo v. Valcar Enters.,* 773 F.Supp. 932 (N.D.Tex.1991), *Hunt,* and *Lorraine Motors, Inc. v. Aetna Cas. & Sur. Co.,* 166 F.Supp. 319 (E.D.N.Y.1958)); Pfizer Notice of Additional Supreme Court Authority [Civ. A. No. 05-10590 Doc. No. 17; Civ. A. No. 05-10591 Doc. No. 15] (emphasizing the June 23, 2005, Supreme Court decision in *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* --- U.S. ----, 125 S.Ct. 2611, --- L.Ed.2d ---- (2005) (holding that 28 U.S.C. § 1367, the statute governing supplemental jurisdiction,

broadened the jurisdiction of the federal courts)).

*9 Pfizer urges that the historical precedent establishes "clearly" that "commenced" means removal to federal court. Tr. at 2, 4 (urging repeatedly that "the majority of Courts" have interpreted "commence" to mean removal to federal court). Judge Krieger, in her proemial, pacesetting decision, cogently addressed this "historical interpretation of the word commence in jurisdictional statutes"--the argument now urged by Pfizer. [FN18] *Pritchett,* 360 F.Supp.2d at 1177-1179 (reviewing the conflicting decisions in *Abernathy v. Consolidated Cab Co.,* 169 F.Supp. 831 (D.Kan.1959), *Kieffer v. Travelers Fire Ins. Co.,* 167 F.Supp. 398 (D.Md.1958), and *Lorraine Motors.,* 166 F.Supp. 319, in connection with the 1958 amount in controversy amendments, and the conflicting decisions in *Hunt, Sayers v. Sears, Roebuck and Co.,* 732 F.Supp. 654 (W.D.Va.1990), *Rhinehart v. Cincinnati Inc.,* 716 F.Supp. 7, 8 (E.D.Mich.1989), and *Nolan v. Boeing Co.,* 715 F.Supp. 152 (E.D.La.1989), in connection with the 1988 amount in controversy amendments).

Judge Krieger observed that the case law interpreting the word "commenced" was "ambiguous" at best. *Pritchett,* 360 F.Supp.2d at 1179. She followed the cardinal maxim of statutory interpretation that a court is to refer to the legislative intent should any ambiguity exist. *Id.* (citing *U.S. v. McNab,* 331 F.3d 1228, 1238 (11th Cir.2003) for the salient convention that a court, interpreting an unclear statute, may refer to statutory purpose, committee discussions and reports, accepted and attempted amendments, and statements during debates).

This Court also finds extremely persuasive the fact that the Tenth Circuit in *Pritchett* [FN19] explicitly distinguished *Hunt* and *Lorraine Motors* and rejected any analogy [FN20] between that line of cases and the matter before this Court:
Defendant argues that there are several district court opinions that adopt its broader view of commencement. *Neither of these cases deal directly with the statute in question,* which was passed only several weeks ago. Thus, the cases are relevant only by analogy. *Even then, their*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1793451                                                                    Page 9

--- F.Supp.2d ---
(Cite as: 2005 WL 1793451 (D.Mass.))

*persuasive value is diluted,* as Plaintiff points out, by *the presence of contemporaneous contrary authority* from other federal district courts.

Moreover, the courts' reasoning in *Lorraine Motors* and *Hunt* actually *supports* Plaintiff's interpretation of the term "commenced." Although the courts were interpreting statutory language that is identical to the disputed provision in the instant case, *there is a major difference between a statute that defines additional circumstances in which diversity of citizenship exists (such as the Class Action Fairness Act) and a statute that increases the amount-in-controversy requirement.* The latter attempts to *restrict* federal court jurisdiction, while the former attempts to *expand* it. Both *Hunt* and *Lorraine Motors* rely heavily upon the principal that removal statutes are to be strictly construed, with all doubts resolved against removal. Thus, in those cases, interpreting the term "commenced" as referring to the filing of the removal petition would serve that aim by restricting the number of preexisting state claims that could be removed. In contrast, such an interpretation here would actually permit broader federal court jurisdiction by increasing the number of removable actions. Given this, *we remain convinced that "commenced" in the Act refers to the initial filing, not the removal date.*

**\*10** *Pritchett,* 404 F.3d at 1237-38 (citing *Kieffer,* 167 F.Supp. at 402 and *Rhinehart,* 716 F.Supp. at 8 and explicitly holding that a case is "commenced" on the date of filing with state court) (internal citations and footnotes omitted, emphasis added). As initially foreshadowed during oral argument, Tr. at 12, [FN21] this Court, after careful reflection and analysis, believes the more persuasive argument to be that of Natale and Kwaak, namely that such historical precedent addressed increases in the amount in controversy provisions of diversity jurisdiction rather than the scope of jurisdiction as this Court here considers.

D. Conclusion

As Judge Krieger stated:

    [S]everal additional reasons ... compel the Court's result here. First, the Court finds that such a conclusion gives the most natural reading to the

plain meaning of the term "commenced" .... [T]he most common definition of [the] word "commenced" refers to the beginning of an undertaking. This is the manner in which Fed.R.Civ.P. 3 uses the word, defining that "a civil action is commenced by filing of a complaint with the court." To read the word "commenced" in the context of the Act to refer to the filing of a Notice of Removal would require a strained reading of the word in both the colloquial and legal sense.

    Second, the Court notes that although *Lorraine Motors* may reflect the general trend of authority with regard to the interpretation of the word "commenced" when Congress adjusts the amount in controversy requirement of 28 U.S.C. § 1332, the reasoning of that line of cases is not helpful in this circumstance. A central theme underlying that line of reasoning is that the increase in the jurisdiction threshold represented a Congressional intent to successively *restrict* the scope of federal jurisdiction. Consequently, it was reasonable for these courts to interpret the term "commenced" in such a way as to give effect to that Congressional intent. Here, the general purpose of the Act is to *broaden* federal jurisdiction in class actions. *The rationale giving effect to a Congressional intent to limit federal jurisdiction is thus not applicable.* [FN22]

*Pritchett,* 360 F.Supp.2d at 1180 (emphasis added in part).

This Court fully concurs with Judge Krieger, who summarized correctly "it *offends reason to permit the removal of a case where the current requirements of diversity jurisdiction were not present at the time the case was first filed in state court.*" *Id.* (citing the holding in *Sayers,* 732 F.Supp. at 656) (internal quotations omitted, emphasis added); *see Hankins* at 3 ("Because the [r]emoving Defendants *cannot rely on diversity conferred by [the Act],* which was not enacted at the time the State action was filed, [r]emoving Defendants must demonstrate diversity jurisdiction according to 28 U.S.C. § 1332(a).") (emphasis added). It also agrees that the ramifications of such a statutory interpretation would indeed be immense, and would defeat the purpose of having a "gradual, incremental flow of newly-filed class actions that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1793451

--- F.Supp.2d ---
**(Cite as: 2005 WL 1793451 (D.Mass.))**

Page 10

would result from a purely prospective application of the Act." *Pritchett,* 360 F.Supp.2d at 1180.

**\*11** This Court rules that a case is "commenced" for purposes of the Class Action Fairness Act when it is filed with the state court. This decision is supported by a "natural reading" of the statutory language [FN23] together with the lack of support in the legislative history demonstrating that the Act was to be in any way retroactive to a case already filed in the state court, no matter how close in time such filing was to the enactment of the new law. *See Lott* at 4 (holding that filing a class action in state court one day before the signing of the Act into law was sufficient to preclude the application of the Act)

### III. Kwaak's Motion to Remand on Pfizer's Alternative Grounds

Pfizer argues, in the alternative, that the plaintiffs' claims in the Kwaak matter satisfy the amount in controversy so as to establish diversity jurisdiction. Mem. in Opp'n to Remand to State Court [Civ. No. 05-10591 Doc. No. 12] at 14 ("Pfizer Mem."). Pfizer argues that Kwaak seeks disgorgement in excess of $75,000. *Id.* Though Pfizer argues that the law is "well settled" as to the aggregation of claims for purposes of fulfilling the amount in controversy requirement, Charles Alan Wright and Arthur Miller, among other commentators, indicate that "[t]he rules relating to aggregating multiple claims to satisfy the amount in controversy requirement are in a *very unsatisfactory state.*" 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3704 (3d ed.2005) (emphasis added).

Kwaak argues that diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) is lacking. Kwaak Mem. at 12. She denies that the amount in controversy for purposes of diversity jurisdiction is satisfied here because the class members' individual claims can be aggregated and argues that "[t]he Supreme Court has made crystal-clear that in class actions the claims of individual class members cannot be aggregated for the purpose of satisfying the 'amount in controversy' required for diversity jurisdiction, i.e., the requirement must be met by *each individual member of the plaintiff class.*" *Id.* (citing *Snyder v.*

*Harris,* 394 U.S. 332, 336-337, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), and *Zahn v. International Paper Co.,* 414 U.S. 291, 300-301, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973)) (emphasis added). Kwaak notes that the District of Massachusetts naturally conforms to this position. *Id.* (citing *Ciardi v. F. Hoffman-LaRoche Ltd.,* No. Civ.A. 99-11936-GAO, 2000 WL 159320 at \*2 (D.Mass.2000) (O'Toole, J.) (unpublished opinion), and *Hairston v. Home Loan and Inv. Bank,* 814 F.Supp. 180, 181 & n. 1 (D.Mass.1993) (Tauro, J.)).

Kwaak emphasizes that the exception allowing aggregation of claims applies where "members of a proposed class assert 'a single title or right, in which they have a *common and undivided interest .*" *Id.* at 12-13 (citing *Zahn,* 414 U.S. at 294) (emphasis added). The Eleventh Circuit in *Morrison v. Allstate Indem. Co.,* Kwaak highlights, stated that having a "common and undivided interest" is "rather uncommon, existing only when the defendant owes an obligation to the *group* of plaintiffs *as a group* and not to the individuals severally." 228 F.3d at 1255, 1262 (11th Cir.2000) (emphasis added). In other words, emphasized the Eleventh Circuit, "[i]f the claims are derived from *rights that [class members] hold in group status,* then the claims are common and undivided. If not, the claims are separate and distinct." *Id.* (quoting *Eagle v. American Tel. and Tel. Co.,* 769 F.2d 541, 546 (9th Cir.1985)) (emphasis added).

**\*12** Kwaak also notes that the creation of a common fund does not automatically render the plaintiffs' interests common. Kwaak Mem. at 13. As the Second Circuit has stated, "[i]t is of course commonplace to collect class action damages wholesale, put the proceeds in a single fund, and distribute the proceeds retail upon a showing of specific entitlement in accordance with the judgment." Kwaak Mem. at 13 (quoting *Gilman v. BHC Sec., Inc.,* 104 F.3d 1418, 1427-1428 (2d Cir.1997) (emphasizing that the creation of such a fund "has nothing necessarily to do with whether the plaintiffs shared a pre-existing (pre-litigation) interest in the subject of the litigation")). As echoed by the Eleventh Circuit, "it is the *nature of the right asserted, not that of the relief requested,* that determines whether the claims of multiple plaintiffs

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1793451

--- F.Supp.2d ---
(Cite as: 2005 WL 1793451 (D.Mass.))

may be aggregated." *Morrison,* 228 F.3d at 1264 (emphasis added).

In light of this case law, Kwaak contends that "[a]ggregation . is therefore inappropriate in disgorgement cases where the claims of the class members arise from their individual transactions with defendant, such that they would be able to assert individual claims for relief." Kwaak Mem. at 13; *Gilman,* 104 F.3d at 1426 (deeming aggregation inappropriate in a securities class action suit because the disgorgement claim was designed to recover "payments received in respect of their *individual* transactions, as accurately as that amount can be calculated" (emphasis added)); *In re Ford Motor Co./Citibank (South Dakota), N.A.,* 264 F.3d 952, 961 (9th Cir.2001) (rejecting aggregation of claims seeking disgorgement of billions of dollars for "ill-gotten benefits" arising out of the cancellation by defendants of a credit card rebate program, and narrowing the issue to "whether the plaintiffs' claims are consistent with a demand for damages based on their *individual transactions* with the defendants." (internal quotation marks, citation, and alteration omitted, emphasis added); *Gattegno v. Sprint Corp.,* 297 F.Supp.2d 372, 378 (D.Mass.2003) (Keeton, J.) (rejecting, in a matter involving a common fund, the approach that the claims of wireless telephone customers alleging they were overcharged and stating "[t]he focus *should not be on the type of relief requested,* but rather on the *nature and value of the right asserted* .... [T]he issue turns *not* on whether the plaintiffs seek a 'common fund,' but on whether plaintiffs bring this case based in *individual* claims or in an *indivisible, common claim.*" (internal citations omitted, emphasis added)); *id.* (noting that the claims were based on individual contracts with the defendant); *Pierson v. Source Perrier, S.A.,* 848 F.Supp. 1186, 1188 (E.D.Pa.1994) (noting, in a case seeking disgorgement for misrepresentations regarding bottled water products, that the determination rested on the "*nature and value of the rights* that [plaintiffs] have asserted" and that disgorgement is simply "a means of obtaining money damages"); *see also Morrison,* 228 F.3d at 1264 (overturning a district court's decision to aggregate claims because, though an unjust enrichment claim resulted "from the

defendants' alleged breach of *individual* insurance policies." (emphasis added)); Kwaak Mem. at 15-16 (collecting additional cases ruling aggregation inappropriate due to the existence of "separate and distinct" claims).

**\*13** [3] Kwaak convincingly argues here that plaintiffs here "were not defrauded *as a group* and *did not overpay as a group." Id.* at 16 (emphasis added). Each member of the class here "engaged in separate, distinct and individual purchases of a consumer product, each was entitled to sue defendant separately, and each can only recover to the extent of his or her loss." *Id.; see also Campbell v. General Motors Corp.,* 19 F.Supp.2d 1260, 1268 (N.D.Ala.1998) (holding that "unjust enrichment remedies do not provide a generalized recovery of a fixed fund for the class. Instead each plaintiff is entitled to defendants' profits which resulted from the wrongdoing to that particular plaintiff.").

It is important to address one of Pfizer's primary arguments, namely that Kwaak seeks disgorgement of *all* profits rather than individual damages. Pfizer Mem. at 18-19. Kwaak successfully refutes these repeated assertions made by Pfizer. Kwaak's First Amended Complaint is explicit:

(1.) "Pfizer has sold millions of dollars in Listerine which it would not have otherwise sold had it made the proper disclosures, and it has been unjustly enriched at the expense of *Plaintiff and the class members.*"

(2.) "*Plaintiff and the class members* have conferred a benefit on Pfizer, that Pfizer has knowledge of this benefit and has *voluntarily accepted and retained the benefit conferred on it.*"

(3.) "Pfizer will be unjustly enriched if it is allowed to retain *such* funds [the "benefit" conferred by class members] and the Class is entitled to disgorgement of the *amount by which Pfizer has been unjustly enriched.*"
Kwaak First Am. Compl. [Civ. A. No. 05-10591 Doc. No. 1 Attach. 1] ¶¶ 3, 71, 73 (emphasis added); Kwaak Reply Mem. [Civ. A. No. 05-10591 Doc. No. 14] at 6-7.

Pfizer relies heavily [FN24] on *Berman v.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ---
**(Cite as: 2005 WL 1793451 (D.Mass.))**

*Narragansett Racing Assoc.,* 414 F.2d 311, 315 (1st Cir.1969) (involving purse winners who, as a group, claimed they were entitled to a certain percentage of the money wagered), where the court held that the interest was "common and undivided" so as to make aggregation proper. Kwaak distinguishes *Berman,* Kwaak Mem. at 15, as did Judge Keeton in *Gattegno,* 297 F.Supp.2d at 378. Judge Keeton correctly noted that *Berman* did not involve individual agreements between the class members and the defendants. *Id.* Rather, *Berman* involved a "purse agreement" to pay annually, in the aggregate, "to the *group* of owners whose horses win purses." 414 F.2d at 313, 315 (noting that "*no contractual rights* [were] created between the *defendants* and the *individual* pursewinners" (emphasis added)).

Pfizer also relies on *Durant v. Servicemaster Co.,* 147 F.Supp.2d 744, 749- 51 (E.D.Mich.2001), *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft,* 48 F.Supp.2d 37, 41 (D.D.C.1999), *In re Microsoft Corp. Antitrust Litig.,* 127 F.Supp.2d 702, 720-721 (D.Md.2001), and *Gavriles v. Verizon Wireless,* 194 F.Supp.2d 674 (E.D.Mich.2002), for the proposition that where disgorgement is involved, removal and federal jurisdiction are proper. In *Gavriles,* argues Pfizer, Judge Gerald E. Rosen explained in dicta why the disgorgement claim in its view was a claim of a "common and undivided interest" in the defendant's profits:

*14 Disgorgement is an equitable remedy to force defendant to give up the *amount equal to the defendant's unjust enrichment* .... A claim for disgorgement, if successful, results in a *pool of money* available for the plaintiffs. The *proceeds* from disgorgement are *not directly related to each plaintiff's actual damages* and would be distributed to plaintiffs who remained a party to the action.

*Id.* at 681. Pfizer argues that, as in *Durant,* "all putative class members have a 'common and undivided interest' " in Pfizer's profits because "one [class member's] failure to collect his share would result in a larger share for each remaining [class member]." Pfizer Mem. at 17 (relying on *Aetna,* 48 F.Supp.2d at 41, for support of its argument that failure of one plaintiff to collect would not result in a decrease in the amount disgorged) (citation

omitted, alteration in original). Pfizer argues further that in *Gilman,* the complaint specifically sought disgorgement based on "each individual customer's order" rather than a disgorgement of all profits. *Id.* at 18 (internal quotation marks and citation omitted).

The case here is, however, identical to *Gilman.* It is evident to the Court based on Kwaak's First Amended Complaint and filings with this Court that Kwaak seeks disgorgement of the *benefit conferred* upon Pfizer *by Kwaak and the class members, not* the disgorgement of *all profits.* Kwaak successfully distinguishes, therefore, *Durant, Aetna,* and *Microsoft,* and substantially weakens Pfizer's argument. Kwaak also properly distinguishes Pfizer's citation to cases where plaintiffs sought disgorgement of a "specific, identifiable fund," Kwaak Mem. at 17-18; *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft,* 54 F.Supp.2d 1042, 1049 (D.Kan.1999) (stating that "[t]he fact that plaintiffs seek disgorgement of the entire fund is not dispositive of the issue. The proper focus should ... [be] upon the nature and the value of the rights that they have asserted." (internal quotation marks and citation omitted)).

Likewise persuasive to this Court is a statement from Judge Joseph E. Irenas of the District of New Jersey in *Bishop v. General Motors Corp.,* in which he writes that the "paradigm cases" allowing aggregation "are those which involve a *single individual res,* such as an estate, a piece of property (the classic example) or an insurance policy. *These are matters that cannot be adjudicated without implicating the rights of everyone involved with the res.*" 925 F.Supp. 294, 298 (D.N.J.1996) (emphasis added).

This Court holds that federal jurisdiction is, here, likewise improper (1) in light of the persuasiveness of the decisions in, among other cases, *Gattegno, Ford Motor,* and *Pierson,* (2) given that the First Circuit decision in *Berman* is distinguishable as there a "group" was seeking disgorgement, and (3) given that the cases Pfizer largely relies upon are distinguishable as Kwaak does not seek disgorgement of all profits, but rather only the benefit conferred upon Pfizer by Kwaak and the class members

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ---
(Cite as: 2005 WL 1793451 (D.Mass.))

IV. Attorney's Fees and Costs

**\*15** [4] Natale and Kwaak argue that given Pfizer's "improper" removal, this Court should grant them costs and attorneys' fees under 28 U.S.C. § 1447(c), which allows this Court to order Pfizer to pay "just costs and any actual expenses, including attorney fees incurred as a result of the removal." Natale Mem. at 13 (noting accurately that such award is a "matter for the exercise of the sound discretion of the court" (citations omitted)); Kwaak at 19-20 (asserting that it "should not be forced to foot the bill for Pfizer's baseless and irresponsible removal of this case."). Natale notes that "the purpose of such an award is not to punish defendants, but rather to reimburse plaintiffs for unnecessary litigation costs." Natale Mem. at 13. Natale additionally argues as "Pfizer has itself tried this same removal argument in three separate cases and had it rejected each time .... Plaintiff should not be forced to foot the bill for Pfizer's irresponsible removal of this case." *Id.* at 14.

This gives this court reason to pause. On the one hand, Pfizer should have the latitude to assert, and seek to determine, its legal rights in various jurisdictions and seek interpretation of this new Act, particularly given its recent enactment. On the other hand, Pfizer's argument has been repeatedly, this being at least the fourth time, rejected by the federal courts. [FN25] Though this Court disagrees with Pfizer's characterization and assertion that the grant of attorneys' fees and costs of this Court would go against the "clear majority" of decisions and is not the "sounder" view, Pfizer Mem. at 19- 20, Pfizer persuades this Court that its legal argument and position are "fairly supportable" or, at a minimum, at least worthy of judicial consideration [FN26] in an area where the interpretation of a new law may be said to be "less than clear." *Alexander v. A.P. Green Indus. Inc.,* 44 F.Supp.2d 368, 374 (D.Me.1999). An award of fees and costs, accordingly, would be improper.

V. Certification to the First Circuit Court of Appeals [FN27]

28 U.S.C. § 1292(b) provides, in pertinent part, that:

[w]hen a district judge, in making in a civil action an order not otherwise appealable ... shall be of the opinion that such order involves a *controlling question of law* as to which there is *substantial ground for difference of opinion* and that an immediate appeal from the order may *materially advance the ultimate termination of the litigation,* he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order.

28 U.S.C. § 1292(b) (emphasis added). The First Circuit has explained that

[o]nly rare cases will qualify for the statutory anodyne; indeed, it is apodictic in this circuit that interlocutory certification of this sort 'should be used sparingly and only in exceptional circumstances, and where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority.

**\*16** *In re San Juan Dupont Plaza Hotel Fire Litig.,* 859 F.2d 1007, 1010 n. 1 (1st Cir.1988) (quoting *McGillicuddy v. Clements,* 746 F.2d 76, 76 n. 1 (1st Cir.1984)).

[5] This Court had recent occasion to certify another important and controlling question of law to the First Circuit Court of Appeals in *Miara v. First Allmerica Fin. Life Ins. Co.,*--F.Supp.2d--, 2005 WL 1463299 (D. Mass. Jun 16, 2005). [FN28] While one of the defendants in *Miara* requested this Court consider certifying the question of law under section 1292(b), here the court considers certification *motu proprio.* This Court once again believes this matter "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from [this] order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

As in *Miara,* 2005 WL 1463290 at \*39, "[t]he matter here is 'sufficiently ... important,' *San Juan Dupont,* 859 F.2d at 1010 n. 1, 'constitutes an open question[,] and ... the litigation would benefit from prompt resolution of th[e] question.' *Camacho v.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1793451                                                    Page 14

--- F.Supp.2d ---
**(Cite as: 2005 WL 1793451 (D.Mass.))**

*Puerto Rico Ports Auth.,* 369 F.3d 570, 573 (1st Cir.2004)." The Court here interprets not only a new law, but " 'an important and unsettled question of controlling law." ' *In re Bank of New England Corp.,* 218 B.R. 643, 650 (B.A.P. 1st Cir.1998) (quoting *United States v. Sorren,* 605 F.2d 1211, 1213 (1st Cir.1979)); *Miara,* 2005 WL 1463299 at *39. Further, case law to date demonstrates marked litigant confusion and disagreement in this area, thus providing good reason for the First Circuit expeditiously to address this issue. This litigation, as well as class action lawsuits filed within the state and federal courts within this Circuit, would certainly "benefit from prompt resolution" of this question. [FN29]

While this Court holds that "commenced" means the filing of a case in the state court, this Court's interpretation of the Act has persuasive value only, and a binding interpretation from the First Circuit now will clarify this issue and avoid confusion in this circuit in the application of this new and potentially far-reaching law. While timely resolution and remand is always ideal, this Court is of opinion that the issue here warrants a section 1292(b) interlocutory appeal and that certification to the United States Court of Appeals for the First Circuit is appropriate.

Therefore, pursuant to 28 U.S.C. § 1292(b), Pfizer shall have ten (10) days from the date of the entry of this Memorandum and Certification to appeal to the Court of Appeals for the First Circuit. The controlling question of law worthy of First Circuit review and certified to the First Circuit is: under section 9 of the Class Action Fairness Act of 2005, is a civil action "commenced" on the date a class action complaint is filed by a plaintiff in the state court or on the date a case is removed by a defendant to the federal court?

*17 Pfizer is ordered to provide notice of such appeal, if any, to this Court. The First Circuit may then exercise its statutory discretion to allow an immediate, interlocutory appeal with respect to the controlling question of law. 28 U.S.C. §§ 1292(b) and (c)(1). If Pfizer opts not to appeal in the statutory ten-day period, or if the First Circuit, in its rightful discretion, declines to entertain this

certification, this Court will promptly remand Natale's and Kwaak's actions to the Massachusetts Superior Court sitting in and for the County of Suffolk for appropriate resolution of such claims on the merits.

VI. Conclusion

A. Natale's and Kwaak's Motions to Remand Based on the Class Action Fairness Act

This Court rules that a case is "commenced" for purposes of the Class Action Fairness Act when it is filed with the state court. As such, this Court would allow both Natale's and Kwaak's Motions to Remand. Given that this matter, however, involves a controlling issue of law, as explained supra this Court certifies the following question to the United States Court of Appeals for the First Circuit: Is a civil action "commenced" under Section 9 of the Class Action Fairness Act of 2005 on the date a class action complaint is filed by a plaintiff in the state court or on the date a case is removed by a defendant to the federal court? Should Pfizer opt not to pursue an appeal, or should the First Circuit decline to exercise its discretion, this Court will promptly remand the matters to the Middlesex Superior Court.

B. Kwaak's Motion to Remand Based on Class Action Fairness Act and Alternative Grounds

This Court rules that diversity jurisdiction on Pfizer's alternative grounds, namely disgorgement and aggregation of claims to satisfy the amount in controversy, lacks merit and that federal jurisdiction is improper.

C. Attorneys' Fees and Costs

This Court denies Natale's and Kwaak's request for attorneys' fees and costs.

SO CERTIFIED AND ORDERED.

> FN1. Kwaak challenges Pfizer's alternate ground for removal in that case; this alternative argument will be discussed separately at the end of this memorandum.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1793451                                                                      Page 15

--- F.Supp.2d ---
**(Cite as: 2005 WL 1793451 (D.Mass.))**

FN2. The Act passed in the Senate on February 10, 2005 by a vote of 72-26, and passed in the House on February 17, 2005 by a vote of 279-149. William Branigin, *Congress Changes Class Action Rules,* Wash. Post, Feb. 17, 2005, *available at* http://www.washingtonpost.c om/wp-dyn/articles/A32674- 2005Feb17.html; Senate Roll Call Votes 109th Cong., 1st Sess., Vote Summary On the Passage of the Bill S.5 (Feb. 10, 2005), *available at* http://www senate.gov/legislative/LIS/r oll_call_lists/roll_call_vote        _cfm.cfm? congress=109 & session=1 & vote=00009. The state of litigation in this country is said by some to have called for reform for years as it has "seemingly run amok." Thomas F. Burke, *Lawyers, Lawsuits, and Legal Rights,* at 2 (Univ. of Cal. Press 2002) (writing that while some of the proliferating class action lawsuits in this country might read as "amusing vignettes," "a serious theme underlies these stories [as t]hey are] parables about a fundamental breakdown in American society"). *See also* 151 Cong. Rec. H643-01, H648 (daily ed. Feb. 16, 2005) (statement of Rep. Gingrey) (noting that legislation similar to the Act, namely the Class Action Jurisdiction Act of 1998, the Interstate Class Action Jurisdiction Act of 1999, and the Class Action Fairness Acts of 2001 and 2003, were the subject of hearings, markups, debates, and successful votes in the 105th-108th Congresses); 151 Cong. Rec. H723-01, H726 (daily ed. Feb. 17, 2005) (statement of Rep. Sensenbrenner) ("Today marks the culmination of nearly a decade of legislative efforts to end systematic abuse of our Nation's class action system. We stand on the cusp of sending landmark legislation on civil-justice reform to the President that has been approved by increasing majorities each time it has been considered by the House in each of the last three Congresses ...."); *id.* (noting that the Act's "core provisions are similar to those passed ... in

the last three Congresses"); The Class Action Fairness Act of 2005, Dates of Consideration and Passage, S. Rep. 109-14 , 2005 U.S.C .C.A.N. 3, 3-4 (reviewing the history of attempted tort reform legislation between 1999 and 2005).

FN3. This sentiment was echoed by President Bush when signing the bill into law. *See* President Signs Class-Action Fairness Act of 2005, Remarks of President George W. Bush (Feb. 18, 2005), *available at* http:// www. whitehouse.gov/news/releases/2 005/02/print/20050218-11.html ("Remarks of President Bush") ("The bill I'm about to sign is a model of effective, bipartisan legislation. By working together over several years, we have agreed on a practical way to begin restoring common sense and balance to America's legal system.... Congress showed what is possible when we set aside partisan differences and focus on ... [doing] what's right for ... the country."); 151 Cong. Rec. H643-01 (daily ed. Feb. 16, 2005) (statement of Rep. Gingrey) ("As demonstrated by the [Senate], there is bipartisan support for the measure.... In fact, the [Senate] passed this measure ... with strong bipartisan support.").

FN4. The Act has been described in a positive light as "President Bush's first major legislative victory [of his second presidential] term." Terry Carter, *Class Action Climax--Legislation Will Create Problems, Opportunities for Plaintiffs Bar,* 4 No.7 A.B.A. J. E-Rep. 1 (Feb. 18, 2005); Remarks of President Bush ("The Class-Action Fairness Act of 2005 marks a critical step toward ending the lawsuit culture in our country. The bill will ease the needless burden of litigation on every American worker, business, and family."). *But see Class Action Fairness Act of 2005, available at* www.dkosopedi a.com/index.php/Class_A ction_Fairness_Act_of_    2005(CA    FA)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1793451                                                                                                    Page 16

--- F.Supp.2d ---
(Cite as: 2005 WL 1793451 (D.Mass.))

(opining that the "primarily Republican-sponsored bill" runs counter to what 'conservatives' usually claim they seek--it increases the size and control of the federal government at the expense of state's rights.").

During congressional debates, the Act symbolized a battle between the common man and corporate behemoths. *See* 151 Cong. Rec. H723-01, H726 (daily ed. Feb. 17, 2001) (statement of Rep. Conyers) (noting that *vis a vis* the Act, the Republican "majority begins their assault on our Nation's civil justice system .... [and] attempt[s] to preempt State class actions."); 151 Cong. Rec. H643-01, H644 (daily ed. Feb. 16, 2005) (statement of Rep. McGovern) ("[I]t looks as though the Republican leadership has finally gamed the system to the point where it appears that they will succeed in severely limiting the rights of many of the most vulnerable citizens in this country."); *id.* ("[T]his bill ... will limit fairness, it will limit justice, and it will ultimately hurt everyday Americans .... It closes the courthouse door in the face of people who need and deserve help."); *id.* (quoting a letter from fourteen state attorneys general of the opinion that the Act "unduly limits the right of individuals to seek redress for corporate wrongdoing in their state courts" and "strongly recommend[ing] that th[e] legislation not be enacted in its present form."); *id.* at H645 (emphasizing that the "AARP, AFL-CIO, Consumer Federation of America, Consumers Union, Leadership Conference on Civil Rights, NAACP and Public Citizen all oppose" the Act as passed); *id.* (statement of Rep. Markey) (arguing the Act is "all about .... protecting the country club members from the responsibility for the harm which they potentially inflict from their corporate perspectives on ordinary citizens within our society ."); Mike France, *How to Fix the Tort System,* Bus. Week Online (Mar. 14, 2005), *available at* http:// www.businessweek.com/magazine

/content/05_11/b3924601.htm. (quoting Frederick M. Baron, the former President of the Association of Trial Lawyers of America ("ATLA") who asserts that "[c]orporate America wants immunity from misdeeds through tort reform").

*But see id.* (stating that the "[p]roblem is, much of the discussion has been distorted by hyperbole from both sides"); 151 Cong. Rec. H723-01, H727 (daily ed. Feb. 17, 2001) (statement of Rep. Boucher) (emphasizing that the Act's changes are procedural in nature and that the legislation makes no changes to the substantive recovery rights of American citizens); Remarks of President Bush (stating, while referring to the coupon settlement and plain explanation provisions of the Act, that "the bill provides new safeguards to ensure that plaintiffs and class-action lawsuits are treated fairly"); *The Class Action Fairness Act of 2005,* Mondaq Bus. Briefing (May 4, 2005), *available at* 2005 WLNR 6993121 (highlighting the "consumer class action bill of rights designed to eliminate certain of the more flagrant perceived abuses of the class action device by the plaintiffs' bar" (internal quotations omitted)).

Representatives focused a portion of the debates on the failure to comport with normal procedures. *See, e.g.,* 151 Cong. Rec. H723-01, H736 (daily ed. Feb. 17, 2005) (statement of Rep. Watt) (asserting that this session of the Congress has seemed to "dispense with regular order, deny committee consideration, and to leave Members with 1 to 2 minutes to hurriedly voice [their] concerns" with respect to the Act).

FN5. In opposition to the Act, some have touted the scarcity of federal court resources. *See* Lorraine Woellert, *Commentary: A Phony Cure-- Shifting Class Actions to Federal Courts is No Reform,* Bus. Week Online (Feb. 7, 2005), *available at*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1793451                                                    Page 17

--- F.Supp.2d ---
**(Cite as: 2005 WL 1793451 (D.Mass.))**

http://www.businessweek.com/ magazine/content/05_0 6/b3919054_mz011.htm (writing that, "[a]t a time when federal courts are already overburdened, [the Act] will make case backlogs even longer" and referring to the existing caution within the federal judiciary and the U.S. Judicial Conference); *id.* (noting that the Chief Justice of the United States William H. Rehnquist has himself warned of the existing budget constraints in a January 1, 2005 annual report); Letter from Leonidas Ralph Mecham, Secretary, Judicial Conference of the United States to the Hon. Orrin G. Hatch, Chair, Senate Committee on the Judiciary (Mar. 26, 2004), *available at* http:// www.atla.org/homepage/fjc.pdf (ATLA website) (stating ATLA's position that "[i]f Congress determines that certain class actions should be brought within the original and removal jurisdiction of the federal courts on the basis of minimal diversity of citizenship and an aggregation of claims, Congress should be encouraged to include sufficient limitations and threshold requirements so that federal courts are not unduly burdened and states' jurisdiction over in-state class actions is left undisturbed"); *id.* (explaining that the judicial conference maintained with respect to this Act the same concerns as it had with the earlier, 1999 class action litigation reform, specifically that "the provisions would add substantially to the workload of the federal courts and are inconsistent with principles of federalism."); Congressional Budget Office Cost Estimate--Class Action Fairness Act of 2005 (Feb. 7, 2005) (as reported by the Senate Committee on the Judiciary on February 3, 2005) (estimating the costs of implementing the Act, which would include hearing "a few hundred additional cases ... each year," "would cost the federal district courts about $7 million a year, subject to appropriation of the necessary funds" and "could also increase

the need for additional district judges.").
*But see* S. Rep. 109-14, 2005 U.S.C.C.A.N. at 13 (noting that the influx of class action lawsuits filed in state courts are "stretching the resources of the state court systems"); *id.* at 15 (highlighting the limited resources of the state courts); *id.* at 48 (noting that state courts are "more burdened" than the federal courts and "have comparatively crushing caseloads"); *id.* at 55 (noting a state court judge is likely to have triple the number of cases of a federal judge at a given time).

FN6. *See* Woellert (reporting the view of corporate attorneys that state courts, particularly those in rural areas, are "judicial hellholes" and are "hostile jurisdictions [that] have stung" many American companies; *see also* S. Rep. 109-14, 2005 U.S.C.C.A.N. at 14-15 (stating that part of the reason for the increase of state court filed class action lawsuits is that certain magnet jurisdictions, such as Illinois' Madison, Cook, and St. Clair counties, are outcome-predictable and plaintiff-friendly, and further asserting that certain state court judges "are lax about following the strict requirements of Rule 23" and "lack the necessary resources to supervise proposed class settlement properly," and that this influx of class actions has "overwhelmed their dockets.")
The Act was described during debates as a remedy for overzealous plaintiffs' attorneys and an "attempt to put an end to the type of gaming engaged in by plaintiffs' lawyers to keep cases in State court." 151 Cong. Rec. H723-01, H726, H729 (daily ed. Feb. 17, 2005) (statement of Rep. Sensenbrenner) ("Class actions were originally created to efficiently address a large number of similar claims by people suffering small harms. Today they are too often used to efficiently transfer the large fees to a small number of trial lawyers, with little benefit to the plaintiffs."); Thomas A. Dickerson and Kenneth A. Manning, *Summary of*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ---
(Cite as: 2005 WL 1793451 (D.Mass.))

*Article 9 Class Actions in 2004,* N.Y.L.J., Apr. 24, 2005 (describing the enactment of the legislation "as a federal response to abuses, real and perceived, in the prosecution of class actions, primarily in certain 'pro-plaintiff' state courts"). *See generally Class Action Fairness Act--A Panel of Experts Discusses Whether the New Law Governing Class Actions is a Needed Fix or a Bad Idea,* Nat'l L.J., May 16, 2005, at 18 (describing the various reasons for the passage of the Act, with some panelists ardent in support of the Act with another prepared to have "a full-blown tantrum" in staunch opposition to the Act due, in part, to federalism concerns).

The passage of the Act marked a defeat for ATLA, with its substantial lobbying budget and a particularly marked interest in preventing tinkering with class action procedures. Burke at 46-47 (noting that ATLA has "one of the wealthiest political action committees in the nation" and that, given its low membership and "poor public image," it "chose an insider approach to influencing Congress."). Burke describes plaintiffs' attorneys' self-image as "'equalizers' who roam through American society looking for injustice, taking the side of victimized individuals against large, uncaring institutions." *Id.* at 48.

FN7. Additional provisions are included in the Act to provide for diversity in matters involving parties that are foreign states or citizens.

FN8. While these suits against Pfizer tend to have exactly the "national" flavor considered a purpose of federalizing certain class actions under the Act, S. Rep. 109-14, 2005 U.S.C.C.A.N. at 27, the obstacle to its application here--and an exceptionally decisive obstacle at that--is the effective date of the statute.

FN9. To be certain, this is not the only question that will arise as a result of the

passage of the Act. "A similarly intriguing question is how to deal with an action filed before February 18, 2005, but dismissed without prejudice, so that a wholly new, amended complaint is filed after February 18, 2005? As they say, stay tuned to see how courts will handle these transitional questions." Robert E. Bartkus, *Back to the Future? Federal Class Action Reforms Leave Many Questions Unanswered,* 180 N.J.L.J. 284, Apr. 25, 2005.

FN10. This opinion is not signed or dated by the court.

FN11. Three days after the Tenth Circuit affirmed the decision, Office Depot settled the matter for $3,300,000 dollars. *See* Employment Practices Solutions News Briefs: Office Depot Loses CAFA Claim, Settles Class Action for $3.3 Million, *available at* http:// www.epexperts.com/mo dules.php?op=modload & name=News & file=ar ticle & sid=1772 (last visited July 26, 2005). This perhaps lends a measure of credibility to the argument that corporations are more likely to settle class action suits heard in the state courts. *See* S. Rep. 109-14, 2005 U.S.C.C.A.N. at 21 (describing the "judicial blackmail" function of state-filed class action suits in pressuring defendants to settle claims, however unfounded or lacking in merit); Remarks of President Bush (extolling the virtues of the Act prior to signing it into law and noting in particular that prior to the promulgation of the Act, "trial lawyers were able to drag defendants from all over the country into sympathetic local courts, even if those businesses ha[d] done nothing wrong. [As such, m]any businesses decided it was cheaper to settle the lawsuits, rather than risk a massive jury award.").

FN12. Judge Easterbrook observed that a determination of whether the Act applied was proper as "a federal court always has

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ---
**(Cite as: 2005 WL 1793451 (D.Mass.))**

jurisdiction to determine its own jurisdiction." *Knudsen*, 411 F.3d. at 808 (quoting *United States v. Ruiz*, 536 U.S. 622, 628, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002)).

FN13. Judge Easterbrook did go a step further in the decision, indicating a slight broadening of the Seventh Circuit's appearingly narrow interpretation of this language. He wrote for the court: [A] new claim for relief (a new "cause of action" in state practice), the addition of a new defendant, or any other step sufficiently distinct that courts would treat it as *independent for limitations purposes,* could well commence a new piece of litigation for federal purposes even if it bears an old docket number for state purposes. Removal practice recognizes this point: an amendment to the pleadings that adds a claim under federal law (where only state claims had been framed before), or adds a new defendant, opens a new window of removal. We imagine, though we need not hold, that a similar approach will apply under the ... Act, perhaps modeled on Fed.R.Civ.P. 15(c), which specifies when a claim relates back to the original complaint (and hence is treated as part of the original suit) and when it is *sufficiently independent* of the original contentions that it must be treated as fresh litigation.
*Knudsen,* 411 F.3d. at 807 (internal citations omitted, emphasis added). This language in *Knudsen* is being interpreted by attorneys as "strongly suggest[ing] that there is a category of cases which, although filed in state court before February 18, 2005, may nonetheless become removable under [the Act] based on post-February 18th pleading amendments that add new defendants or new causes of action." *See, e.g.,* O'Melveny & Myers LLP, Electronic Class Action Alert, Seventh Circuit Suggests that Amended Complaints May Trigger Removal Under Class Action Fairness Act

(June 9, 2005), *available at* h ttp://www.omm.com/webdata/con tent/publications/client_alert _class_action_2005_06_09.htm. That issue is different from, and beyond the scope of, the matter here.

FN14. The Seventh Circuit stated that the case against Liberty Mutual Life Insurance "has been ongoing" and ruled that "Liberty Mutual Insurance Company cannot remove five years after this suit was commenced just because a nonparty corporate sibling has been mentioned in plaintiffs' latest papers."). *Id.* at 806, 807-08 (explaining the distinguishable outcome should Liberty Mutual Fire Insurance Company have been newly-added as Liberty Mutual Fire Insurance Company "could enjoy a right to remove under the 2005 Act, for suit *against it* would have been commenced *after* February 18, 2005." (second emphasis added)).

FN15. Other district courts have addressed the Act generally, but not specifically the "commence" language or the removal provisions. *See Fears v. Wilhelmina Model Agency, Inc.,* No. 02-Civ. 4911(HB), 2005 WL 1041134, slip op. at *4 (S.D.N.Y. May 5, 2005) (unpublished opinion) (noting that, in the context of attorneys fees, the Act "evidenced congressional desire to reform the tort system and limit exorbitant attorneys' fees" and that Congress "unequivocal[ly] ... expanded federal diversity jurisdiction."); *Berry* at 3-4 (discussing the burdens of proof as to jurisdictional questions and removal pre- and post-Act).

FN16. As noted *supra,* Congress actually *narrowed* the scope of the Act by specifically removing from the scope of the Act's removal jurisdiction provisions certain cases covered in the original House version--cases in which class certification was ordered on or after the enactment date.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN17. This also lends support to the little weight this Court gives to Pfizer's argument that its timely removal of the case within "30 days of service" of the complaint should play a role in this Court's statutory interpretation. Considering the language of the Act together with the legislative history, this Court agrees with the district and circuit decisions in *Pritchett,* and the circuit decision in *Knudsen,* and believes there does not exist any indication for an exception for cases here, namely those filed with the state court prior to the enactment date but removed by a defendant within thirty days after such filing, as urged by Pfizer at oral argument. Tr. at 6-7.

FN18. Pfizer placed great emphasis on this reasoning during oral argument before this Court. Tr. at 1-4, 13-14.

FN19. While, as Pfizer's counsel ably argued, *Pritchett* may be factually distinguishable from this case, Tr. at 6-7, this Court must interpret the law impartially and objectively. The facts of individual cases do not affect the manner or outcome of its statutory interpretation.

FN20. The Tenth Circuit found no merit in the argument that Pfizer makes here, as case law exists directly opposing the argument that in jurisdictional cases a case is "commenced" upon removal to federal court. *Pritchett,* 404 F.3d at 1237 (citing *Kieffer,* 167 F.Supp. at 402 as "holding that action is 'commenced' on initial filing date in state court and declining to impose higher amount-in-controversy requirement imposed prior to removal" and *Rhinehart,* 716 F.Supp. at 8 as holding the same).

FN21. In its recent opinion in *Miara v. First Allmerica Fin. Life Ins. Co.,* --F.Supp.2d.--, 2005 WL 1463299 (D.Mass. June 16, 2005) at *39 n. 57, this Court emphasized the invaluable contribution and incalculable assistance

provided to it in its administration of justice by United States Court Reporters, and in particular the court reporter assigned to this session.

FN22. Judge Krieger also noted the "apparent paradox" created by interpreting the Act to broaden federal jurisdiction yet rejecting *Lorraine Motors* which, if one were to assume its interpretation of the word "commence," would likewise broaden jurisdiction. *Pritchett,* 360 F.Supp.2d at 1180 n. 5. This is reconciled and "that paradox vanishes once one recognizes that although Congress generally intended the Act to broaden federal jurisdiction, it also maintained a specific intention to apply the Act only prospectively." *Id.*

FN23. *Berry* at 6-7 (discussing the language of the Act, noting that "a statute cannot address all possible outcomes and situations, and language inevitably contains some imprecision; where the text does not provide a clear answer, a faithful interpretation of the statute necessarily involves more than the text itself .... [I]f legislative intent is clearly expressed in Committee Reports and other materials, judicial disregard for the explicit and uncontradicted statements contained therein may result in an interpretation that is wholly inconsistent with the statute that the legislature envisioned .... [T]he role of the Court is to faithfully implement the law as intended by the Legislature. In these circumstances, the legislative history is a proper tool of statutory interpretation.")

FN24. Pfizer also cites Judge Walter Jay Skinner's opinion in *Ingerson v. Sharp,* 423 F.Supp. 139, 142 n. 2. (D.Mass.1976) (relying on *Berman v. Narragansett Racing Assoc,* 414 F.2d 311 (1st Cir.1969) discussed infra) in which Judge Skinner stated that "several plaintiffs need not hold their claims jointly so long as they assert 'an integrated right against the defendant.'

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1793451                                                                    Page 21

--- F.Supp.2d ---
(Cite as: 2005 WL 1793451 (D.Mass.))

An important element of the approach is that the defendants' total liability remain the same no matter how the 'fund' is apportioned." Judge Skinner's decision, however, was subsequently vacated by the First Circuit without opinion, substantially detracting from any persuasive value this Court would have ascribed it. *Ingerson v. Sharp,* 582 F.2d 1269 (1st Cir.1978).

FN25. As discussed supra, the argument has been rejected once by Judge Collins and twice by Judge Reagan.

FN26. This Court's determination here is in line with the circuit and district interpretations to date. Should other courts similarly interpret the "commence" statutory language, Pfizer's latitude to seek judicial interpretation without being held responsible for attorneys' fees and costs may narrow in the future.

FN27. The Class Action Fairness Act has an express provision for interlocutory appeal of remand orders. 28 U.S.C. § 1453(c)(1). Here, however, having held that these cases are not subject to that Act, consideration of interlocutory appeal prescinds from traditional standards.

FN28. As this Court stated in *Miara:*
This Court appreciates that section 1292(b) certification "should be used sparingly and only in exceptional circumstances." *Stone ex. rel. Estate of Stone v. Frontier Airlines, Inc.,* 256 F.Supp.2d 28, 47 (D.Mass.2002) (denying Section 1292(b) certification); *Fierro v. I.N.S.,* 81 F.Supp.2d 167 (D.Mass.1999) (certifying under section 1292(b) in the interest of judicial economy and efficiency primarily because, there, the matter properly should have been brought before the Court of Appeals in the first place).
Certain instances, however, warrant section 1292(b) certification.
2005 WL 1463299 at *38 n. 53.

FN29. As would, of course, other circuits, given the value of a First Circuit decision on this issue as demonstrated by the value of the decisions of the Seventh and Tenth Circuits on this matter, and in light of the predictable increase in state class action lawsuits removed to federal court seeking judicial interpretation of section 9 of the Act.

2005 WL 1793451 (D.Mass.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 924666 (Trial Pleading) Answer of Defendant Pfizer Inc. to Plaintiff's First Amended Complaint (Apr. 01, 2005)

• 1:05cv10590 (Docket)
                                    (Mar. 25, 2005)

• 1:05cv10591 (Docket)
                                    (Mar. 25, 2005)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2

Westlaw.

Slip Copy                                                                 Page 1

Slip Copy, 2005 WL 1593593
**(Cite as: Slip Copy)**

**C**
Slip Copy, 2005 WL 1593593
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
Jana SNEDDON, Plaintiff,
v.
HOTWIRE, INC., Defendant.
Ashley SALISBURY, Plaintiff,
v.
HOTWIRE, INC., Defendant.
Bruce DEATON, Plaintiff,
v.
HOTWIRE, INC., Defendant.
**No. C 05-0951 SI, C 05-0952 SI, C 05-0953-SI.**

June 29, 2005.

Adam Gutride , Wayne Lamprey , Anne Hayes
Hartman , Francine T. Radford , Goodin MacBride
Squeri Ritchie & Day LLP , San Francisco, CA,
Blake M. Harper , Hulett Harper LLP , San Diego,
CA, Jon V. Harper , Nathan B. Wilcox , Thomas R.
Karrenberg , Anderson & Karrenberg, Salt Lake
City, UT, for Plaintiffs.
Martha A. Boersch , Peter Eliot Davids , Jones Day,
San Francisco, CA, for Defendants.

ORDER GRANTING PLAINTIFF'S MOTION TO
REMAND AND REMANDING ACTIONS TO
THE SAN FRANCISCO COUNTY SUPERIOR
COURT

ILLSTON, J.
*1 Plaintiff's motion to remand these consolidated
actions to state court is currently pending for
decision, and the Court has deemed this motion
suitable for decision without oral argument pursuant
to Local Rule 7-1(b). Having carefully considered
the papers submitted, the Court hereby GRANTS
plaintiff's motion to remand, REMANDS these
actions to the Superior Court for the County of San
Francisco, and DENIES plaintiff's request for fees

and costs. The July 1, 2005 hearing date is hereby
VACATED.

BACKGROUND

On January 13, 2005, plaintiff Jana Sneddon filed a
class action against defendant Hotwire, Inc. in the
Superior Court for the County of San Francisco. On
February 17, 2005, plaintiff Ashley Salisbury filed a
class action against defendant Hotwire, Inc. in the
Superior Court for the County of San Francisco. On
January 10, 2005, plaintiff Bruce Deaton filed a
class action against defendant Hotwire, Inc. in the
Superior Court for the County of San Francisco.

The class actions assert three causes of action
against defendant: 1) violation of California's
Unfair Competition Law, Business & Professions
Code § 17200 *et seq.;* 2) conversion; and 3)
imposition of a constructive trust. Defendant
provides an internet service which sells discounted
hotel rooms to the general public. Plaintiffs' claims
stem from defendant's additionalcharge for "
taxes/fees." Plaintiffs assert that defendant charges
customers more under "taxes/fees" than it actually
remits to the government, and that the differential is
wrongfully retained by defendant. The class consists
of all customers who paid defendant "taxes/fees"
during the period from December 30, 1990 to the
present.

On March 7, 2005, all three actions were removed
from San Francisco Superior Court to the U.S.
District Court for the Northern District of
California, based on federal subject matter
jurisdiction created under the newly enacted Class
Action Fairness Act (CAFA), 28 U.S.C. § 1453.
CAFA expanded the scope of federal jurisdiction
for class actions by relaxing the diversity
requirements and allowing aggregation for the
amount in controversy requirement. The new
statute, signed by President Bush on February 18,
2005, "appl[ies] to any civil action commenced on

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy    Page 2

Slip Copy, 2005 WL 1593593
**(Cite as: Slip Copy)**

or after the date of enactment of this Act." Pub.L. 109-2 § 9.

On March 22, 2005, a motion to remand was filed in each action. Thereafter the actions were related before a single judge, were reassigned to the undersigned district judge and, on April 20, 2005, were consolidated into one action. Defendant filed a single opposition to remand of the now-consolidated actions, and plaintiffs filed a unified reply. It is these motions which are presently before the Court.

### LEGAL STANDARD

A motion to remand is the proper procedure for challenging removal. Remand to state court may be ordered either for lack of subject matter jurisdiction or for any defect in removal procedure. *See* 28 U.S.C. § 1447(c). The court may remand sua sponte or on motion of a party, and the party who invoked the federal court's removal jurisdiction has the burden of establishing federal jurisdiction. *See Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1195 (9th Cir.1988) (citing *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921) ); *Salveson v. Western States Bankcard Ass'n,* 525 F.Supp. 566, 571 (N.D.Cal.1981), *aff'd in part, rev'd in part,* 731 F.2d 1423 (9th Cir.1984) ; Schwarzer, Tashima, Wagstaffe, *Federal Civil Procedure Before Trial,* ¶ 2:1093 (1992).

**\*2** The removal statute is strictly construed against removal jurisdiction and doubt is resolved in favor of remand. *Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062, 1064 (9th Cir.1979) ; *Prize Frize Inc. v. Matrix Inc.,* 167 F.3d 1261, 1265 (9th Cir.1999).

### DISCUSSION

1. "Commencement" of an action under CAFA

The decision in this case turns on interpreting the language of the Class Action Fairness Act. Diversity jurisdiction under CAFA applies "to any civil action commenced on or after the date of

enactment of this Act [February 18, 2005]." Pub.L. 109-2, § 9. If an action "commences" when it is filed in state court, as plaintiffs contend, then there was no subject matter jurisdiction over these actions and removal was improper, because CAFA was not yet effective when they commenced. On the other hand, if an action "commences" when it is removed to federal court, which in this instance occurred on March 7, 2005, then this action was properly removed under CAFA.

So far as this Court is aware, all courts which have addressed this issue under CAFA have held that the commencement of an action refers to the date the action is filed in state court, not when the case is removed to federal court. *Pritchett v. Office Depot, Inc.,* 404 F.3d 1232 (10th Cir.2005) ; *Knudsen v. Liberty Mut. Ins. Co.,* No. 05-1080, 2005 U.S.App. LEXIS 10440 (7th Cir. June 7, 2005) ; *In re Expedia Hotel Taxes and Fees Litigation,* Case No. C05-0365C, April 15, 2005 (W.D.Wash.2005); *Bush v. Cheaptickets,* Case No. CV 05-2285 (C.D.Cal.2005).

Statutory definitions of "commencement" support this view. According to the Federal Rules of Civil Procedure, an action commences at the "filing [of] a complaint with the court." Fed. R. Civ. Proc. 3. Likewise under California law, a civil action commences when a complaint is filed with the court. Cal.Code Civ. Proc. §§ 350 , 411.10. FN1 Serendipitously, logic also supports this view: since an action can only be commenced once, it cannot commence at the time of removal because "it is already pending by that time." *Bush v. Cheaptickets,* Case No. CV 05-2285 PA (C.D.Cal.2005), May 5, 2005 Order at 3.

FN1. "District courts within the Ninth Circuit have found that 'in removal cases, " commencement" is governed by the law of the state in which the action originated." ' *In re Expedia Hotel Taxes and Fees Litigation,* Case No. C 05-0365C (W.D.Wash.2005), April 15, 2005 Order at 2 (citations omitted).

The legislative history of CAFA is in accord. When

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 3

Slip Copy, 2005 WL 1593593
**(Cite as: Slip Copy)**

CAFA was first introduced in the House, the removal provision applied to cases certified as class actions on or following the effective date. *See* H.R. 516, 109th Cong. § 7 (2005). Under such a provision, this action would have been subject to CAFA. However, Congress rejected this provision and chose to apply CAFA only to cases commenced on or after February 18, 2005. *See* Pub.L. 109-2, § 9. For example, Senator Dodd said that "despite those who wanted it to ... a case filed before the date of enactment will be unaffected by any provision of this legislation." 151 Cong. Rc. S1080 (daily ed. Feb. 8, 2005). This Court concludes the legislative history clearly supports an inference that CAFA does not apply to cases filed before February 18, 2005.

*3 Defendant urges the Court to follow the apparent purpose of CAFA, rather than its express language, by granting federal jurisdiction to a broader spectrum of class actions than the words of the statute would require. However, the Court will follow the Supreme Court's clear directive that "the courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253-254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). If the legislature intended that CAFA apply to cases filed before the enactment date, it would have said so, and would likely have enacted the retroactive House bill, H.R. 516, or some other statute. FN2

> FN2. Defendant relies on *Lorraine Motors, Inc. v. Aetna Casualty & Surety Co.,* 166 F.Supp. 319, 322-23 (E.D.N.Y.1958), to support its argument that actions commence when they are removed to federal court. Its argument, which has been rejected by other courts considering it, *see Pritchett,* 404 F.3d at 1237, is unpersuasive.

Plaintiff's motion to remand for lack of federal jurisdiction is therefore GRANTED.

2. Attorney fees

An order for remand may properly be followed by an award of attorneys' fees and costs accrued at trial. 28 U.S.C. § 1447(c). A district court has broad discretion in ordering attorneys' fees and costs, and bad faith is not required to justify an award of fees. *Moore v. Permanente Medical Group,* 981 F.2d 443, 448 (9th Cir.1992). However, the Court finds that an award of attorney fees would be inappropriate in this instance. Defendant's removal was prompt and the issue raised is a new one. Although this Court considers defendant's removal improper, it finds that no award of attorneys fees is warranted.

CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiffs' motion to remand and REMANDS this action to the San Francisco Superior Court. Plaintiffs' request for attorneys' fees is DENIED.

IT IS SO ORDERED.

N.D.Cal.,2005.
Sneddon v. Hotwire, Inc.
Slip Copy, 2005 WL 1593593

Briefs and Other Related Documents (Back to top)

• 3:05CV00952 (Docket) (Mar. 09, 2005)
• 3:05cv00951 (Docket) (Mar. 07, 2005)
• 3:05cv00953 (Docket) (Mar. 07, 2005)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 3

Westlaw.

411 F.3d 805                                                            Page 1

411 F.3d 805

**(Cite as: 411 F.3d 805)**

c

**Briefs and Other Related Documents**

United States Court of Appeals,
Seventh Circuit.
Kirsten KNUDSEN, Chris Baker, and Vikki Baker,
Plaintiffs-Respondents,
v.
LIBERTY MUTUAL INSURANCE COMPANY,
Defendant-Petitioner.
No. 05-8010.

Submitted April 29, 2005.
Decided June 7, 2005.

**Background:** State-court class action was brought against insurance company. Company removed pursuant to Class Action Fairness Act. The United States District Court for the Northern District of Illinois, Ruben Castillo, J., remanded based on fact that action originally had been filed before Act's effective date. Company petitioned for leave to appeal remand.

**Holding:** The Court of Appeals, Easterbrook, Circuit Judge, held that purported significant change to class definition occurring after Act's effective date did not constitute "commencement" of new action, so as to permit removal.
Petition denied.

West Headnotes

**Removal of Cases** ⟵⟶**32**
334k32 Most Cited Cases
As to state-court class action originally filed prior to effective date of Class Action Fairness Act, and thus not removable under Act, purported significant change to class definition occurring after Act's effective date did not constitute "commencement" of new action, so as to permit removal; change to

class definition did not present novel claim or add new defendant. 28 U.S.C.A. §§ 1446(b), 1453.
\*806 Russell Yager, Vinson & Elkins, Dallas, TX, for Defendant-Petitioner.

William M. Sweetnam, Freed & Weiss, William J. Harte, Harte & Associates, Robert A. Holstein, Holstein Law Offices, Chicago, IL, for Respondents.

Before COFFEY, EASTERBROOK, and WILLIAMS, Circuit Judges.

EASTERBROOK, Circuit Judge.

The Class Action Fairness Act of 2005, Pub.L. 109-2, 119 Stat. 4 (2005), permits defendants to remove certain class actions to federal court if minimal diversity of citizenship exists. Section 9 tells us that it applies only to suits "commenced on or after the date of enactment of this Act." That date is February 18, 2005. Invoking the removal authority under § 5, codified at 28 U.S.C. § 1453, Liberty Mutual Insurance Company removed this class action, which had been pending in state court since March 2000. The district judge promptly sent it back, observing that March 2000 precedes February 2005. Now Liberty Mutual asks us to entertain an appeal, a step that § 1453(c)(1) allows notwithstanding the norm in 28 U.S.C. § 1447(d) that remand orders are not reviewable.

We deny this petition, for we agree with *Pritchett v. Office Depot, Inc.,* 404 F.3d 1232 (10th Cir.2005) , that § 9 of the new Act must be taken seriously. Deconstructionist tactics do not permit its evasion. The defendant in *Pritchett* contended that the notice of removal itself commenced a new case (the one in federal court). Rebuffing that effort to sidestep the legislative decision, *Pritchett* concluded that a civil action is "commenced" for purposes of § 9 when it is *filed* in state court and not when some later step occurs in its prosecution. Equating filing with

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

411 F.3d 805                                                                                                 Page 2

411 F.3d 805

**(Cite as: 411 F.3d 805)**

commencement is the norm in civil practice. See Fed.R.Civ.P. 3. Although there are a few exceptions--for example, a litigant who seeks to proceed *in forma pauperis* may be unable to get the suit under way until the judge accepts the complaint and authorizes service on the defendants, see *Williams-Guice v. Board of Educ. of City of Chicago,* 45 F.3d 161 (7th Cir.1995)--none applies here. This suit against Liberty Mutual has been ongoing for years.

Instead of arguing that removal equals "commencement," Liberty Mutual contends that any substantial change to the class definition "commences" a new case. Now as a matter of normal language (and normal legal practice) a new development in a pending suit no more commences a new suit than does its removal. Plaintiffs routinely amend their complaints, and proposed class definitions, without any suggestion that they have restarted the suit--for a restart (like a genuinely new claim) would enable the defendant to assert the statute of limitations. Liberty Mutual concedes that routine changes do not allow removal but insists that a "substantial" or "significant" change must do so. Yet significance is not the measure of a new claim; a plaintiff may assert an entirely novel legal theory in midsuit without creating a "new" claim in the sense that the defendant could block it by asserting that it had been propounded after the period of limitations expired. Moreover, "significance" often lies in the eye of the beholder; it is not a rule of law so much as it is a cast of mind or an assessment of likely consequences, which may be difficult if not impossible to foresee. A doctrine of "significant change" thus would go against the principle that the first virtue of any jurisdictional rule is clarity and ease of implementation. See, e.g., *Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 202-03, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988); *Hoagland v. Sandberg, Phoenix & von Gontard, P.C.,* 385 F.3d 737, 740 (7th Cir.2004) (collecting authority).

**\*807** Liberty Mutual paints a picture of crafty lawyers tending a garden of pre-2005 class actions, in which they plant new claims by amendment so that the 2005 Act never comes into play. As we

have already hinted, however, a new claim for relief (a new "cause of action" in state practice), the addition of a new defendant, or any other step sufficiently distinct that courts would treat it as independent for limitations purposes, could well commence a new piece of litigation for federal purposes even if it bears an old docket number for state purposes. Removal practice recognizes this point: an amendment to the pleadings that adds a claim under federal law (where only state claims had been framed before), or adds a new defendant, opens a new window of removal. 28 U.S.C. § 1446(b). See Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 14C *Federal Practice & Procedure* § 3732 at 311- 48 (3d ed.1998). We imagine, though we need not hold, that a similar approach will apply under the 2005 Act, perhaps modeled on Fed.R.Civ.P. 15(c), which specifies when a claim relates back to the original complaint (and hence is treated as part of the original suit) and when it is sufficiently independent of the original contentions that it must be treated as fresh litigation. See also *Schiavone v. Fortune,* 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986); *Arendt v. Vetta Sports, Inc.,* 99 F.3d 231 (7th Cir.1996). This possibility does Liberty Mutual no good, however, because the change in class definition does not present a novel claim for relief or add a new party.

Maybe that lies in store. The suit charges Liberty Mutual with failing to live up to promises made in its policies. Plaintiffs proposed this class:
> [A]ll LIBERTY insureds, their third party beneficiaries and their assignees who are entitled to payment of medical bills under any medical payments coverages pursuant to a LIBERTY insurance policy, and who have received a payment from LIBERTY for less than the medical charge, based upon the application of LIBERTY's medical cost and utilization database.

The complaint defined "LIBERTY" as Liberty Mutual Insurance Company--which is only natural, as it is the sole defendant. Liberty Mutual responded that plaintiffs could not represent this class, for they don't belong to it. All three plaintiffs' claims derive from policies issued by Liberty Mutual Fire Insurance Company, an insurer with its own policies and reserves. So on February 25,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

411 F.3d 805

411 F.3d 805

**(Cite as: 411 F.3d 805)**

Page 3

2005, plaintiffs proposed to amend the class definition in a way that would make them members, and hence eligible to be representatives:

> All Liberty Mutual Insurance Company and Liberty Fire Insurance Company insureds, their third party beneficiaries and their assignees who submitted medical bills under any medical payments coverages pursuant to a Liberty Mutual or Liberty Fire insurance policy, and whose claims were paid for less than the medical charge, based upon the application of a medical cost and utilization database.

This is an odd revision--and not simply because "Liberty Fire Insurance Company" does not exist. The fatal problem is that Liberty Mutual Fire Insurance Company is not a party to the suit, so no relief could be entered against it. (Plaintiffs do not contend that Liberty Mutual Fire Insurance Company and Liberty Mutual Insurance Company are alter egos. If these were just two names for one business, then no change in the class definition would have been necessary.) Before the state judge could address the plaintiffs' latest proposal, however, Liberty Mutual Insurance removed the case. That's unavailing, for reasons we have covered. If in the future Liberty Mutual Fire Insurance ***808** Company should be added as a defendant, it could enjoy a right to remove under the 2005 Act, for suit *against it* would have been commenced after February 18, 2005. But Liberty Mutual Insurance Company cannot remove five years after this suit was commenced just because a nonparty corporate sibling has been mentioned in plaintiffs' latest papers.

The petition for leave to appeal is denied. This makes it unnecessary to act on Knudsen's motion to strike the petition for leave to appeal--though we hope that in the future potential appellees will address the issues directly rather than move to strike the appellants' papers. The motion to strike supposes that the Class Action Fairness Act does not apply (and, since it does not, that 28 U.S.C. § 1447(d) forecloses appellate review). Yet whether the 2005 Act *does* apply is the very issue to be determined, and "a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz,* 536 U.S. 622, 628, 122 S.Ct.

2450, 153 L.Ed.2d 586 (2002). A motion to strike begs the principal question.

411 F.3d 805

**Briefs and Other Related Documents (Back to top)**

• 05-8010 (Docket)

(Apr. 29, 2005)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 4

Westlaw.

2005 WL 1706908

--- F.Supp.2d ----, 2005 WL 1706908 (C.D.Cal.)

**(Cite as: 2005 WL 1706908 (C.D.Cal.))**

Page 1

**Motions, Pleadings and Filings**

United States District Court,
C.D. California.
Ronald BUSH, Julianne Dyer, Josh Kramer, Ana
Lopez and Ashley Salisbury, On
Behalf of Themselves and All Others Similarly
Situated, Plaintiffs,
v.
CHEAPTICKETS, INC., Cendant Corporation,
Expedia, Inc., IAC/Interactivecorp,
Hotels.com, L.P., Hotels.com GP, LLC, Orbitz,
Inc., Orbitz LLC, Priceline.com,
Inc., Travelocity.com, Inc., Travelocity.com, L.P.,
John Does 1-25, inclusive,
Defendants.
**No. CV 05-2285 PA(VBK).**

May 5, 2005.

**Background:** State-court class action was brought against corporations. Following effective date of Class Action Fairness Act, corporations removed on basis of diversity.

**Holding:** The District Court, Anderson, J., held that Act did not permit removal, since action had been filed prior to Act's effective date and thus was "commenced" prior to that date within meaning of Act's prospective-applicability provision.
Remanded.

**Removal of Cases** &#x21d0;2

334k2 Most Cited Cases
Class Action Fairness Act did not permit removal of class action filed in state court before Act's effective date but removed after that date; action was "commenced," for purposes of Act's prospective-applicability provision, when it was filed, not when it was removed. 28 U.S.C.A. §§

1332, 1453; Fed.Rules Civ.Proc.Rule 3, 28 U.S.C.A.
Jeff S. Westerman, Sabrina S. Kim, Milberg Weiss Bershad and Schulman, Los Angeles, CA, for Plaintiffs.

Gordon A. Greenberg, McDermott Will & Emery, Brian A. Sun, Philip E. Cook, Jones Day, Darrel J. Hieber, Jeffrey H. Dasteel, Skadden Arps Slate Meagher & Flom, David F. McDowell, Michael Feuer, Morrison and Foerster, Los Angeles, CA, for Defendants.

ORDER REMANDING ACTION

ANDERSON, District Judge.

**\*1** Before the Court are the parties' responses and supplemental responses to the Court's March 31, 2005 order to show cause why this action should not be remanded to the state court for lack of federal subject matter jurisdiction.

Plaintiffs filed their Complaint on February 17, 2005, in the Superior Court of the State of California for the County of Los Angeles. On March 28, 2005, Defendants Cheaptickets, Inc.; Cendant Corporation; Expedia, Inc.; IAC/Interactive Corp.; Hotels.com, L.P.; Hotels.com GP, LLC; Orbitz, Inc.; Orbitz, LLC; Priceline.com, Inc.; Travelocity.com, Inc.; Travelocity.com, L.P. (collectively, "Defendants") removed the case to the United States District Court for the Central District of California. The Notice of Removal alleges that this Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, Pub.L. 109-2 (the "Act"). The Act expands the scope of federal diversity jurisdiction by amending 28 U.S.C. § 1332 to include class actions that meet certain criteria. See 28 U.S.C. § 1332(d). It also adds 28 U.S.C. § 1453, which authorizes and sets terms for removal of class actions filed in state court that meet the new criteria for diversity jurisdiction.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1706908                                                                                    Page 2

--- F.Supp.2d ----, 2005 WL 1706908 (C.D.Cal.)

**(Cite as: 2005 WL 1706908 (C.D.Cal.))**

Section 9 of the Act states: "The amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act." Pub.L. 109-2, § 9 (emphasis added). The Act was enacted on February 18, 2005, one day *after* this action was filed in state court.

Whether this Court has subject matter jurisdiction depends on the meaning of the word "commenced" in section 9 of the Act. If the Court lacks subject matter jurisdiction, it must remand this action to state court. 28 U.S.C. § 1447(c).

At the time this Court issued the order to show cause, the only published decision addressing the meaning of the word "commenced" in section 9 of the Act was the United States District Court for the District of Colorado, which held the word "commenced" refers to the date an action is filed in state court, not the date of its removal. *Pritchv v. Office Depot. Inc.,* 360 F.Supp.2d 1176, 1181 (2005). Since that time, the United States Court of Appeals for the Tenth Circuit has issued a published decision in the same case reaching the same conclusion as the district court. *Pritchett v. Office Depot. Inc.,* 404 F.3d 1232 (10th Cir.2005). This Court is in agreement.

The starting point for statutory construction is the plain language of the statute. *Botosan v. Paul McNally Realty,* 216 F.3d 827, 831 (9th Cir.2000). The verb "commence" is commonly understood as a synonym of "begin." *See* Oxford English Dictionary, available at http://dictionary. oed.com (defining "commence" as "To begin (an action); to enter upon; esp. in legal use, to commence an action, a suit, proceedings, etc."). A lawsuit does not "begin" on the date it is removed to federal court; it is already pending by that time. Instead, a lawsuit is deemed to "begin" or "commence" on the date the original complaint is filed. *See* Fed.R.Civ.P. 3 ("A civil action is commenced by filing a complaint with the court.")

**\*2** Defendants contend that the broad remedial purpose of the Act requires an expansive definition of "commenced" that includes cases removed after the effective date. This approach, however, ignores

the legislative history of the Act. When the Act was first introduced in the House, the removal provision applied not only to cases "commenced" on or after the Act's effective date, but also to cases certified as class actions on or after the effective date. *See* H.R. 516, 109th Cong. § 7 (2005). This latter category of cases naturally would include cases already pending on the date of enactment. Congress, however, chose to *narrow* the scope of the removal provision by eliminating this category of cases.

Indeed, comments by legislators who sponsored the bill confirm the Court's conclusion that the word "commenced" refers to the date the complaint is filed rather than the date of the removal. See 151 Cong. Rc. S1080 (daily ed. Feb. 8, 2005) (statement of Sen. Dodd) ("[The Act] does not apply retroactively, despite those who wanted it to. A case filed before the date of enactment will be unaffected by any provision of this legislation."); 151 Cong. Rec. H753 (daily ed. Feb. 17, 2005) (statement of Rep. Goodlatte) ("Since the legislation is not retroactive, it would have absolutely no effect on the 75 class actions already filed against Merck in the wake of the Vioxx withdrawal.")

Given the Act's plain language and legislative history, this Court agrees with the Tenth Circuit that the word "commenced" in section 9 of the Act refers to the date the complaint is filed, not the date of its removal. As this action was commenced prior to the Act's effective date, this Court lacks federal subject matter jurisdiction. Accordingly, the Court remands the action to the Superior Court of the State of California for the County of Los Angeles. *See* 28 U.S.C. § 1447(c).

Because the courts were divided on the meaning of the word "commenced" in earlier jurisdictional statutes, [FN1] and arguable support therefore existed for defendants' position, the Court denies plaintiffs' request for attorneys' fees and costs resulting from the removal. *See Moore v. Permanente Medical Group,* 981 F.2d 443, 448 (9th Cir.1992) (finding that "[a]n award of attorney's fees pursuant to section 1447(c) ... is within the discretion of the district court.").

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1706908                                                                    Page 3

--- F.Supp.2d ----, 2005 WL 1706908 (C.D.Cal.)

**(Cite as: 2005 WL 1706908 (C.D.Cal.))**


IT IS SO ORDERED.

> FN1. *Compare Kieffer v. Travelers Fire Ins. Co.*, 167 F.Supp. 398, 401 (D.Md.1958) (holding the word "commenced" in an amendment to the diversity statute that raised the amount-in-controversy requirement referred to the date of the complaint's filing rather than the date of its removal) *with Lorraine Motors, Inc. v. Aetna Cas. & Sur. Co.*, 166 F.Supp. 319, 323-24 (E.D.N.Y.1958) (reaching the opposite conclusion).

--- F.Supp.2d ----, 2005 WL 1706908 (C.D.Cal.)

**Motions, Pleadings and Filings (Back to top)**

• 2:05cv02285  (Docket)
                          (Mar. 28, 2005)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 5

Westlaw.

2005 WL 1706920                                                                           Page 1

--- F.Supp.2d ----

**(Publication page references are not available for this document.)**

c
United States District Court, W.D. Washington,
at Seattle.
**In re EXPEDIA** HOTEL TAXES AND FEES
LITIGATION
**No. C05-0365C.**

April 15, 2005.

**Background:** Plaintiffs brought three separate class
action lawsuits in state court against hotel
reservation service and its owner, alleging that
service violated Washington's consumer protection
laws by levying tax recovery and service fees in
connection with hotel reservation transactions. After
state court consolidated cases, defendants removed
action pursuant to Class Action Fairness Act
(CAFA). Plaintiffs moved for remand.

**Holding:** The District Court, Coughenour, J., held
that CAFA did not provide basis for removal.
Motion granted.

**[1] Removal of Cases** ⚖️2

334k2 Most Cited Cases
Under Washington law, three class action lawsuits
that were consolidated by state court before
consolidated case was removed "commenced"
before enactment date of Class Action Fairness Act
(CAFA), which thus did not provide basis for
removal, given that, under state law, action was
commenced by service of summons or filing of
complaint, and that actions were filed before
CAFA's enactment date. Wash.CR 3(a).

**[2] Removal of Cases** ⚖️2
334k2 Most Cited Cases

**[2] Removal of Cases** ⚖️107(7)
334k107(7) Most Cited Cases
Upon a motion to remand, burden of establishing
federal jurisdiction is on the party seeking removal,

and the removal statute is strictly construed against
removal jurisdiction.

**[3] Removal of Cases** ⚖️107(7)
334k107(7) Most Cited Cases
There is a strong presumption against federal
jurisdiction, and jurisdiction must be rejected if
there is any doubt as to the right of removal.
C. Michael Nielsen, pro se.

Lori G. Feldman, Milberg Weiss Bershad &
Schulman, New York City, Douglas C. McDermott
, Steve W. Berman, Hagens Berman Sobol Shapiro
LLP, Seattle, WA, for Plaintiffs.

Cori Gordon Moore, Thomas L. Boeder, Perkins
Coie, Seattle, WA, for Defendants.

ORDER

COUGHENOUR, District Judge.

This matter comes before the Court on Plaintiffs'
Motion to Remand (Dkt. No. 19). Plaintiffs seek to
remand this case to King County Superior Court on
the ground that Defendant's removal of this matter
to federal court is improper. The Court has carefully
reviewed the materials submitted by the parties. For
the following reasons, the Court hereby GRANTS
Plaintiffs' Motion to Remand.

In January and early February of 2005, three of the
Plaintiffs separately filed class action suits against
Expedia and its owner, 1AC/InterActiveCorp, in
King County Superior Court. Each complaint
alleges that Expedia violated the Washington State
Consumer Protection Act by levying tax recovery
and service fees in connection with hotel
reservation transactions. On February 18, 2005, a
King County Superior Court judge consolidated the
three cases. Also on February 18, President Bush
signed the Class Action Fairness Act ("CAFA") into
law. Class Action Fairness Act of 2005, Pub.L. No.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1706920                                                                                      Page 2

--- F.Supp.2d ----

**(Publication page references are not available for this document.)**

109-2 (2005). In part, CAFA expands federal court diversity jurisdiction over class actions to address the fact that most actions, regardless of their nationwide scope, are currently adjudicated in state courts. S.Rep. No. 109-14, at 4 (2005). On March 7, 2005, Expedia removed the consolidated case to U.S. District Court pursuant to CAFA. Plaintiffs now seek remand of this case to King County Superior Court.

[1] The sole issue raised by Plaintiffs' motion is the proper definition of the term "commence" as it is used in CAFA. Under Defendant's interpretation, the action commenced either on the date that the state court consolidated the three original suits or on the date that Defendant removed the case. Under either of Defendant's interpretations, CAFA would apply because the action would have commenced on or after the Act's February 18 enactment date. Plaintiffs, on the other hand, argue that "commenced" means "filed" and that this consolidated case consists of cases filed entirely before CAFA's effective date. Since the only ground for removal was provided by CAFA, under Plaintiffs' interpretation, remand would be appropriate.

[2][3] Upon a motion to remand, "[t]he burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Prize Frize, Inc. v. Matrix, Inc.,* 167 F.3d 1261, 1265 (9th Cir.1999). There is a strong presumption against federal jurisdiction, and jurisdiction must be rejected if there is any doubt as to the right of removal. *See Gaus v. Miles,* 980 F.2d 564, 566-67 (9th Cir.1992). For a civil litigant to secure federal jurisdiction under CAFA, the case must have "commenced" on or after the law's enactment date, February 18, 2005. Class Action Fairness Act § 9. The term "commence" is not defined in the Act. *See id.* District Courts within the Ninth Circuit have found that "in removal cases, 'commencement' is governed by the law of the state in which the action originated." *E.g., O'Brien v. Powerforce,* 939 F.Supp. 774, 777 (D.Hawai'i 1995); *Perez v. Gen. Packer,* 790 F.Supp. 1464, 1469 (C.D.Cal.1992); *Coman v. Int'l Playtex,* 713 F.Supp. 1324, 1328

(N.D.Cal.1989); *see Provenza v. Yamaha Motor Co.,* 295 F.Supp.2d 1175, 1178 (D.Nev.2003); *Hom v. Serv. Merch. Co.,* 727 F.Supp. 1343, 1344 (N.D.Cal.1990); *Rezendes v. Dow Corning Co.,* 717 F.Supp. 1435, 1437 (E.D.Cal.1989). Under Washington law, a civil action is commenced by service of a summons or by filing a complaint. Wash. Civ. R. 3(a); *Seattle Seahawks, Inc. v. King County,* 128 Wash.2d 915, 913 P.2d 375, 376 (1996).

The Court finds that Defendant has failed to establish that federal jurisdiction is proper for the following reasons. Although neither the Ninth Circuit nor the Western District of Washington has directly defined "commence" with respect to removal or consolidation, deferring to state law to define this word is consistent with other Ninth Circuit District Court decisions. [FN1] Under state law, the plain text of Washington's Civil Rule 3(a) indicates that commencement occurs with "filing." The suits giving rise to this consolidated action were all filed before CAFA's enactment date. Moreover, Defendant's reliance on *Jeffery v. Weintraub,* 32 Wash.App. 536, 648 P.2d 914 (1982), to argue that this case commenced when the state court consolidated the original cases is misplaced. *Jeffery* only addresses consolidation's impact on the number of judgments and attorney's fees. *See id.* at 921-22. In *Jeffery,* the court considered whether the lower court could award a separate fee for each action underlying a consolidated case. *Id.* The court's statement that consolidation creates a new action was made in the context of finding that the lower court's issuance of separate judgments did not alter the fact that consolidation renders a single judgment. *See id.* at 921. As a result, *Jeffery* is inapposite to the case at the bar. Finally, although CAFA seeks to expand federal diversity jurisdiction, inquiry into Congress' understanding of the term "commence" is uninstructive because CAFA's legislative history provides no definitive guidance. Defendant has failed in its burden of establishing federal jurisdiction. Given the presumption against removal, the Court finds that remand is appropriate.

For these reasons, the Court hereby GRANTS

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1706920

--- F.Supp.2d ----

**(Publication page references are not available for this document.)**

Plaintiffs' Motion to Remand and REMANDS this
case to King County Superior Court without award
of costs or fees.

> FN1. The Court also notes that Defendant
> fails to provide either persuasive or
> mandatory authority for the proposition
> that the Court should follow federal law to
> define "commence," and Defendant's
> argument that federal law dictates that
> commencement occurs upon removal relies
> on unpublished decisions and decisions by
> district courts outside the Ninth Circuit.

--- F.Supp.2d ----

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 3